# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DYNCORP INTERNATIONAL, LLC <br><br> and <br><br> EDO CORPORATION <br> 60 East 42nd Street <br> 42nd Floor <br> New York, NY 10165 <br><br> Defendants. | Case No. 1:06-CV-01717 <br> Judge Richard J. Leon |

## MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EDO CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE

William M. Sullivan, Jr.
    Federal Bar No. 467269
    Email: wsullivan@winston.com
Sarah M. Hall
    Federal Bar No. 479119
    Email: smhall@winston.com
Ryan S. Spiegel
    Federal Bar No. 489103
    Email: rspiegel@winston.com
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C. 20006
Tel. (202) 282-5000
Fax (202) 282-5100

*Counsel for Defendant EDO Corporation*

# TABLE OF CONTENTS

I.     BACKGROUND ..................................................................................3

II.    THERE IS NO PERSONAL JURISDICTION OVER EDO IN THIS DISTRICT..................................................................................................5

    A.    Standard of Review...........................................................................5

    B.    Plaintiffs Fail to Satisfy the Elements of the D.C. Long-Arm Statute. ..........................................................................................6

III.   WWNS HAS FAILED TO STATE A CLAIM AGAINST EDO UPON WHICH RELIEF CAN BE GRANTED..................................................9

    A.    Standard of Review...........................................................................9

    B.    WWNS Fails to State a Claim for Defamation. .........................10

        1.    The Alleged Defamatory Statement Was Never Published by EDO. ...................................................................10

        2.    The Alleged Statement Is Not an Actionable Statement. .............12

            a.    EDO's Alleged Statement Was True................................12

            b.    WWNS Misrepresents the Content and Context of the Statement...............................................................14

        3.    WWNS Has Failed to Establish that EDO Had the Requisite Intent. ......................................................................15

        4.    WWNS Has Failed to Adequately Plead Damages. .....................17

    C.    WWNS Fails to State a Claim for Tortious Interference with a Contract.........................................................................................17

    D.    WWNS Fails to State a Claim for Tortious Interference with Prospective Economic Advantage. ................................................20

    E.    WWNS Fails to State a Claim for Civil Conspiracy...................24

    F.    WWNS Fails to State a Claim for Violation of the Virginia Conspiracy Act (Va. Code Ann. § 18.2-499)..............................26

IV.   VENUE IS NOT PROPER IN THE DISTRICT OF COLUMBIA......................27

    A.    Standard of Review.........................................................................27

    B.    The Case Against EDO Should Be Dismissed for Improper Venue. ........28

    C.    Alternatively, Venue Should Be Transferred to the Eastern District of Virginia......................................................................29

V.    CONCLUSION................................................................................31

VI.   RELIEF REQUESTED....................................................................32

Defendant EDO Corporation ("EDO"), by and through undersigned counsel, respectfully moves this Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over EDO and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Additionally, EDO respectfully moves this Court to dismiss this action for improper venue under Federal Rule of Civil Procedure 12(b)(3), or in the alternative, to transfer this action to the U.S. District Court for the Eastern District of Virginia under 28 U.S.C. § 1404(a). [1]

## I.    **BACKGROUND**

This case, as pled against EDO, presents a transparent attempt to inappropriately forum-shop and to manufacture claims against an uninvolved party in pursuit of "deep pockets."[2]

---

[1]     We note initially that Plaintiff's Complaint against EDO should be dismissed pursuant to Rule 12(b)(7) because Plaintiff has failed to join a Rule 19 indispensable party, Darlington, Inc. ("Darlington") a wholly-owned subsidiary of EDO. Simply stated, WWNS has pled against the wrong defendant, choosing to assert their claims against EDO, the parent company, as opposed to Darlington, the subsidiary. However, WWNS's claims cannot survive against Darlington either. As set forth in detail below, we outline the reasons for dismissal of this suit against EDO. Even if Darlington were substituted for EDO in this suit, WWNS still fails to, *inter alia*, state a claim upon which relief can be granted in regards to Darlington. Pursuant to Rule 12(h)(2), we respectfully reserve the right to defend on the ground that WWNS has failed to join an indispensable Rule 19 party at a later stage in this litigation if the complete dismissal of WWNS's suit against EDO is not granted, as requested herein. *See* Fed. R. Civ. P. 12(h)(2) ("a defense of failure to join a party indispensable under Rule 19 … may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.").

[2]     Although WWNS has alleged that this Court has subject matter jurisdiction over this case based on, *inter alia*, diversity of citizenship, the fact that WWNS and DynCorp are both incorporated in the state of Delaware destroys diversity jurisdiction. 28 U.S.C. § 1332(c)(1) provides, in pertinent part, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated". 28 U.S.C. § 1332(c)(1). As Plaintiff alleges, both it and DynCorp are incorporated in the state of Delaware. Compl. ¶¶ 2, 4. The U.S. Supreme Court has consistently held that to satisfy diversity jurisdiction, all plaintiffs must have citizenship different from all defendants. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S.Ct. 2611, 2617 (2005). Thus, the fact that the plaintiff and a defendant are citizens of the same state precludes a federal district court from exercising subject matter over this case based on diversity jurisdiction.

All of the claims asserted by Plaintiff Worldwide Network Services, LLC ("WWNS") in this case arise out of contracts between WWNS and DynCorp related to communications work for the U.S. State Department in Iraq and Afghanistan. EDO was not a party to any of the contracts placed at issue by WWNS. Although WWNS asserts numerous causes of action against EDO[3], EDO's connection to this case is ancillary at best.

The Complaint details several allegations of racism by DynCorp employees against the minority-owned WWNS, but EDO is mentioned only briefly in the ninety paragraphs of these facts alleged in the Complaint. For example, WWNS asserts that DynCorp commissioned EDO to review certain radio systems installed by WWNS in Iraq and Afghanistan. WWNS further states that it complained to DynCorp about an alleged report by EDO that "is believed" to be critical of WWNS, despite the fact that WWNS admits it has "never" seen such an alleged report. Compl. ¶¶ 56-58. This brief mention is therefore necessarily mere conjecture – not fact.

The Complaint then alleges that EDO relied on a fact represented by DynCorp (that WWNS had filed for Chapter 11 bankruptcy protection) in sending a single e-mail to a WWNS employee. Compl. ¶¶ 92-95. Aside from a few unfounded accusations that EDO subsidiary Darlington performed poorly on some earlier projects (before EDO bought Darlington), Compl. ¶ 15, and from the assertion that some former WWNS employees now work for EDO, id. ¶ 99, the aforementioned allegations represents the entire extent of WWNS's Complaint against EDO.

---

[3]    WWNS alleges six causes of action in its Complaint, five of which are asserted against both DynCorp and EDO. The five causes of action that WWNS asserts against EDO are: (i) defamation; (ii) tortious inference with contract; (iii) tortious interference with prospective economic advantage; (iv) civil conspiracy; and (v) violation of the Virginia Conspiracy Act, Va. Code Ann. § 18.2-499.

