# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 1:06cv01717 (RJL) |
| DYNCORP INTERNATIONAL, LLC, | ) ) | Judge Richard J. Leon |
| and | ) ) | ORAL ARGUMENT REQUESTED |
| EDO CORPORATION, | ) ) |  |
| Defendants. | ) ) ) |  |

**PLAINTIFF WORLDWIDE NETWORK SERVICES, LLC'S
MEMORANDUM IN OPPOSITION TO DEFENDANT DYNCORP INTERNATIONAL'S
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR IN THE ALTERNATIVE
DISMISS UNDER FED. R. CIV. P. 12(b)(3)**

Michele A. Roberts (D.C. Bar No. 337998)
Anthony T. Pierce (D.C. Bar No. 415263)
Debra A. Drake (D.C. Bar No. 479907)
Jonathan P. Robell (D.C. Bar. No. 493977)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288

*Counsel for Plaintiff Worldwide Network
Services, LLC*

## **TABLE OF CONTENTS**

I.    WWNS'S PLED CAUSES OF ACTION ARE NOT SUBJECT TO ARBITRATION AND ARE PROPERLY BEFORE THIS COURT ...................................2

   A.    The CIVPOL Subcontract Arbitration Clause Does Not Encompass the Claims Asserted by WWNS......................................................................4

       1.    WWNS's § 1981 discrimination claim is outside the scope of the CIVPOL Subcontract arbitration clause. .......................................6

       2.    WWNS's asserted tort claims fall outside the scope of the CIVPOL Subcontract arbitration clause.....................................8

II.   WWNS'S PLED CAUSES OF ACTION ARE NOT SUBJECT TO TRANSFER PURSUANT TO § 1404(a)......................................................................11

   A.    The WPPS Subcontract Forum Selection Clause Does Not Encompass the Claims Asserted by WWNS...................................................11

       1.    Neither party intended for the claims here to be subject to the forum selection clause.................................................................12

       2.    The claims asserted by WWNS are not "actions under the Subcontract" or otherwise based upon the WPPS subcontract. .................13

   B.    Even If the WPPS Subcontract Applies, Transfer Is Not Required Nor Appropriate under 28 U.S.C. 1404(a). ...................................14

       1.    The Eastern District of Virginia is not a more convenient forum than the District of Columbia.....................................................15

       2.    The "interests of justice" weigh against a transfer.....................................16

Plaintiff World Wide Network Services, LLC ("WWNS"), by and through undersigned counsel, respectfully submits this memorandum in opposition to Defendant DynCorp International's Motion to Transfer under 28 U.S.C. § 1404(a) or in the Alternative Dismiss under Fed. R. Civ. P. 12(b)(3).

## INTRODUCTION

DynCorp International, LLC ("DynCorp" or "DI")'s motion should be denied for two reasons. First, in its motion – which centers on the existence of an arbitration clause in the CIVPOL subcontract[1] and a forum selection clause in the separate and distinct WPPS subcontract[2] – DynCorp ignores both the existence of another defendant, EDO Corporation, and the fact that WWNS's racial discrimination claim and tort claims are based on DynCorp's wrongful acts independent of and across the two subcontracts. Instead, DynCorp requests, without citation to any authority, that the Court transfer the entire case to another forum and let that forum decide which claims remain in federal court and which are to be arbitrated. Rather than addressing WWNS's Complaint as a whole, it instead tries to shoehorn discrete portions of it into the forum and arbitration clauses while at the same time implicitly suggesting that the WPPS subcontract carries more weight that the CIVPOL subcontract. Such a convoluted and unsupported motion should be denied.

Second, contrary to DynCorp's contention, the issue is not whether the CIVPOL subcontract's arbitration clause and the WPPS subcontract's forum selection clause are valid; rather, it is about whether they are applicable to the claims asserted by WWNS. In its zealous

---

[1] Subcontract Number WWNS04-0001-CIV between DI and WWNS, dated November 12, 2004.

[2] Subcontract Number WWNS04-0002-WPPS between DI and WWNS, dated January 18, 2005.

effort to avoid this jurisdiction, DynCorp loses sight that the statutory and tort claims here are

not subject to those clauses.  Indeed, DynCorp's repeated fall-back argument – that a contractual

relationship exists between it and WWNS in and of itself is enough to trigger those clauses – is a

red herring designed to confuse the issues.  Absent evidence of any intent or contractual language

indicating that such claims should be subject to those clauses, the claims should remain with this

Court.  Such a result is in accord with the well-established principle that a plaintiff has the right

to control its own litigation.