Thus, it is clear from this striking absence of any substantive factual allegations against EDO that WWNS is merely trying to draw EDO into this litigation because of EDO's "deep pockets" as a larger corporation, in hopes of a sizeable settlement despite the utter lack of a meaningful connection between EDO and WWNS as revealed by the Complaint. WWNS's scheme fails, however, because the Complaint is insufficient on its face, necessitating dismissal of the claims against EDO for lack of personal jurisdiction, failure to state a claim, and improper venue.

Although a mountain of outside evidence strongly supports dismissal and/or summary judgment, it is well settled that Rule 12(b) motions are limited to the four corners of the Complaint. But there, too, we find strong support for dismissal.

## II.    THERE IS NO PERSONAL JURISDICTION OVER EDO IN THIS DISTRICT

### A.    Standard of Review.

WWNS, as plaintiff, bears the burden of proving that this Court has a basis for asserting personal jurisdiction over EDO. *Gandal v. Telemundo Group*, 997 F.2d 1561, 1565 (D.C. Cir. 1993). It is hornbook law that a plaintiff must specifically establish personal jurisdiction over each and every defendant:

> *Plaintiff bears the burden of establishing personal jurisdiction over each defendant. Atlantigas Corp. v. Nisource, Inc., 290 F. Supp.2d 34, 42 (D.D.C. 2003). In order to meet his burden, plaintiff must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations. Id. Furthermore, plaintiff cannot aggregate allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. Id.*

*Robinson v. Ashcroft*, Civil Action No. 03-2423 (RJL), 2004 U.S. Dist. LEXIS 27142, at *5-6 (D.D.C. July 26, 2004).

"Conclusory statements … '[do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction'". *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984)).

A "'bare allegation … is insufficient to establish personal jurisdiction[,]' [and] 'a plaintiff must allege specific acts connecting [the] defendant with the forum[.]'" *Second Amendment Found. v. United States Conf. of Mayors*, 274 F.3d 521, 523-25 (D.C. Cir. 2001) (internal citation omitted).

As set forth in more detail below, Plaintiff has failed to carry its burden on the issue of establishing personal jurisdiction over EDO.

**B.    Plaintiffs Fail to Satisfy the Elements of the D.C. Long-Arm Statute.**

WWNS seeks to establish personal jurisdiction over EDO in this Court under the District of Columbia's long-arm statute, D.C. CODE § 13-423, alleging that EDO has "caused tortious injury in the District of Columbia." Compl. ¶ 8. Yet nowhere in the Complaint does WWNS allege that any of EDO's relevant actions were performed within D.C. or had any effects in D.C. Indeed, the District of Columbia is not mentioned anywhere in the "FACTS" section of the Complaint and is only mentioned in the context of broad conclusory legal assertions,[4] most of which apply to venue and not to personal jurisdiction.[5] WWNS alleges no *facts* whatsoever linking tortious conduct or tortious

---

[4]    Compl. ¶¶ 6-8.

[5]    Paragraph 7 and any facts alleged therein apply only to DynCorp.

injury to the District. And even assuming *arguendo* that such allegations are made, they are pled with insufficient specificity. *See First Chicago Int'l*, 836 F.2d at 1378.

As stated above, plaintiff must specifically establish personal jurisdiction over each and every defendant. *Robinson v. Ashcroft*, Civil Action No. 03-2423 (RJL), 2004 U.S. Dist. LEXIS 27142, at *5-6 (D.D.C. July 26, 2004). *See also Reuber v. United States*, 750 F.2d 1039, 1051 (D.C. Cir. 1984) (denying personal jurisdiction under § 13-423(a)(4) because "Reuber's complaint makes no mention of any connection between the defendants and the District"). However, none of the acts that WWNS alleges EDO to have performed occurred in D.C. Moreover, as WWNS acknowledges, EDO is a citizen of New York – it is incorporated and headquartered in New York. Compl. ¶ 5.

In fact, only two prongs of D.C. CODE § 13-423 apply to the "tortious injury" test for personal jurisdiction invoked here by WWNS: subsection (a)(3) and subsection (a)(4). D.C. CODE § 13-423(a)(3), which requires that the defendant's alleged act or omission occur *within* the District of Columbia, is inapplicable, as explained above.

The remaining section of the statute concerning personal jurisdiction based on tortious injury, D.C. CODE § 13-423(a)(4), covers "tortious injury in the District of Columbia by an act or omission *outside* the District of Columbia." (Emphasis added.) But this section contains an important added requirement: Personal jurisdiction is established *only* if the defendant "'*regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.*'" *Odilla Mutaka Mwani v. Osama Bin Laden*, 417 F.3d 1, 9 (D.C. Cir. 2005) (emphasis in original; quoting D.C. CODE § 13-423(a)(4)). As the D.C. Circuit has opined, where "no evidence was

proffered that meets the italicized prerequisites," then "[i]t is unlikely that the defendants would be susceptible to jurisdiction under that provision." *Odilla Mutaka Mwani*, 417 F.3d at 9. It is also clear that this provision is substantially narrower than the minimum-contacts test derived from the Due Process Clause of the U.S. Constitution. U.S. CONST. amend. XIV, § 1; *Odilla Mutaka Mwani*, 417 F.3d at 9. *See also Parsons v. Mains*, 580 A.2d 1329, 1331 (D.C. 1990). Moreover, for purposes of establishing the situs of the alleged tortious injury, it is not enough merely for WWNS to rely on its own residency in the District of Columbia. *Helmer v. Doletskaya*, 393 F.3d 201, 208-09 (D.C. Cir. 2004). Substantial contacts attributable to EDO are required for the exercise of personal jurisdiction, and are simply not demonstrated here.

Further underscoring the fact that WWNS cannot show a substantial connection between EDO and the District of Columbia is that all of WWNS's claims asserted against EDO are presumably based on Virginia law,[6] and not D.C. law. WWNS thus implicitly admits that the locus of this case is Virginia, and *not* the District of Columbia, but offers no rationale for its split jurisdictional approach.[7] Seemingly, WWNS's assertion that this Court should exercise personal jurisdiction over EDO is, in actuality, a thinly veiled attempt to take unfair advantage of this Court by forum shopping.

---

[6]    *See* Compl. ¶¶ 113-142. Note, for example, that WWNS claims a violation of Virginia's Civil Conspiracy Act, *id.* ¶¶ 139-42. While the common law claims are not expressly asserted under Virginia law, and while the elements of such claims may be similar in multiple states, it is worth noting that WWNS uses the nomenclature of Virginia torts, as opposed to D.C. torts. For example, WWNS asserts a claim of "tortious interference with prospective economic advantage," Compl. ¶ 23, which is the name of a tort under Virginia law, but not under D.C. law. The D.C. counterpart is called "tortious interference with business expectancies." Combined with the Virginia Civil Conspiracy Act claim, this presumably indicates that all of the common law claims are brought under Virginia law.