## ARGUMENT

## I.     WWNS'S PLED CAUSES OF ACTION ARE NOT SUBJECT TO ARBITRATION AND ARE PROPERLY BEFORE THIS COURT

A motion to enforce an arbitration clause "is properly reviewed under the summary

judgment standard of Rule 56(c)."  *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 93 (D.D.C. 2005);

*see also Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (finding same

and noting that a motion to dismiss pursuant to Fed. R. Civ. P. 12 is inappropriate in cases

attempting to compel arbitration).[3]  Under this standard, the Court may only enforce the CIVPOL

---

[3]  Without citation to any authority, DynCorp asserts that because "causes of action are based on facts arising from both the WPPS and CIVPOL subcontracts, the pending action should be transferred under § 1404(a) or dismissed under Rule 12(b)(3) so that a Virginia court can decide which claims are arbitrable and which claims are to be litigated."  (DI Mem. at 17, 20).  The only case DynCorp purports to "cite" for this proposition is the *Brown* case.  (DI Mem. at 17 n.7).  DynCorp states that, pursuant to *Brown*, the Court "may transfer the case to another form under 1404(a)."  (DI Mem. at *id.*).  However, the *Brown* case did not involve the transfer of any case, and DynCorp failed to provide a pincite to identify such language.  Indeed, the *Brown* case makes no mention of "transfer" or "1404" at all.  In the absence of any authority otherwise, this Court is the correct body to determine whether WWNS's claim properly are before it.

DynCorp also asserts that this court lacks diversity jurisdiction under 28 U.S.C. § 1332 because "both Plaintiff WWNS and Defendant DI are limited liability companies incorporated in Delaware."  (DI Mem. at 4 n.1).  For diversity purposes, LLCs are treated as unincorporated associations, whose citizenship is determined by the citizenship of the LLC's members.  *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 40 (D.D.C. 2003); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990).  WWNS's membership consists of two individual citizens of Maryland and

subcontract's arbitration clause if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hughes*, 384 F. Supp. 2d at 94 (enforcing arbitration clause which *specifically* includes discrimination claims) (citing Fed. R. Civ. P. 56(c)); *Brown*, 267 F. Supp. 2d at 69 (citing same). DynCorp "bears the burden of establishing the absence of evidence to support [WWNS's] case." *Hughes*, 384 F. Supp. 2d at 94 (citation omitted).[4] Moreover, in determining whether WWNS's asserted claims are subject to arbitration, the Court "must give [WWNS] the benefit of all reasonable doubts and inferences that may arise." *Id.* at 94 (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

---

a partnership organized in Texas. DynCorp's corporate disclosure statement indicates that its membership consists of DynCorp International, Inc., a Delaware corporation. The parties, therefore, are in fact diverse, and the Court maintains jurisdiction under 28 U.S.C. § 1332.

[4] DynCorp asserts, again without citation to authority, that "the party challenging enforcement of the arbitration clause has the burden of proof." (DI Mem. at 18). DynCorp also states that "in the absence of an express provision excluding a particular grievance, only the most forceful evidence of a purpose to exclude the claim from arbitration will prevail." (DI Mem. at 18 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585-85 (1960)). DynCorp is incorrect, and appears to confuse the applicable standard here with that used in collective bargaining agreement cases. As the *United Steelworkers* Court noted, the use of such a strict standard to enforce arbitration clauses in collective bargaining agreements is necessary to enforce the policy "reflected in our national labor laws." *United Steelworkers*, 363 U.S. at 577-78 (citation omitted). To that end, "[a] major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement." *Id.* at 578; *see also AT&T Techs., Inc. v. Comm. Workers of Amer.*, 475 U.S. 643, 657 (1986) ("[The] presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.") (citations omitted). Thus, a collective bargaining agreement "is more than contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers*, 363 U.S. at 578.

As discussed below, the discrimination and tort claims WWNS asserts in its Complaint are not subject to the relevant arbitration clause. Thus, DynCorp has failed to meet its burden under the Rule 56(c) standard and the Court should deny DynCorp's motion.

### A.    The CIVPOL Subcontract Arbitration Clause Does Not Encompass the Claims Asserted by WWNS

To determine whether WWNS must submit its claims to arbitration, the Court should answer two questions: First, "'[did] the parties enter[] into a valid and enforceable arbitration agreement and, if they did, [second] does the arbitration agreement encompass the claims raised in the complaint?'" *Brown*, 267 F. Supp. 2d at 70 (quoting *Nelson v. Insignia ESG, Inc.*, 215 F. Supp. 2d 143, 149-50 (E.D. Pa. 1993)); *see also Hughes*, 384 F. Supp. 2d at 95 (noting same standard and quoting same). If the answer to either question is "no", the claims are not subject to arbitration.