[7]    For further discussion of this issue, see the Venue section *infra*.

In any event, WWNS's Complaint proffers absolutely no facts whatsoever that EDO "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." Thus, WWNS has failed to meet its burden, and its claims against EDO should therefore be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### III.    WWNS HAS FAILED TO STATE A CLAIM AGAINST EDO UPON WHICH RELIEF CAN BE GRANTED

#### A.    Standard of Review.

A claim may be dismissed pursuant to Rule 12(b)(6) when it fails to allege sufficient facts to support a cognizable legal claim. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). The court will not accept as true the plaintiff's bald assertions and legal conclusions, nor will the court draw unwarranted inferences to aid the plaintiff. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Although complaints are generally construed in a light favorable to plaintiffs, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Unwarranted inferences, factual deductions, legal conclusions masquerading as facts will not defeat a Rule 12(b)(6) motion. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Indeed, and with respect to WWNS's defamation claim, commentators have observed that the federal courts tend to view disfavored causes of action, such as defamation, more harshly. *See* 5A CHARLES A.

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 359-60 (1990).

Because WWNS's Complaint is nothing more than a hastily assembled series of unsupported inferences and conclusory statements, the claims against EDO should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as demonstrated below.

## B.    WWNS Fails to State a Claim for Defamation.

"In Virginia the elements of common law defamation are the '(1) publication of (2) an actionable statement with (3) the requisite intent.' *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (applying Virginia law). A statement is actionable if it contains a false assertion of fact that 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' *Id.*" *Schnare v. Ziessow*, 104 Fed. Appx. 847, 850 (4th Cir. 2004).

### 1.    The Alleged Defamatory Statement Was Never Published by EDO.

A key element of a defamation claim is that the statement must be *published*. Under Virginia law, "any defamatory statement must also be published to a third party. A plaintiff cannot therefore be defamed if he is the one to whom the statement is published and therefore [this] cannot constitute common law defamation in Virginia." *Reese v. C. Richard Dobson, Inc.*, 2001 U.S. Dist. LEXIS 12853, at *14 (E.D.Va. Aug. 23, 2001) (granting defendant's motion to dismiss for failure to state a claim; internal citations omitted). "Publication is essential because the basis of the tort is diminution of one's reputation in the eyes of others. Unless the defamatory matter is published to a third person, no such loss of reputation can occur." *Dickenson v. Wal-Mart Stores, Inc.*, 1997

U.S. Dist. LEXIS 19459, at *8-9 (W.D.Va. Nov. 3, 1997) (citing RESTATEMENT (SECOND) OF TORTS § 577, comment b (1976)).

In the Complaint, the only facts that WWNS alleges to support a claim that EDO *published* a defamatory statement are at Paragraphs 94-95:

> 94. In response to DynCorp's false statement concerning WWNS's financial status, EDO wrote by e-mail to at least one WWNS employee, "With this [Chapter 11 filing] in mind, I would request you immediately tender your resignation to WWNS and have a start date set [with EDO] ASAP."

> 95. EDO employee Steve Appling published this statement, via e-mail, on or around August 20, 2006, to WWNS employee Gabe Johnson, knowing that it is false.[8]

Yet in those paragraphs, WWNS *concedes* that the single email allegedly sent by EDO was, in fact, sent to "WWNS employee Gabe Johnson." Compl. ¶¶ 94-95. Although WWNS alleges that DynCorp told "third parties" that WWNS had filed for Chapter 11 protections, notably WWNS does not allege that EDO informed anyone other than "WWNS employee Gabe Johnson." *Id.* ¶¶ 92, 95. Therefore, pursuant to WWNS's Complaint, EDO never published the allegedly defamatory statement to a *third* party, as required by Virginia law. Rather, EDO merely relayed the statement *back* to the Plaintiff.[9] The absence of a publication proves fatal to WWNS's claim against EDO for

---

[8]    In fact, and contrary to Plaintiff's suggestion, Mr. Appling is a Darlington, Inc. employee. *See* footnote 1, *supra.*

[9]    As an employee of WWNS, the recipient of the alleged defamatory email from EDO was a representative or agent of the corporate Plaintiff. In *Dickenson v. Wal-Mart Stores, Inc.,* 1997 U.S. Dist. LEXIS 19459 (W.D.Va. Nov. 3, 1997), the court explained the relevance of the concept of intra-corporate immunity to the publication prong of a defamation claim. *Id.,* 1997 U.S. Dist. LEXIS 19459, at *9-10. Similarly, because the WWNS employee was a "a business associate or servant" of the Plaintiff, *see id.* at *10 (quoting *Thalhimer Bros. v. Shaw,* 159 S.E. 87, 88 (Va. 1931)), the same reasoning applies here; relaying the allegedly defamatory statement to him was not a publication to a third party. *See also Hanan v. Corso,* 1999 U.S. Dist. LEXIS 23160, at *5-7 (D.D.C. May 19, 1999). But even if defendants enjoy a

defamation under Virginia law, regardless of whether the statement would otherwise be defamatory *per se*.[10]

## 2.  The Alleged Statement Is Not an Actionable Statement.

"The determination of whether a statement is actionable is a matter of law." *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 560 (E.D.Va. 2000) (citing *Wilder v. Johnson Pub. Co., Inc.*, 551 F. Supp. 622 (E.D. Va. 1982); *Chaves v. Johnson*, 335 S.E.2d 97 (Va. 1985); RESTATEMENT (SECOND) OF TORTS § 614 (1977)).  For the following reasons, the statement by EDO is not actionable and therefore is not defamatory under a *per se* standard or any other analysis.

### a.  EDO's Alleged Statement Was True.

In order for a statement to be defamatory, it must be false.  *Schnare*, 104 Fed. Appx. at 850.  Therefore, if a statement is true, then this is an absolute defense to a claim of defamation.  *Olinger v. Am. Savings and Loan Assoc.*, 409 F.2d 142, 144 (D.C. Cir. 1969); *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 560 (E.D.Va. 2000).  *See also Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 59 (D.D.C. 2002) (espousing same rule in

---

qualified, rather than absolute, intra-corporate immunity from defamation claims, *see id.* at *10-15, WWNS has not sufficiently alleged any facts supporting a general assertion of malice on the part of EDO in order to overcome a qualified immunity.