As an initial matter, WWNS does not challenge the validity of the CIVPOL subcontract's arbitration clause. Section 10.9.2 of the CIVPOL subcontract states:

> Any disputes arising out of or relating to this Subcontract which are not covered by [10.9.1, which provides for resolution of claims for adjustment or additional costs resulting from acts of the government] and are not resolved after a mutual, good faith effort shall be settled by arbitration . . . ."

DI Mem., Exh. 2. The key phrase is "arising out of or relating to this Subcontract." WWNS does not contest the applicability of the clause to claims that arise out of or relate to the subcontract. Indeed, as DynCorp points out, WWNS alerted DynCorp that it was "prepared to initiate arbitration under clause 10.9.2 of the Subcontract if resolution is not possible" to recover for breach of contract and other claims. *See* DI Mem., Exh. 3. In other words, WWNS will arbitrate claims "arising out of or relating to" the CIVPOL subcontract when and if it chooses to do so.

The claims asserted in the Complaint, however – racial discrimination and various torts – do not arise out of or relate to the CIVPOL subcontract.  DynCorp contends that WWNS cannot avoid "[a] valid arbitration clause . . . by asserting statutory or tort claims."  (DI Mem. at 18 (citations omitted)).  WWNS is not attempting to do that, nor does WWNS dispute that such claims are arbitrable.  But such claims only are arbitrable if provided for by the contractual language or if the parties so intended.  Neither basis is present here.

There is no contractual evidence that the parties intended to arbitrate claims that are not related to the subject matter of the subcontract itself.  Indeed, if WWNS and DynCorp intended to resolve all disputes via arbitration, regardless of whether it arose out of or related to the subcontract, they could have inserted language to that effect.  As it is, DynCorp, the drafter of the CIVPOL Subcontract and clearly the party with the most bargaining power, limited the arbitration clause to disputes "arising out of or relating to this Subcontract," thus affirmatively denoting its intention to limit the arbitration clause's scope.  Moreover, the arbitration clause requires that the parties attempt to resolve disputes arising out of the subcontract after a "mutual, good faith effort."  It is unclear how the type of claims asserted here – racial discrimination, conspiracy, defamation – could ever be so resolved, given the antagonistic nature of these claims.  Such a "good faith effort" potentially could resolve conflicts, however, such as disagreement over the scope of work orders or payment disputes – run-of-the-mill contract-based claims that routinely are resolved through negotiation and discussion.

There also is no evidence that either party intended to arbitrate the type of claims present here.  Pursuant to the CIVPOL Subcontract, if any of its provisions are ambiguous, the ambiguity "shall be resolved by applying the most reasonable interpretation under the circumstances, giving full consideration to the intentions of the parties at the time of subcontracting.  *See* DI Mem.,

Exh. 2, § 4.2.  DynCorp has offered no evidence of such intent at the time it entered the

subcontract.  Absent such a showing, WWNS's claims are not subject to arbitration.  "'[T]he

FAA [Federal Arbitration Act] does not require parties to arbitrate when they have not agreed to

do so . . . .  It simply requires courts to enforce privately negotiated agreements to arbitrate, like

other contracts, in accordance with their terms.'"  *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76-

77 (2d Cir. 1998) (citing *Volt Info. Sciences v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S.

468, 478 (1989)).  DynCorp's motion should be denied.

### 1. WWNS's § 1981 discrimination claim is outside the scope of the CIVPOL Subcontract arbitration clause.

Determinations as to whether discrimination claims are subject to arbitration most often

occur in the employment context.  And, in those cases where courts have found the claim subject

to arbitration, they have done so when the claim is *related to the subject matter* of the contract.

For instance, in the *Oldroyd* case, relied upon by DynCorp, the court found that the

discrimination claim was subject to arbitration, pursuant to a clause similar to the one here:  "any

dispute, controversy or claim arising under or in connection with this Agreement shall be settled

exclusively by arbitration . . . ."  *Oldroyd*, 134 F.3d at 74.  *Oldroyd* is distinguishable from the

instant case in two important ways.  First, the plaintiff asserted a claim of retaliatory discharge.