[10]    Even assuming *arguendo* that the statement was published by EDO to a third party – which it was not – the republication exception negates any potential liability as to EDO.  "[T]he author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication." *Weaver v. Beneficial Fin. Co.*, 98 S.E.2d 687, 690 (Va. 1957).  *See also Blue Ridge Bank v. Veribanc, Inc.*, 866 F.2d 681, 689 (4th Cir. 1989); *Wuchenich v. Shenandoah Mem'l Hosp.*, 2000 U.S. App. LEXIS 11557, at *47 (4th Cir. May 22, 2000).  Here, it is clear that any republication by EDO was a "natural and probable consequence" of DynCorp's initial conveyance of the statement to EDO, or that the republication was "presumptively or actually authorized or directed" by DynCorp.  Compl. ¶ 93 ("DynCorp published this statement to EDO employee Steve Appling, and possibly others" before Appling allegedly relayed the statement to a WWNS employee.); *id.* ¶ 94 ("EDO wrote by e-mail to at least one WWNS employee" "[i]n *response* to DynCorp's false statement") (emphasis added).

case governed by District of Columbia law). The burden is on the plaintiff to plead with sufficient specificity that the alleged defamatory statement is indeed false. *Goddard*, 82 F. Supp. 2d at 560 (citing *Food Lion v. Melton*, 458 S.E.2d 580, 584 (Va. 1995); *Gazette v. Harris*, 325 S.E.2d 713, 720-21 (Va. 1985)).

"Under the law 'it is not necessary to prove the literal truth of the statements made. Slight inaccuracies of expression are immaterial provided the defamatory charge is true in substance, and it is sufficient to show that the imputation is "substantially true."'" *Levine v. McLeskey*, 881 F. Supp. 1030, 1049-50 (E.D.Va. 1995) (quoting *Seabolt v. Westmoreland Coal Co.*, 703 F. Supp. 1235, 1242 (W.D. Va. 1989)), *aff'd in relevant part and vacated in part on other grounds*, 164 F.3d 210 (4th. Cir. 1998).[11] *See also Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 59 (D.D.C. 2002) (applying the "substantial truth" doctrine); *Saleeby v. Free Press, Inc.*, 91 S.E.2d 405, 407 (Va. 1956). In *Levine*, the Eastern District of Virginia concluded that even though a plaintiff had not technically filed for bankruptcy, a defendant was not making false statements in referring to plaintiff as such, since it was substantially true that the plaintiff exhibited general characteristics of being bankrupt. 881 F. Supp. at 1049-50.

Similarly, under this "substantial truth" doctrine, the alleged statement by EDO was not false. WWNS admits that DynCorp notified it on August 3, 2006 – 17 days before EDO's allegedly defamatory email – "that it would discontinue its relationship with WWNS ... and would not exercise its option to extend the subcontract" with WWNS. Compl. ¶ 76. WWNS admits in its Complaint that the DynCorp contracts

---

[11]     The Fourth Circuit upheld the District Court's dismissal of one defamation claim, *Levine*, 164 F.3d at 211 (Count VII), and noted that the plaintiff did not appeal the District Court's ruling on her other defamation claim (Count VI), *id.* at 211 n.1.

represented 95% of its revenue, Compl. ¶ 88, as WWNS executive Reginald Bailey, Sr.

recently confirmed to The Washington Post.[12]   In light of these facts – which are offered

by WWNS itself – the alleged statement by EDO was not false.  Rather, the imputation –

that WWNS was bankrupt – was substantially true, even if it was not literally true.  Under

the law, that is sufficient to nullify Plaintiff's claim of defamation.  *Levine*, 881 F. Supp.

at 1049-50; *Lohrenz*, 223 F. Supp. 2d at 59.

Because EDO's alleged statement was not false under the "substantial truth"

doctrine, WWNS has failed to establish a necessary element of its defamation claim, and

the claim should therefore be dismissed.

    **b.**    **WWNS Misrepresents the Content and Context of the Statement.**

Furthermore, WWNS misrepresents the alleged statement made by EDO in an

attempt to invent facts that meet the "actionable statement" requirement of a defamation

claim.  In actuality, the alleged statement, as represented by WWNS itself, does not, on

its face, state that WWNS has filed for Chapter 11 protections.

Rather, WWNS alleges that DynCorp – not EDO – stated that WWNS "'has filed

for Chapter 11 protections.'"  Compl. ¶ 92.  As for EDO, WWNS merely alleges that an

EDO employee wrote an e-mail stating "With this [Chapter 11 filing] in mind, I would

---

[12]    "Founded in 1993, WWNS lately had been receiving more than 95 percent of its business from DynCorp subcontracts, amounting to approximately $30 million a year, according to WWNS senior vice president Reginald Bailey Sr." Griff Witte, <u>Former Partners Tied Up in Court</u>, WASH. POST, Oct. 9, 2006, at D1.  Moreover, the same article reported that when "[a]sked how his business will survive, [WWNS] founder and president Walter L. Gray Jr. replied, 'With a lot of prayer.'"  *Id.*  This Court may take judicial notice of such newspaper accounts in the public record.  *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226, 1226 n.5, 1226 n.6 (D.C. Cir. 1993) (affirming district court's motion to dismiss under Fed. R. Civ. P. 12(b)(6)); *Rwanda v. Rwanda Working Group*, 227 F. Supp. 2d 45, 60 n.6 (D.D.C. 2002) (citing a Washington Post article and explaining that "[a] court may take judicial notice of matters of a general public nature").

request you immediately tender your resignation to WWNS and have a start date set [with EDO] ASAP." Compl. ¶ 94. Significantly, *WWNS added in brackets the words* "[Chapter 11 filing]" so that the sentence starts "With this [Chapter 11 filing] in mind...." But without the context for the original statement (which WWNS chose not to detail in its Complaint) there is no evidence that EDO was referring to a Chapter 11 filing when it wrote the word "this." Indeed, EDO could have been referring to something else aside from the Chapter 11 filing itself. The self-serving insertion by WWNS of the bracketed words does not transform EDO's statement into an actionable defamatory statement.[13] And even if EDO was referring directly to the Chapter 11 filing, its alleged statement was not a statement asserting that WWNS was filing for Chapter 11. Rather, it was a request for a resignation preceded by a prepositional phrase referencing an alleged statement by DynCorp. In other words, EDO itself never stated that WWNS has filed for Chapter 11 protections. According to the alleged facts supplied by WWNS, only DynCorp made such a statement.

Thus, according to WWNS's own alleged facts, EDO never made the alleged actionable statement, *i.e.*, that WWNS "has filed for Chapter 11 protections." Accordingly, WWNS has failed to establish a necessary element of its defamation claim, and the claim should therefore be dismissed.

### 3.    **WWNS Has Failed to Establish that EDO Had the Requisite Intent.**

---

[13]    With so much of WWNS's case against EDO hinging on the e-mail from Appling to Johnson, it is noteworthy that in addition to quoting the e-mail in an altered fashion, WWNS did not even attach the e-mail as an exhibit to its Complaint. Local Civil Rule 5.1(g) states that "[n]o complaint, amended complaint, counterclaim, cross claim or third party complaint shall have appended thereto any document that is not essential to determination of the action," suggesting that essential documents should, in fact, be appended. Yet, WWNS has not appended the Appling e-mail, or for that matter, any other exhibit, to its Complaint.