As the Court of Appeals noted, more "than half of [the plaintiff's] employment contract relate[d]

to the subject of termination."  *Id.* at 77.  Second, the plaintiff also asserted a parallel breach of

employment contract claim based on the exact factual allegations.  Thus, because both the

discrimination and breach of contract claims related to the subject matter of the employment

contract, those claims "clearly" fell within the scope of that contract's arbitration clause.  *Id.*

Conversely, the discrimination claim WWNS's asserts here is not based upon the subject

matter of the CIVPOL Subcontract or any contractual provision but rather upon DynCorp's

wrongful acts. The Court of Appeals for the Ninth Circuit, in a recent, unpublished opinion, found that because a "§ 1981 claim ar[ose] from [plaintiff's] employment relationship with [defendant], not in connection with any provision in the written Agreement" the claim was not subject to the agreement's arbitration clause. *See Lebourgeois v. Rebecca Irene Fisheries, LLC*, No. 03-35965, 2005 U.S. App. LEXIS 9245, at *4-5 (9th Cir. May 19, 2005). The Court found that the "written contract merely specifies [the plaintiff's] employment duties, rules of conduct and compensation terms," and that his discrimination claims did not "bear a 'significant relationship to the contract'" or "'arise in connection with' the Agreement." *Id.* at *5 (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)). Similarly, WWNS's racial discrimination claim does not "bear a significant relationship" to the CIVPOL subcontract. Just as in *Lebourgeois*, the CIVPOL subcontract merely provides the terms and conditions of WWNS's work for DynCorp.

Moreover, that DynCorp's wrongful acts were manifested in the context of its contractual relationship with WWNS does not mean that WWNS's § 1981 claim arises out of or relates to the CIVPOL subcontract. A court has refused to compel arbitration of a racial discrimination claim where the claim was "not grounded in a dispute over the meaning [of the contract's] provisions . . .but instead pertain to [defendant's] motives . . . ." *Stokes v. Norfolk S. Rwy. Co.*, 99 F. Supp. 2d 966, 971 (N.D. Ind. 2000). The court found that although the plaintiff's claims involved "rights that [were] determined by [a collective bargaining agreement], that [did not] mean that his claims involve[d] application or interpretation of [the Agreement]." *Id.* Instead, the court only had to "decide, factually, [defendant's] motives in denying" the plaintiff those rights. *Id.*; *cf. Doctor's Assoc., Inc. v. Agrawal*, Civ. No. 3:05cv250 (PCD), 2006 U.S. Dist. LEXIS 30122, at *10-11 (D. Conn. Apr. 13, 2006) (finding that arbitration clause encompassed §

1981 claim where the discrimination solely was based on the allegation that the defendant "preclude[ed] [plaintiff] from participating in additional contracting opportunities" and the underlying contract contained a provision regarding that exact matter).

Outside of the employment context, the only case upon which DynCorp relies to support its contention that the CIVPOL Subcontract's arbitration clause encompasses WWNS's § 1981 claim is *Thinket Ink Info. Res. v. Sun Microsystems*, 368 F.3d 1053 (9th Cir. 2004).  DynCorp alleges that the *Thinket Ink* court "held that the § 1981 claim was subject to an arbitration clause which states that '[a]ny and all disputes or controversies whether of law or fact or any nature whatsoever arising from or respecting this Agreement' were to be arbitrated."  (DI Mem. at 19).  The issue in *Thinket Ink*, however, was "whether a corporation has standing to commence an action under 42 U.S.C. § 1981," not whether the claim was arbitrable.  *Thinket Ink*, 368 F.3d at 1055.  Indeed, contrary to DynCorp's suggestion otherwise, the Court did not engage in any analysis of the arbitrability of § 1981 claims.  All the *Thinket Ink* court stated with respect to arbitrability was that the district court "did not err in compelling arbitration of the claims," where the lower court found that subsequent agreements between the parties did not supersede the original agreement's arbitration clause.  *Id.* at 1060, 1057.  As previously noted, such an intent is not present here and thus WWNS's § 1981 claim is not arbitrable.