"The plaintiff must prove ... that the statement was false *and* that the defendant *either knew the statement was false or, believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth.*" *Food Lion v. Melton*, 458 S.E.2d 580, 584 (Va. 1995) (emphases added).

WWNS offers absolutely no factual support for the notion that EDO either: (1) knew the Chapter 11 statement was false or, (2) believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth. To the contrary, WWNS asserts only a conclusory allegation that Mr. Appling knew the statement was false, Compl. ¶ 95, with no specific factual basis for this allegation. The Complaint does not provide a single allegation of fact to support this conclusory claim.

Moreover, if anything, the facts presented by WWNS support the conclusion that Mr. Appling had "reasonable grounds" to believe the statement was true. After all, according to the Complaint, DynCorp published the statement to Appling. Compl. ¶ 93. Additionally, DynCorp contracts represented 95% of WWNS's revenue, *id.* ¶ 88, and DynCorp notified WWNS on August 3, 2006 – 17 days before the alleged defamatory email – "that it would discontinue its relationship with WWNS ... and would not exercise its option to extend the subcontract" with WWNS, *id.* ¶ 76. Given all of these facts, Mr. Appling would have had perfectly reasonable grounds to believe that the statement about WWNS filing for Chapter 11 protections was substantially correct. Finally, in light of this, he was under no additional obligation to conduct further research on the matter before sending an e-mail to Gabe Johnson of WWNS in which the statement was referenced. Mr. Appling's e-mail can hardly amount to knowledge of falsehood or to negligence, when viewed in the context of the aforementioned facts.

16

WWNS has clearly failed to allege the requisite intent for a claim of defamation against EDO. Accordingly, the claim must be dismissed.

### 4.    **WWNS Has Failed to Adequately Plead Damages.**

As part of its purported defamation claim, WWNS alleges that EDO acted with "fraud," Compl. ¶ 121, to justify exemplary and punitive damages. Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). *See also Johnson v. Chase Manhattan Mortg. Corp.*, Civil Case No. 04-344, 2006 U.S. Dist. LEXIS 60760, at *9-10 (D.D.C. Aug. 28, 2006) (holding that plaintiff "merely reaches a legal conclusion that foreclosure was based on fraud, but does not provide any necessary facts to support that conclusion"). Because WWNS fails to allege with particularity the circumstances constituting fraud, this claim must be dismissed.

### C.    **WWNS Fails to State a Claim for Tortious Interference with a Contract.**

"To make a claim of tortious interference with contractual relations in Virginia a plaintiff must prove the following elements: '(1) the existence of a valid contractual relationship . . .; (2) knowledge of the relationship . . . on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship…; and (4) resultant damage to the party whose relationship . . . has been disrupted.'" *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)).

Here again, WWNS fails to plead with adequate specificity the facts necessary to establish such a claim. A few brief mentions of alleged "employment contracts" between WWNS and its employees, *see* Compl. ¶ 96, and a conclusory allegation that EDO knew

of these employment contracts, *see id.* ¶ 123, falls woefully short of the requirement to provide factual support for the assertions that (1) a *valid* contractual relationship existed between WWNS and the employees that EDO allegedly targeted and (2) that EDO had knowledge of the nature of these relationships. Indeed, the facts provided by WWNS reflect only a single communication between EDO employee Steve Appling and WWNS employee Gabe Johnson. *Id.* ¶¶ 94-95. And WWNS fails to assert any facts about its alleged contractual relationship with Mr. Johnson in particular.

WWNS likewise fails to allege facts supporting any *intentional* interference by EDO with a *contractual* relationship between WWNS and its employees. "This third element speaks to both intent and causation." *Commerce Funding*, 249 F.3d at 212. Once again, the only facts alleged are that EDO employee Steve Appling wrote by e-mail to WWNS employee Gabe Johnson requesting that Johnson tender his resignation to WWNS. Compl. ¶¶ 94-95. Even assuming this to be true, these facts do not reveal the broader context of this communication. Johnson may not have had the kind of "valid contractual relationship" with WWNS that allows for a tortious interference claim; he may have been a mere at-will employee. Johnson may have already signaled his intention to quit working for WWNS. In any event, this one-sentence e-mail to a single WWNS employee hardly constitutes a factual foundation for an assertion that EDO *intentionally* interfered to *induce* a termination of a contract between Johnson and WWNS. And, needless to say, WWNS provides no facts regarding any other WWNS employees. WWNS thus establishes *neither* intent *nor* causation.

Finally, WWNS clearly fails to demonstrate the fourth element of tortious interference with contractual relations, that of damages. As noted *supra*, DynCorp

contracts represented 95% of WWNS's revenue, *id.* ¶ 88, and DynCorp notified WWNS seventeen days before Appling's alleged e-mail "that it would discontinue its relationship with WWNS ... and would not exercise its option to extend the subcontract" with WWNS, *id.* ¶ 76. These facts show that even assuming WWNS satisfied all the other elements of a claim of tortious interference with a contract – which it has not – it simply cannot claim any significant damages as a result of interference with its employees' alleged contracts. WWNS would have the Court believe that it "has been forced to turn down work ... because, due to DynCorp's and EDO's actions, it does not have sufficient numbers of employees ...." Compl. ¶ 98. But paragraphs 76 and 88 of the Complaint reveal that 95% of WWNS's business had been terminated before the alleged e-mail was sent. In effect, WWNS had no work to turn down. Moreover, the only specific allegations relating to EDO involve a single employee, Gabe Johnson. The departure of a single employee from WWNS could hardly force it to turn down work, especially since WWNS had "[d]ozens" of employees. Compl. ¶ 99. Accordingly, WWNS's claim that tortious interference by EDO was the cause of *actual damages* cannot withstand a motion to dismiss.

As with the defamation claim, here WWNS also alleges that EDO acted with "fraud," Compl. ¶ 127, to justify exemplary and punitive damages. Because WWNS fails to allege with particularity the circumstances constituting fraud, this claim must be dismissed. *See* Fed. R. Civ. P. 9(b).

Finally, assuming *arguendo* that a claim of tortious interference with a contract is made, if "the interference was justified or privileged because the interferor acted for the purpose of protecting its own 'financial interest,'" then EDO would not be liable.

*Commerce Funding*, 249 F.3d at 210 (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 103 (Va. 1985)). "In general, the defense is 'based upon the relationships between the parties and the balance to be struck between the social desirability of protecting the business relationship, on one hand, and the interferor's freedom of action on the other.'" *Id.* at 211 (quoting *Chaves*, 335 S.E.2d at 103). This affirmative defense applies here. Clearly, EDO had a financial interest in hiring Gabe Johnson. EDO also had a financial interest in being able to complete the work for DynCorp since, as WWNS notes, "DynCorp has replaced WWNS with EDO." Compl. ¶ 89. Johnson had experience with the work for DynCorp. Correlatively, there is little "social desirability" in protecting the business relationship between Johnson and WWNS, since WWNS had lost virtually all of its work and Johnson obviously *wanted* to move to EDO. Therefore, under the *Chaves* balancing test, the financial interest defense makes EDO justified or privileged in negotiating to hire Johnson.