**2.  WWNS's asserted tort claims fall outside the scope of the CIVPOL Subcontract arbitration clause.**

For similar reasons, neither WWNS's claims for defamation, tortious interference with contract, tortious interference with prospective economic advantage nor its conspiracy causes of action arise out of or relate to the CIVPOL subcontract and thus are not arbitrable.  DynCorp asserts that "defamation, tortious interference, and conspiracy claims have all been held to be arbitrable under contractual arbitration clauses."  (DI Mem. at 19).  (Notably, neither of the two

cases DynCorp cites for this proposition – *Kroll v. Doctor's Ass'n.*, 3 F.3d 1167 (7th Cir. 1993) and *Sweet Dreams Unlimited v. Dial-A-Mattress Int'l*, 1 F.3d 639 (7th Cir. 1993) – concerned claims of defamation or conspiracy.). DynCorp, however, does not address the circumstances in which those types of claims are held to be arbitrable. For instance, in the *Kroll* case, the plaintiff alleged fraud connected to the denial of a request to reinstate franchises pursuant to franchise agreements. *Kroll*, 3 F.3d at 1169. The Court of Appeals for the Seventh Circuit found the claim subject to the arbitration clause because the fraud tort was directly related to the subject matter of the relevant agreement, *i.e.*, franchises. *Id.* at 1170. The Court reasoned that "[t]he touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause." *Id.* at 1170; *see also Sweet Dreams*, 1 F.3d at 643 (same) (citations omitted). In *Sweet Dreams*, the Court found the plaintiff's claims for fraudulent inducement and intentional interference with business relationships were subject to the underlying agreement's arbitration clause only because they were connected to the subject matter of the pertinent agreement.[5] That it not the case here.

WWNS's tort claims are not related to the subject matter of the CIVPOL subcontract. As the *Kroll* court emphasized, the plaintiff there could have cast his claim either as one for breach of contract or, as he did, fraud. *Id.*; *see also Genesco v. T. Kakiuchi & Co.*, 815 F.2d 840, 846-47 (2d Cir. 1987) (finding that conspiracy claims, among others, were arbitrable because (1) they were based on "overcharges and defective goods" – the exact subject matter of the sales agreements and (2) parallel contractual causes of action also were asserted). WWNS cannot do

---

[5] Additionally, the arbitration clause in *Sweet Dreams* subjected "any controversy or claim arising out of or relating to this Agreement, or breach thereof" to arbitration. *Sweet Dreams*, 1 F.3d at 642. The distinction between "any controversy or claim" and a "breach thereof" indicates a broader intent to arbitrate than the instant arbitration clause.

the same here. The subject matter of the CIVPOL subcontract, which involves the type and method of assigning work and payment for such work, does not provide a basis for WWNS to make a parallel breach of contract claim for any of its asserted tort claims.

Indeed, WWNS's tort claims do not involve the CIVPOL subcontract at all: its defamation, tortious interference and related conspiracy claims involve its employee contracts and/or prospective business relationships with others.[6] Courts have determined that torts involving third-party contracts, such as certain torts alleged here, are not subject to arbitration clauses contained in a separate agreement. For example, in *Genesco*, a case relied upon by DynCorp, the plaintiff asserted that the defendants had tortiously interfered with its contractual relationship with an executive officer. The court found that "[c]learly, [defendant's] alleged interference with [plaintiff's] employment contract with one of its officers does not 'arise under' or 'relate to'" the parties sales agreements and thus the claim was "not subject to arbitration." *Genesco*, 815 F.2d at 856 (citing *Mediterranean Enters., Inc. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir. 1983) (finding that a count alleging a conspiracy to induce breach of a separate third-party contract was not subject to arbitration)). In so finding, the *Genesco* court relied upon *Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967), which similarly found that an "allegation that the [defendant] induced plaintiff's employee to violate his employment agreement was 'on its face unrelated' to the textile sales contracts between the parties" and thus not arbitrable. *Id.*

Because WWNS's tort and discrimination claims do not arise out of or relate to the CIVPOL Subcontract, these causes of actions are not arbitrable. As the *Sweet Dreams* court

---

[6]   That these claims do not arise out of or relate to the CIVPOL Subcontract further is underscored by the fact that WWNS properly has levied the same causes of action against EDO Corporation, with which WWNS has *no* contractual relationship.

noted, "the duty to arbitrate remains one assumed by contract, and we will not compel parties to arbitrate disputes unless they have agreed to do so." *Sweet Dreams*, 1 F.3d at 641 (citing *Nat'l R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 140 (7th Cir. 1977)). WWNS has not agreed to do so, and DynCorp has not met its burden of establishing that it is "entitled to judgment as a matter of law." As a result, DynCorp's motion to transfer should be denied and this Court should resolve WWNS's Complaint on the merits.