**D.**    **WWNS Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.**

Under Virginia law, "the elements of 'wrongful interference with prospective business or economic advantage' are '(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff.'" *Dag Enters. v. Exxon Mobil Corp.*, Civil Action No. 00-0182, 2001 U.S. Dist. LEXIS 25941, at *18-19 (D.D.C. Sept. 30, 2001) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997)). *See also Commerce Funding*, 249 F.3d at 213 (4th Cir. 2001) (noting that "under

Virginia law the elements required to establish tortious interference with prospective economic advantage are quite similar to those required to establish tortious interference with contractual relations").

"There is one critical difference ... between a prospective economic advantage and a contractual relations claim in Virginia.  In the prospective economic advantage context a plaintiff must also demonstrate that the defendant employed 'improper methods.'"  *Commerce Funding*, 249 F.3d at 213-14 (citing cases).  To make a *prima facie* case of tortious interference with prospective economic advantage under Virginia law, a plaintiff must assert facts to establish this additional element of the use of 'improper methods.'  *Id.* at 214.

"Virginia law requires that a plaintiff plead a *specific* prospective economic advantage or business expectancy."  *Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (emphasis added).  *See also Commercial Roofing & Sheet Metal Co. v. Gardner Eng'G*, 60 Va. Cir. 384, 387 (Va. Cir. Ct. 2002) (holding that a subcontractor's expectation that it would be allowed to bid on a project did not rise to a level of a reasonable expectation of further contractual relations).  But yet again, WWNS bases its claim on vague, conclusory assertions -- it offers no specifics about any business relationships with customers or prospective customers, nor does it assert any facts to explain how EDO interfered with such relationships or how WWNS was damaged.  *See* Compl. ¶¶ 129-133.  The brief mention of the allegation that "WWNS has been forced to turn down work for the U.S. Department of Defense...because...it does not have sufficient numbers of employees with relevant skills to complete the proposed projects"

Compl. ¶ 98, is also vague and nebulous.[14]  Moreover, this allegation seems to be linked to EDO's alleged hiring of WWNS *employees* (which Plaintiff has already pled as Count 3, Tortious Interference with Contract), *not* to the alleged distribution of false information to prospective *customers*.

As to the first element of this claim (existence of business relationship or expectancy, with probability of future economic benefit to plaintiff), the only existing business relationship alleged by WWNS was its contract with DynCorp.  There was no probability of future economic benefit from this relationship because DynCorp chose to exercise its contractual right not to renew.  Compl. ¶¶ 20, 76.  But in any case, a plaintiff cannot claim interference when the defendant is the source of the business opportunity in question; the plaintiff must show a business opportunity or expectancy with a *third* party. *Dag*, 2001 U.S. Dist. LEXIS 25941, at *26-27.  Here, defendant DynCorp was the only source of WWNS's business opportunities, Compl. ¶ 88, and DynCorp chose not to renew its contract with WWNS.  Compl. ¶¶ 20, 76.  "[A] party cannot interfere with its own contract," *Dag*, 2001 U.S. Dist. LEXIS 25941, at *27 (citing *Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26-27 (D.C. 1991)), so tortious interference is impossible here. WWNS does not allege any facts to support any other probable business relationship or expectancy beyond its relationship with DynCorp.  In short, WWNS most likely had no other customers, but its failure to diversify its clientele represents a mistake for which EDO is not responsible.

---

[14]  Once again, WWNS appends *no* exhibits to its Complaint to support this allegation that it was forced to turn down work.  Moreover, WWNS has a duty to mitigate damages, yet it has detailed no efforts to retain or re-hire its employees or otherwise re-staff its company.

WWNS fails to establish the second element of this claim (defendant's knowledge of the relationship or expectancy) as well. Even assuming that such third party expectancies existed, WWNS does not allege any specific facts to support its conclusory assertion that "EDO knew of WWNS's ongoing business relationships with various customers and prospective customers." Compl. ¶ 129. Absent any sufficient factual allegations to that effect, this claim must be dismissed.

The third element of this claim requires the plaintiff to demonstrate a reasonable certainty that absent a defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy. As noted, there was no relationship or expectancy in the first place, other than the one with DynCorp, which DynCorp chose to terminate *before* EDO allegedly sent the e-mail. Thus, there is no causation connected to EDO. In any event, and as stated above, the DynCorp work does not qualify as a business relationship or expectancy under this cause of action. Even assuming *arguendo* that such a relationship or expectancy with a *third* party existed, there is no factual support for the notion that Steve Appling's single e-mail to Gabe Johnson caused WWNS to lose the relationship or expectancy. And even if there were some facts, they would fall far short of establishing a "reasonable certainty" that EDO's e-mail *caused* the lost expectancy. Such hypothetical loss could have been caused by WWNS's poor performance or a myriad of other causes.

Moreover, there is no factual support for the idea that EDO's single e-mail constituted intentional misconduct or met the heightened pleading requirement of 'improper methods.' *See* discussion of defamation claim, *supra*. Mr. Appling had no reason to believe that the alleged reference to Chapter 11 protections in his e-mail to

Gabe Johnson was false or otherwise inappropriate. Beyond conclusory assertions of nefarious intent, there is no factual support offered by WWNS.

Finally, because there are no facts to support an existing expectancy, no facts to support EDO's knowledge of such an expectancy, no facts to support intentional misconduct or improper methods, and no facts to support causation, there can be no supportable assertion of damages. Indeed, even assuming the first three elements were sufficiently pled, WWNS concedes that its subcontracts for DynCorp "accounted for 95% of WWNS's annual revenue." Compl. ¶ 88. WWNS had no other existing or probable significant revenue sources, *i.e.*, no other business relationships or expectancies, so it could not have suffered damages. As with the other claims, WWNS again alleges that EDO acted with "fraud," Compl. ¶ 133, to justify exemplary and punitive damages. Again, because WWNS again fails to allege with particularity the circumstances constituting the purported fraud, this claim must be dismissed. *See* Fed. R. Civ. P. 9(b).

**E.      WWNS Fails to State a Claim for Civil Conspiracy.**

"The elements necessary to establish the existence of a civil conspiracy are: (1) that two or more persons engaged in concerted action; (2) to accomplish some criminal or unlawful purpose, or some lawful purpose by some criminal and unlawful means; and (3) that actual damages resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy." *America Online, Inc. v. LCGM, Inc.,* 46 F. Supp. 2d 444, 452 (E.D. Va. 1998) (quoting *Blackwelder v. Millman,* 522 F.2d 766 (4th Cir. 1975)).