## II.    WWNS'S PLED CAUSES OF ACTION ARE NOT SUBJECT TO TRANSFER PURSUANT TO § 1404(a)

### A.    The WPPS Subcontract Forum Selection Clause Does Not Encompass the Claims Asserted by WWNS

For reasons akin to the ones noted in Part I, the WPPS subcontract's forum selection clause also does not apply to the claims asserted in WWNS's Complaint. It is well-established that "[a] forum selection clause is only relevant to [a] Court's transfer analysis to the extent that 'the clause applies to the type of claims asserted in the lawsuit.'" *See, e.g.*, *The Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d 269, 277-78 (D.D.C. 2002) (denying motion to transfer, in relevant part, because the asserted causes of action were not contemplated by the forum selection clause) (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997)). The determination of whether claims are subject to a forum selection clause "depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra*, 119 F.3d at 694 (citation omitted). The wording of the forum selection clause is considered ambiguous, and the intent of the parties uncertain, if it is reasonably capable of more than one construction. *See Wyeth v. Cigan Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997).

Here, the WPPS subcontract forum selection clause clearly is capable of more than one construction. Section 10.9.2 states:

Either party may pursue litigation to resolve any dispute not covered by

[section 10.9.1] and not resolved after a mutual, good faith effort by the Parties. Any such action shall be filed only in a court of competent jurisdiction in the Commonwealth of Virginia; provided, however, that the Parties hereby expressly waive any rights to a trial by jury and agree that any legal proceeding hereunder shall be tried by a judge without a jury. *The Parties agree that the governing law applicable to any such action under this Subcontract shall be the federal law of government contracts*, as interpreted by federal judicial bodies and administrative boards of contract appeals. *To the extent federal government contract law is not dispositive; the Parties agree that the law of the State of Delaware shall govern.* Any such action by the Subcontractor must be commenced within one (1) year from the date of the Contractor's final decision, if applicable.

DI Mem., Exh. 1 (emphasis added). DynCorp asserts that the "clause explicitly states that only those disputes covered by paragraph 10.9.1 are excluded from the forum selection clause" (DI Mem. at 3), but that is a self-serving, narrow interpretation of the WPPS subcontract. The emphasized language demonstrates that the forum selection clause applies to actions "under this Subcontract." Specifically, it provides the law which governs for "any such actions under this Subcontract": federal government law or, if it is not dispositive, Delaware law. Nowhere does § 10.9.2 provide for what law governs claims, such as those asserted here, that are not "actions under the Subcontract." Because the forum selection clause language is "not susceptible of clear and definite undertaking," the parties' intent becomes a factor in determining whether claims are subject to the clause. *See L & L Constr. Ass'n v. Slattery Skanska*, 2006 WL 1102814, at *4 (D.D.C. Mar. 31, 2006) (citing *Kyriakopoulos v. George Washington Univ.*, 866 F.2d 438, 444 n.1 (D.C. Cir. 1989)).

**1. Neither party intended for the claims here to be subject to the forum selection clause.**

There is no evidence that DynCorp and WWNS intended the instant claims to be subject to § 10.9.2 of the WPPS subcontract. First, as noted, nowhere did the parties provide for what law would govern claims, such as these, that are not "actions under the Subcontract." Second, the parties inserted a "good faith" caveat in § 10.9.2. As discussed in Part I, it is unclear how

claims of this nature, which inherently are antagonistic, ever could be resolved through a "mutual, good faith effort." Finally, neither DynCorp nor WWNS could have foreseen the claims asserted here and therefore could not have intended for § 10.9.2 to apply to them.

Foreseeability of claims subject to a forum selection clause is a key factor in determining the scope of such clauses. For example, in *Terra Int'l*, on which DynCorp relies heavily, the court considered the foreseeability of the claims persuasive in its finding that the forum selection clause applied. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997). *Terra Int'l* involved a license agreement to use neutralizer technology at a manufacturing facility. *Id.* at 690. When an explosion occurred at the facility as a result of that technology, the plaintiff asserted negligent design and strict liability causes of action. *Id.* The court found that the claims fell within the licensing agreement's forum selection clause as "both parties could have anticipated that tort claims such" as these would be brought, especially because the licensing agreement provided that there would be reimbursement for "any defect in the design of [the] neutralizer . . . ." *Id.* at 695. Here, neither party could have anticipated that DynCorp would engage in wrongful acts amounting to conspiracy or defamation, or that DynCorp would racially discriminate against WWNS, or that DynCorp tortiously would interfere with WWNS's employee and prospective business relationships. Nor is there any contractual language anticipating such claims. As a result, these causes of action clearly were not intended to fall within the scope of § 10.9.2 and thus are not subject to the instant transfer motion.