Significantly, "[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a

24

means for establishing vicarious liability for the underlying tort." *Halberstam* v. *Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). *See also Beck v. Prupis*, 529 U.S. 494, 503-04 (2000). WWNS concedes as much in alleging that EDO conspired "to carry out the tortious acts alleged herein." Compl. ¶ 135. Therefore, "a civil conspiracy claim cannot survive independently where the underlying tort claim has failed." 16 Am. Jur. 2d Conspiracy § 64 (2006). Because each of the three underlying tort claims for defamation and tortious interference is defective on its face for the reasons explained above, the ancillary civil conspiracy claim similarly cannot survive.

Moreover, "civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong." 16 Am. Jur. 2d Conspiracy § 51 (2006) (citing *Young v. F.D.I.C.*, 103 F.3d 1180, 1190 (4th Cir. 1997), *cert. denied*, 522 U.S. 928 (1997)). "Proof of civil conspiracy must be shown by clear and convincing evidence." *Wilson v. Miller Auto Sales, Inc.*, 47 Va. Cir. 153, 154 (Va. Cir. Ct. 1998). As detailed in the previous sections of this brief, there is no factual support offered by WWNS to establish specific intent by EDO to commit any of the alleged underlying torts. WWNS's assertions amount to nothing more than conclusory statements – not facts. *See* Compl. ¶¶ 135-37. There are no facts to support the bald assertion that EDO and DynCorp engaged in a conspiracy, explicit or otherwise, to commit intentional or overt acts to harm WWNS. Indeed, if anything, the asserted facts affirmatively support the conclusion that EDO did *not* have any such intent. *See, e.g.,* discussion *supra* regarding the reasonableness of Appling's belief that the Chapter 11 statement was true in light of Compl. ¶¶ 76, 88.

Again, WWNS asserts damages as a result of this alleged conspiracy, but fails to establish any loss as a result of either the underlying defamation and tortious interference claims or the conspiracy. *See id.* ¶ 88. In light of the fact that DynCorp provided 95% of WWNS's business, and that DynCorp chose independently – without conspiring with EDO – not to renew the WWNS subcontract, there can be no claim of damages. DynCorp simply exercised its contractual rights, and WWNS has no entitlement to continue receiving DynCorp's business. As with the underlying claims, WWNS again alleges that EDO acted with "fraud," Compl. ¶ 138, to justify exemplary and punitive damages. Because WWNS fails to allege with particularity the circumstances constituting fraud, this claim must collapse. *See* Fed. R. Civ. P. 9(b).

F.     **WWNS Fails to State a Claim for Violation of the Virginia Conspiracy Act (Va. Code Ann. § 18.2-499).**

"To recover under the civil conspiracy statute, … the plaintiff must allege (1) a combination of two or more persons for the purpose of willfully and maliciously injuring them in their business; and, (2) resulting damage to them." *Balbir Brar Assocs. v. Consolidated Trading & Servs. Corp.*, 1995 Va. Cir. LEXIS 1397, at *15 (Va. Cir. Ct. Sept. 8, 1995) (citing *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592 (Va. 1984)). As with common law civil conspiracy, a statutory conspiracy claim also requires an underlying wrong. "'Where there is no actionable claim for the underlying alleged wrong, there can be no [Virginia Civil Conspiracy Act] action.'" *Va. Vermiculite Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 284 (4th Cir. 2002) (quoting *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44 (Va. Cir. Ct. 1995)), *cert. denied*, 538 U.S. 998 (2003). Thus, as with the civil conspiracy claim, this statutory claim cannot stand because each of the underlying tort claims are facially defective.

Additionally, as with the other causes of action, WWNS utterly fails to allege any supporting facts for this claim. *See* Compl. ¶¶ 140-42. Mere conclusory allegations do not suffice. *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 664 (E.D. Va. 2002) ("Because Stone Castle provides no specific factual basis, other than the conclusory allegation that Defendants conspired with iOwn, Genesis and others, to support its claim for conspiracy to injure business, the Court finds that Plaintiff has not pled sufficient facts to withstand a motion to dismiss."). In fact, "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" *Google*, 330 F. Supp. 2d at 706 (holding that plaintiff failed to state a claim under § 18.2-499; quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D.Va. 2003)). *See also George K. Degnon Assocs. v. Acad. for Eating Disorders*, Law No. 227768, 2005 Va. Cir. LEXIS 202, at *6-7 (Va. Cir. Ct. Nov. 29, 2005). Because WWNS fails to assert any facts supporting its accusation of statutory conspiracy under the heightened Virginia pleading standard, *see Google*, 330 F. Supp. 2d at 706, this final claim must also be dismissed.

## IV.    **VENUE IS NOT PROPER IN THE DISTRICT OF COLUMBIA**

### A.    **Standard of Review.**

The burden is on the plaintiff to establish that venue is proper in the District of Columbia, and venue must be established for each individual cause of action. *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). As set forth below, Plaintiff's argument for establishing venue with respect to EDO is a purely legal argument; in other words, Plaintiff makes no factual allegations in this regard. Because there are no pertinent factual disputes here, the question of venue is a pure question of law. *Modaressi*, 441 F.

Supp. 2d at 53-54.     Additionally, in resolving a 12(b)(3) motion, plaintiff's legal conclusions need not be accepted as true. *See Quarles v. General Inv. & Dev't Co.*, 260 F.Supp.2d 1, 8 (D.D.C. 2003).

### B.     The Case Against EDO Should Be Dismissed for Improper Venue.

Under Plaintiff's theory, establishing venue in this District regarding EDO is dependent upon the Court being able to assert personal jurisdiction over EDO.  WWNS alleges that "Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because EDO Corporation, having caused tortious injury in the District of Columbia, is subject to personal jurisdiction under District of Columbia Code § 13-423."  Compl. ¶ 8.[15]  But as previously explained, WWNS has failed to establish personal jurisdiction under D.C. CODE § 13-423, so it follows that the sole basis advanced by WWNS for establishing venue in this Court is inapplicable.  In other words, because the Court lacks personal jurisdiction, WWNS's assertion of venue must also fail.

Because WWNS does not assert any other basis for venue with respect to EDO, this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3).  EDO respectfully requests that the Court dismiss this case altogether, rather than transfer to

---

[15]     Although WWNS does not specify the subsection of 28 U.S.C. § 1391(a) that it believes provides proper venue regarding EDO, we must presume that WWNS bases its claim of venue on 28 U.S.C. § 1391(a)(3) because WWNS asserts that venue is based on personal jurisdiction against EDO. *See* Compl. ¶ 8. Indeed, the only subsection of 28 U.S.C. § 1391(a) to which WWNS's reasoning is applicable is subsection (3), which states that venue exists in "a judicial district in which any defendant is subject to personal jurisdiction ...."  Subsection (1) does not apply because it requires all defendants to reside in the same State, which is not the case here.  Subsection (2) does not apply because no events occurred, and no property is situated, in the District of Columbia with respect to claims against EDO (nor does WWNS allege this).  Moreover, if WWNS wanted to assert venue over EDO under subsection (2), presumably it would have specifically asserted the elements of subsection (2), as it did with respect to DynCorp. Compl. ¶ 7.  WWNS's conspicuous omission of subsection (2) assertions in its venue argument regarding EDO presumably means that WWNS bases its venue arguments regarding EDO solely on subsection (3). *Compare* Compl. ¶ 7 *with* Compl. ¶ 8.

another forum, because a transfer of venue will not cure the fundamental defects of the Plaintiff's purported case against EDO.