### 2. The claims asserted by WWNS are not "actions under the Subcontract" or otherwise based upon the WPPS subcontract.

DynCorp contends that "[i]t is well-established that the scope of a forum selection clause encompasses non-contractual causes of action." (DI Mem. at 9). The contention, however, begs the question at issue here: whether WWNS's asserted causes of action are based upon the WPPS

subcontract, and they are not.  The main case on which DynCorp relies to support its argument

that the asserted tort claims[7] are subject to § 10.9.2 readily is distinguishable.  In *Terra Int'l*, the

court found the plaintiff's negligent design and strict liability subject to the forum selection

clause because (1) the contract envisioned the action underlying the claim and thus arose under

the contract; and (2) the plaintiff "plainly could have asserted a parallel claim for breach of

contract."  *Terra Int'l.*, 119 F.3d at 695.  For the same reasons as discussed in Part I.A.2, the tort

claims asserted here are not based upon the WPPS subcontract and thus are not subject to the

forum selection clause in that subcontract.

> **B.  Even If the WPPS Subcontract Applies, Transfer Is Not Required Nor Appropriate under 28 U.S.C. 1404(a).[8]**

    Assuming that the WPPS Subcontract's forum selection clause encompasses WWNS's

asserted claims, this Court still is the proper body to adjudicate those claims.  While a forum

selection clause is "instructive," it is "not necessarily controlling."  *See Sheraton Operating

Corp. v. Just Corp. Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997).  As the Court has observed:

> A contractual provision specifying the forum for any litigation arising out
> of a contract . . . cannot be decisive on a motion to transfer.  Congress set

---

[7]  With respect to WWNS's § 1981 claim, the only case upon which DynCorp relies is *Thinket Ink Info. v. Sun Microsystems*, 368 F.3d 1053 (9th Cir. 2004), which tangentially involved an arbitration clause, not a forum selection clause.  *See* Part I.A.1.

[8]  Dismissal pursuant to Fed. R. Civ. P. 12(b)(3) clearly is not warranted here.  The Virginia forum with jurisdiction over the claims asserted by WWNS is federal court, pursuant to 28 U.S.C. §§ 1331, 1332, 1367.  Indeed, DynCorp concedes that the transferee court "presumptively [would be] the U.S. District Court for the Eastern District of Virginia."  (DI Mem. at 15).  A motion to transfer pursuant to § 1404(a) is the proper method to challenge venue between two federal courts.

Dismissal pursuant to Fed. R. Civ. P. 12 is appropriate "when forum selection clause specifies a non-federal forum.  In that case, it seems the district court would have no choice by to dismiss the action so it can filed in the appropriate forum . . . ."  *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001).  Because a Virginia state court would not have jurisdiction over WWNS's claims, DynCorp's motion to dismiss is inappropriate.

> down in § 1404(a) the factors it thought it should be decisive on a motion
> for transfer.  Only one of these – the convenience of the parties – is properly
> within the power of the parties themselves to affect by a forum-selection clause.
> The other factors – the convenience of the witnesses and the interest of justice –
> are third party or public interests that must be weighed by the district court; they
> cannot be automatically outweighed by the existence of a purely private agreement
> between the parties.

*Id.* (citing *Turner & Newall, PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1308, 1311

(D.D.C. 1987)).  Thus, this Court has "broad discretion" to determine whether a transfer is

appropriate "according to an 'individualized, case-by-case consideration of convenience and

fairness.'"  *Id.* at 25-26 (multiple citations omitted) (denying transfer solely because so doing

would shift inconvenience from one party to the other).

Section 1404(a) itself mandates that the Court "take account of factors other than those

that bear solely on the parties' private ordering of their affairs."  *Stewart Org., Inc. v. Ricoh*

*Corp.*, 487 U.S. 22, 32 (1988).  Those factors include:

> The private interest considerations include:  (1) the plaintiffs' choice of forum,
> unless the balance of convenience is strongly in favor of the defendants; (2) the
> defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the
> convenience of the parties; (5) the convenience of the witnesses . . . but only to
> the extent that the witnesses may actually be unavailable for trial in one of the
> fora; and (6) the ease of access to sources of proof.  The public interest
> considerations include:  (1) the transferee's familiarity with the governing laws;
> (2) the relative congestion of the calendars of the potential transferee and
> transferor courts; and (3) the local interest in deciding local controversies at
> home.

*FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 13 (D.D.C. 2006).  Here, the public

and private interests outweigh any interest provided by the WPPS forum selection clause.