**C.      Alternatively, Venue Should Be Transferred to the Eastern District of Virginia.**

In the alternative, this case should be transferred to the Eastern District of Virginia under 28 U.S.C. § 1404(a).  *See also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Modaressi*, 441 F. Supp. 2d at 53.

Under 28 U.S.C. § 1406(a), "[t]he decision of whether dismissal or transfer is 'in the interest of justice' rests in the sound discretion of the district court."  *Davis v. Am. Soc'y of Civ. Eng'rs*, 290 F. Supp. 2d 116, 120 (D.D.C. 2003).  As stated above, a transfer of venue will not cure the fundamental defects in the Complaint.  However, if the Court chooses instead to transfer the case, the most appropriate venue is the Eastern District of Virginia.

In the instant case, as in *Davis*, the Plaintiff offers no factual allegations to support its choice of forum.  *See Davis*, 290 F. Supp. 2d at 122.  Plaintiff asserts no facts whatsoever to support a connection between the District of Columbia, on the one hand, and EDO, DynCorp or the alleged events, on the other.[16]  By contrast, there *is* factual support for establishing venue in the Eastern District of Virginia:  DynCorp is headquartered in Falls Church, Virginia.  Compl. ¶ 4.  WWNS alleges that "[i]n furtherance of the conspiracy, DynCorp acted in whole or in part from its offices in the

---

[16]      Paragraphs 7-8 of the Complaint do not assert facts; they merely assert legal conclusions and unsupported allegations.

Commonwealth of Virginia." *Id.* ¶ 141. EDO has an office in Arlington, Virginia where relevant witnesses and documents are located. And all of the claims alleged by WWNS against EDO are rooted in Virginia law. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

Against the backdrop of WWNS choosing to file its Complaint in the District, WWNS has pled causes of action from *another* jurisdiction – in effect acknowledging that Virginia, not D.C., has a more significant relationship to this dispute. Accordingly, WWNS seems to concede that venue is more appropriate in Virginia. Nevertheless, in an effort get the best of both worlds – the preferred forum of D.C. and the preferred substantive law of Virginia – the forum-shopping Plaintiff asserts an unsupported argument for venue in the District of Columbia, surely to promote its own inequitable advantage.

Also instructive to the venue analysis is the forum selection clause contained in the WPPS subcontract between WWNS and DynCorp. As DynCorp argues in its own motion to transfer venue, the "Disputes" provision of the WPPS subcontract restricts litigation between the parties to courts of competent jurisdiction *in the Commonwealth of Virginia*, supporting a transfer of venue to the Eastern District of Virginia.[17] Although EDO is not a party to this contract, the interests of justice and the efficient administration of this case demand the transfer the entire matter to the same forum, rather than splitting up the litigation among multiple forums. With the exception of the claim against DynCorp for alleged violations of 42 U.S.C. § 1981, WWNS has asserted the same

claims against both Defendants. If the forum selection clause in the WPPS subcontract results in the transfer of the case against DynCorp to Virginia, it is most efficient to transfer the case against EDO to Virginia as well.

In sum, WWNS has failed to meet its burden of establishing venue in the District of Columbia – and indeed has failed to offer any factual support whatsoever for establishing venue in the District of Columbia. Because of this failure, and because the facts, the claims, and the interests of justice overwhelmingly support a transfer of venue to the Eastern District of Virginia, EDO respectfully asks the Court to grant such a transfer.

## V.    **CONCLUSION**

Despite the best efforts of the forum-shopping Plaintiff to position itself in the District of Columbia while applying Virginia law, WWNS's Complaint cannot stand. Indeed, the Complaint amounts to nothing more than a string of unsupported allegations and conclusory statements about EDO.

In sum, Plaintiff's Complaint fails to establish personal jurisdiction over EDO in the District of Columbia and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). Further, Plaintiff's Complaint fails to establish the basic elements of the five causes of action alleged against EDO and must therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). And finally, Plaintiff fails to establish venue in the District of Columbia, justifying a dismissal of this case under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, a transfer to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

---

[17]    *See* Memorandum in Support of Defendant DynCorp International's Motion to Transfer under 28 U.S.C. § 1404(a) or in the Alternative Dismiss Under Fed R. Civ. P 12(b)(3), filed 11/13/06, Docket #10, at

## VI.     RELIEF REQUESTED

EDO respectfully requests the following relief:

a.     that the Court grant EDO's Motion to Dismiss for Lack of Personal Jurisdiction;

b.     that the Court grant EDO's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted;

c.     that the Court grant EDO's Motion to Dismiss for Improper Venue, or alternatively, transfer this case to the U.S. District Court for the Eastern District of Virginia; and

d.     that the Court award EDO such other relief as it may deem just and proper.

pp. 2-3.

Dated:    Washington, D.C.
          November 15, 2006


                              Respectfully submitted,


                              /s/ William M. Sullivan, Jr.
                              William M. Sullivan, Jr.
                                    Federal Bar No.  467269
                                    Email: wsullivan@winston.com
                              Sarah M. Hall
                                    Federal Bar No. 479119
                                    Email: smhall@winston.com
                              Ryan S. Spiegel
                                    Federal Bar No. 489103
                                    Email: rspiegel@winston.com
                              **WINSTON & STRAWN LLP**
                              1700 K Street, N.W.
                              Washington, D.C.  20006
                              Tel. (202) 282-5000
                              Fax (202) 282-5100

                              *Counsel for Defendant EDO Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2006, a copy of the foregoing *MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EDO CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE* was filed electronically. I understand that pursuant to Local Civil Rule 5.4(d), electronic filing of the aforementioned Motion operates to effect service on all counsel, because all counsel have obtained CM/ECF passwords.

/s/ William M. Sullivan, Jr.
William M. Sullivan, Jr.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:06-CV-01717 |
| DYNCORP INTERNATIONAL, LLC, and EDO CORPORATION. | ) ) ) | Judge Richard J. Leon |
| Defendants. | ) ) ) | |

## PROPOSED ORDER

After having reviewed the parties' memoranda as well as the pertinent facts, statutes, case law, and other relevant materials, the *MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EDO CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE* is hereby

GRANTED, and Plaintiff's case against EDO is dismissed in its entirety.

_____
The Honorable Richard J. Leon
United States District Judge