**1.  The Eastern District of Virginia is not a more convenient forum than the
District of Columbia.**

Within the "framework" of public and private interests, the WPPS forum selection clause

merely "is treated as a manifestation of the parties' preferences to a convenient forum."  *Jumara*

*v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).  However, DynCorp has offered no

evidence – nor can it – that the Eastern District of Virginia is a more convenient forum than this Court.  *See Sheraton Operating Corp.*, 984 F. Supp. at 25 ("The moving party has the burden of showing that the convenience of the parties and witnesses favors transfer . . . .") (quotation omitted).  DynCorp has not indicated any kind of hardship associated with litigating the instant matter before this Court.  Indeed, DynCorp has not, nor can it, prove any such hardship, as less than ten miles separates this jurisdiction from the District Court for the Eastern District of Virginia, the transferee court.  *See Jumara*, 55 F.3d at 879 (noting that convenience of the parties is "indicated by their relative physical and financial condition.") (internal citations omitted). Finally, DynCorp has not made any showing that potential witnesses would be unwilling to testify in the District of Columbia.  WWNS and its witness are in the District.  Presumably witnesses for DynCorp, headquartered in McLean, Virginia, are a mere Metro-ride away.  In the absence of any inconvenience of litigating WWNS's claims here, the goal of the WPPS forum selection clause – to ensure convenience to the parties – is rendered moot and transfer therefore is not warranted.

### 2. The "interests of justice" weigh against a transfer.

The other private and public interest factors likewise weigh in favor of denying DynCorp's motion.  First, WWNS's choice of the District of Columbia, its home forum, should be given deference in determining whether a transfer of venue is justified.  *See, e.g.*, *Sheraton Operating Corp.*, 984 F. Supp. at 25 ("Ordinarily, the 'plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request.'" (citing *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 806 (D. Del. 1988) (internal citations and quotations omitted)). Further, this Court, sitting in the District of Columbia, will undoubtedly be more familiar with the common law governing nearly all of WWNS's non-federal claims than even its brethren across the Potomac.  In addition, while this district bears a heavier case load than the Eastern

District of Virginia,[9] the Court should take account of the impact on judicial resources if it were to grant DynCorp's motion.

DynCorp has posited a scenario where some of WWNS's claims against it will be adjudicated in the Eastern District of Virginia, some are sent to arbitration and, presumably, the claims WWNS has asserted against EDO Corporation – the same that are asserted against DynCorp – remain here with this Court.  *Cf. Jyachosky v. Winter*, Civ. A. 04-1733 (HHK), 2006 U.S. Dist. LEXIS, at *18-19 (D.D.C. June 29, 2006) (granting transfer where "wastefulness of time, energy and money" would result from two cases with identical issues being handled in different courts); *see Jumara*, 55 F.3d at 879 (noting that public interest include "practical considerations that could make trial easy, expeditious, or inexpensive").  Lastly, the Court should consider the value of "deciding local controversies at home."  *Thayer/Patricof Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 32 (D.D.C. 2002).  Although this case concerns, in part, events occurring on the other side of the world, WWNS is headquartered and suffered harm in the District.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant DynCorp International's Motion to Transfer under 28 U.S.C. § 1404(a) Or in the Alternative Dismiss under Fed. R. Civ. P. 12(b)(3) should be denied.

---

[9] *See* Judicial Business of the United States Courts, 2005, available at: http://www.uscourts.gov/judbus2005/appendices/c3a.pdf.

Dated:  December 8, 2006                    Respectfully submitted,

                                           /s/ Michele A. Roberts

                                           Michele A. Roberts (D.C. Bar No. 337998)
                                           Anthony T. Pierce (D.C. Bar No. 415263)
                                           Debra A. Drake (D.C. Bar No. 479907)
                                           Jonathan P. Robell (D.C. Bar. No. 493977)
                                           AKIN GUMP STRAUSS HAUER & FELD, LLP
                                           1333 New Hampshire Avenue, NW
                                           Washington, DC  20036
                                           Telephone: 202.887.4000
                                           Facsimile:  202.887.4288

                                           *Counsel for Plaintiff Worldwide Network
                                           Services, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 8, 2006, I caused a copy of the foregoing Plaintiff

Worldwide Network Services, LLC's Memorandum in Opposition to Defendant DynCorp

International's Motion to Transfer under 28 U.S.C. § 1404(a) Or in the Alternative Dismiss under

Fed. R. Civ. P. 12(b)(3) to be filed electronically.  I understand that, pursuant to Local Civil Rule

5.4(d), notice of this filing will be sent to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.


/s/ Michele A. Roberts

Michele A. Roberts