# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DYNCORP INTERNATIONAL, LLC,<br><br>and<br><br>EDO CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Case No. 1:06cv01717 (RJL)**
**Judge Richard J. Leon**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF WORLD WIDE NETWORK SERVICES, LLC'S MEMORANDUM IN
OPPOSITION TO DEFENDANT EDO CORPORATION'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM
<u>AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE</u>**

Michele A. Roberts (D.C. Bar No. 337998)
Anthony T. Pierce (D.C. Bar No. 415263)
Debra A. Drake (D.C. Bar No. 479907)
Jonathan P. Robell (D.C. Bar. No. 493977)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone: 202.887.4000
Facsimile:  202.887.4288

*Counsel for Plaintiff Worldwide Network
Services, LLC*

## <u>TABLE OF CONTENTS</u>

I.    WWNS HAS ADEQUATELY PLED BOTH JURISDICTION AND VENUE ..................2

    A.    EDO is Subject to the District of Columbia's Long-Arm Statute............................3

    B.    Venue Should Not Be Transferred to the Eastern District of Virginia ....................5

II.    THE COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF

    CAN BE GRANTED ...........................................................................................................8

    A.    The Applicable Standard on a Motion to Dismiss ...................................................8

    B.    WWNS Has Stated a Claim for Defamation............................................................8

        1.    The Complaint Sufficiently Alleges Publication. ........................................9

        2.    The Complaint Sufficiently Alleges an Actionable Statement...................11

        3.    The Complaint Adequately Alleges Malice or Negligence........................13

    C.    WWNS Has Properly Pled Tortious Interference with Contract ............................14

    D.    WWNS Has Properly Pled Tortious Interference with Prospective

    Economic Advantage ............................................................................................15

    E.    The Complaint States a Claim for Civil Conspiracy .............................................16

    F.    WWNS Has Adequately Pled Violation of the Virginia Conspiracy Act...............17

Plaintiff World Wide Network Services, LLC ("WWNS"), by and through undersigned counsel, respectfully submits this memorandum in opposition to Defendant EDO Corporation's ("EDO") Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim and to Dismiss or Transfer for Improper Venue.

## INTRODUCTION

This case is about a small, minority-owned company, World Wide Network Services, that, despite an exemplary record of performance, lost its main source of revenue due to racial discrimination, defamation, and tortious interference with its business. The Complaint now before the Court represents WWNS's effort to recover for these injuries, as the harm inflicted on it by Defendants DynCorp International LLC ("DynCorp") and EDO left it with no other option but to pursue litigation.

As to Defendant EDO, the Complaint alleges defamation, tortious interference with contract and with prospective economic advantage, and civil conspiracy under the common law of the District of Columbia and the statutory law of the Commonwealth of Virginia. Although EDO claims WWNS is "forum shopping" and seeking "deep pockets" (EDO Motion at 8, 5), WWNS has properly brought this action in its home jurisdiction against the parties that injured it, both of whom are properly before the Court.[1] Moreover, the substantive question properly before the Court at this juncture is whether WWNS has alleged any facts sufficient to state a

---

[1] WWNS disputes EDO's argument that Darlington, a privately-held corporation purchased by EDO in or around 2003, is an "indispensable party" under Federal Rule of Civil Procedure 19. *See* EDO Motion at 3 n.1. With respect to WWNS's defamation claim in particular, EDO itself is liable for the actions of its agent Steve Appling. Moreover, EDO makes no argument as to how adjudication of WWNS's claims without the presence of Darlington as a party would prejudice it in any way.

claim upon which relief could be granted. WWNS has met this standard; accordingly, the Court

should deny EDO's Motion.

## ARGUMENT

### I.     WWNS HAS ADEQUATELY PLED BOTH JURISDICTION AND VENUE

WWNS's alleges that the Court has jurisdiction over this case pursuant to 28 U.S.C.

§§ 1331, 1332, 1343, and 1367. Compl. ¶ 6. EDO centers both its jurisdiction argument and its

venue argument, however, on the District of Columbia long-arm statute, D.C. CODE § 13-423,

which WWNS asserts as the basis for venue properly lying in this district.[2] Compl. ¶ 8. EDO

argues that the D.C. long-arm statute does not apply to it because it does not maintain contacts

with the District of Columbia sufficient to satisfy section 13-423(a)(4)'s requirements. EDO

Motion at 7-8. Similarly, EDO rests its argument that venue is improper under the long-arm

statute, and further argues that venue should be transferred to the Eastern District of Virginia

pursuant to 28 U.S.C. 1404(a). EDO Motion at 26-30. The Court should reject both of EDO's

arguments because WWNS has pled facts sufficient to implicate the long-arm statute, and

because the convenience of the parties and the interest of justice would be better served by

adjudicating this case in the District of Columbia.

---

[2] EDO does, however, contest WWNS's assertion of diversity jurisdiction under 28 U.S.C. § 1332. Contrary to EDO's assertion, WWNS does not state that it or DynCorp are "incorporated" in the state of Delaware. *See* EDO Motion at 3 n.2. Both WWNS and DynCorp are limited liability companies. For diversity purposes, LLCs are treated as unincorporated associations, whose citizenship is determined by the citizenship of the LLC's members. *Shulman v. Voyou*, LLC, 305 F. Supp. 2d 36, 40 (D.D.C. 2003); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990). WWNS's membership consists of two individual citizens of Maryland and a partnership organized in Texas. DynCorp's corporate disclosure statement indicates that its membership consists of DynCorp International, Inc., a Delaware corporation. The parties, therefore, are in fact diverse, and the Court maintains jurisdiction under 28 U.S.C. § 1332.

### A.    EDO is Subject to the District of Columbia's Long-Arm Statute

EDO asserts that WWNS has failed to establish the Court's personal jurisdiction over EDO based on the District of Columbia's long-arm statute, claiming that WWNS does not "allege that any of EDO's relevant actions . . . had any effects in D.C."  EDO Motion at 6.  This is simply not the case.

Under the District of Columbia's long-arm statute, courts sitting in D.C. may exercise personal jurisdiction over a foreign defendant who acts directly or by an agent, when the claim arises from the defendant's "(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or] (4) "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. CODE § 13-1423(a) (2006).  The "persistent course of conduct" need not be related to the act that caused the injury; rather, all that is required is a "reasonable connection" between the Defendant and the forum.  *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981) (quoting *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C. Cir. 1976)).  WWNS's Complaint satisfies the terms of the statute.

EDO is subject to this Court's jurisdiction under subsection (a)(4) of the long-arm statute because it has caused harm here and because it regularly does business here and derives substantial revenue from its activities here.  First, WWNS has alleged that EDO has caused harm to WWNS in the District of Columbia, where WWNS's corporate headquarters are located.  *See* Compl. ¶¶ 2, 56-59, 92-99.  Second, as a large supplier of technology and services to the United

3

States government,[3] and other law enforcement agencies, EDO maintains significant and persistent contacts in the District of Columbia. *See* Compl. ¶ 5.[4] Indeed, EDO employs full-time personnel in offices located in the District of Columbia.[5] Accordingly, the Complaint alleges sufficient contacts between EDO and the District of Columbia to establish the propriety of venue in this district.[6] EDO's Motion to Dismiss the case for lack of jurisdiction and for improper venue should be denied.

---

[3] In its Form 10-K filed with the Securities and Exchange Commission on March 2, 2006, EDO stated that sales to the U.S. government accounted for $528.6 million, or 82% of its 2005 net sales. *See* EDO Annual Report, available at http://www.sec.gov.

[4] Although certain of EDO's commercial activities in the District of Columbia, such as its efforts to lobby the United States Congress, cannot be considered for jurisdictional purposes, *see Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813-14 (D.C. 1976), EDO's persistent course of conduct in D.C. goes beyond "getting information from or giving information to the government, or getting the government's permission to do something, which can only be done in Washington because that is where the government is." *Investment Co. Inst. v. United States*, 550 F. Supp. 1213, 1216-17 (D.D.C. 1982). Rather, EDO services certain agencies of the federal government *as customers*, a form of relationship falling outside the confines of *Environmental Research*.

[5] Simple Internet searches reveal employment listings posted by EDO for positions based in the District of Columbia. *See* "Test and Evaluation Engineer," available at: https://www.usajobs.org/jobs/200494.htm; "Engineering Analyst," available at: http://careers.penntechjobs.com/texis/jobsearch/print.html?id=4546518e49b290; "Manpower and Training Specialist," available at: http://www.careerbuilder.com/jobseeker/jobs/jobdetails.aspx?pf=true&Job_DID=J3G1SN675Q16SYTHWXG.

[6] Although WWNS asserts that it has established of jurisdiction under the D.C. long-arm statute, to the extent there are doubts as to the consistency and persistence of EDO's contacts here, WWNS requests that the Court direct the parties to undertake jurisdictional discovery. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003) (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996)). In fact, the *Diamond Chemical* court noted that the D.C. Circuit's standard for allowing jurisdictional discovery is "quite liberal," even allowing discovery where a plaintiff has not made out a *prima facie* case for jurisdiction. *Id.*

**B.    Venue Should Not Be Transferred to the Eastern District of Virginia**

EDO also asks the Court to transfer this case, pursuant to its power under 28 U.S.C. § 1404(a), to the Eastern District of Virginia.  EDO Motion at 29-31.  EDO argues that WWNS has pled "no facts whatsoever to support a connection between the District of Columbia, on the one hand, and EDO, DynCorp or the alleged events, on the other."  *Id.* at 29.

Under section 1404(a), the moving party bears the burden of establishing the propriety of the transfer.  *Thayer/Patricof Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002).  For a court considering such a motion, "the proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness."  *FC Investment Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 12 (D.D.C. 2006) (quoting *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)).  Once the movant has established that the case could have been brought in another district, the court considers whether convenience and the interest of justice weigh in favor of transfer.  *Id.*  Specifically, the Court considers the following private interest and public interest factors:

> The private interest considerations include:  (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Id.* at 13.

Here, the private interest considerations weigh in favor of denying EDO's motion to transfer.  First, WWNS's choice of the District of Columbia, its home forum, is given broad deference in determining whether a transfer of venue is justified; EDO must "bear a heavy

burden of establishing that [WWNS's] choice of forum is inappropriate." *Thayer/Patricof Educ. Funding v. Pryor Res.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980)).  Second, although EDO's chosen forum clearly is the Eastern District of Virginia, it has not, as it must, indicated any kind of hardship associated with litigating the case before this Court.  *See FC Investment Group*, 441 F. Supp. 2d  at 13-14 ("defendant must make a substantial showing that transfer is necessary").  Indeed, EDO cannot show such hardship, as less than ten miles separates the two jurisdictions.  Nor has EDO made any showing that potential witnesses would be unwilling to testify in the District of Columbia; the Court should thus assume that witnesses will voluntarily appear, and "mere inconvenience to the witness alone is not enough to warrant transfer."  *Id.*  Lastly, EDO has not made the required showing of the subject matters about which non-resident witnesses would be called upon to testify and whether those witnesses would be unwilling to travel to the District of Columbia.  *See Thayer/Patricof*, 196 F. Supp. 2d at 33 ("[A] moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction.").

Public interest considerations likewise weigh in favor of rejecting EDO's motion to transfer.  This Court, sitting in the District of Columbia, will undoubtedly be more familiar with District of Columbia common law, which governs nearly all of WWNS's non-federal claims, than even its brethren across the Potomac.  In addition, while this district bears a heavier case

load than the Eastern District of Virginia,[7] the Court should take into account the impact on judicial resources if, were it to grant EDO's motion to transfer, all or some of WWNS's claims against DynCorp remained in the District of Columbia while WWNS's claims against EDO, arising from the same facts, were adjudicated in a separate court. *Cf. Jyachosky v. Winter*, Civ. A. 04-1733 (HHK), 2006 U.S. Dist. LEXIS, at \*18-19 (D.D.C. June 29, 2006) (granting transfer where "wastefulness of time, energy and money" would result from two cases with identical issues being handled in different courts). Lastly, the Court should consider the value of "deciding local controversies at home." *Id.* at 32. Although this case concerns, in part, events occurring on the other side of the Earth from the District of Columbia, WWNS is headquartered here and suffered harm here. Moreover, while EDO accuses WWNS of "forum shopping" by filing the Complaint in WWNS's home district, EDO's Motion represents a form of "jury shopping." It is apparent that EDO fears facing a jury comprised of citizens of the District of Columbia. EDO's preference for a different jury pool should not overcome the deference given to WWNS's choice of its home forum.

Thus, because EDO has not met its "heavy burden" of showing why this case should be transferred to the Eastern District of Virginia, its motion should be denied.

---

[7] *See* Judicial Business of the United States Courts, 2005, available at: http://www.uscourts.gov/judbus2005/appendices/c3a.pdf.

## II.    THE COMPLAINT ADEQUATELY STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A.    The Applicable Standard on a Motion to Dismiss

The federal system's liberal pleading standard is well-established.  A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claim.  Pursuant to Rule 12(b)(6), the Court should grant a motion to dismiss for failure to state a claim only "when it is clear that no relief could result *under any facts consistent with the allegations*."  *Carter v. Wash. Metro. Transit Auth.*, No. 05cv1970, 2006 U.S. Dist. LEXIS 63428, at *5 (D.D.C. Sept. 6, 2006) (emphasis added) (citing *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957)).  The Court must assume as true all factual allegations set forth in the Complaint, and must "construe the Complaint liberally in favor of the plaintiff."  *Id.* WWNS has adequately pled each element of all five of its causes of action against EDO.

### B.    WWNS Has Stated a Claim for Defamation

In the District of Columbia,[8] a claim for defamation is comprised of four elements:  "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) that either the statement was actionable as a matter of law irrespective of special harm or its publication caused the plaintiff special harm."  *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d 216, 220-21 (D.D.C. 2004) (quoting *Klayman v. Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001)).  "Whether a statement is capable of

---

[8] EDO states that WWNS's common-law claims "are presumably based on Virginia law, and not D.C. law."  EDO Motion at 8.  This presumption is incorrect; WWNS brings its common-law claims under the laws of the District of Columbia, where WWNS suffered injury.

defamatory meaning is a question of law, but 'it is only when the court can say that the publication is not *reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense* that it can rule as a matter of law, that it was not libelous.'" *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) (emphasis added). "If it appears that the statements are at least capable of a defamatory meaning, whether they were defamatory and false are questions of fact to be resolved by the jury." *Moss v. Stockard*, 580 A.2d 1011, 123 (D.C. 1990). A statement is defamatory if it "tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Weyrich*, 235 F.3d at 627 (quoting *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293-94) (D.C. Cir. 1988)). EDO attacks WWNS's defamation claim on the grounds that it was never published, that the alleged statement is not actionable, that the Complaint does not establish intent or negligence, and that WWNS has failed adequately to plead damages.[9] EDO Motion at 10-17. Each argument fails, and each will be dealt with in turn.

### 1.    The Complaint Sufficiently Alleges Publication.

EDO argues that EDO employee Steve Appling's email claiming that WWNS had "filed for Chapter 11 protections" was not "published" within the definition of defamation because the defamatory statement was communicated to "WWNS employee Gabe Johnson." EDO Motion at

---

[9] EDO also asserts that WWNS "misrepresents the alleged statement made by EDO in an attempt to invent facts that meet the 'actionable statement' requirement of a defamation claim." EDO Motion at 14. This accusation is based on WWNS's use of the bracketed term "[Chapter 11 filing]" in the Complaint. *See* Compl. ¶ 94. EDO employee Steve Appling's e-mail to Gabe Johnson, however, directly referenced a "Chapter 11 filing." If EDO does not already possess the email in question, there will be amble opportunity to review it during discovery. In addition, should the Court require production of the e-mail before ruling on EDO's Motion, WWNS will of course do so.

10-11; Compl. ¶¶ 92-96.  EDO's argument, however, misstates the current disposition of the common law.

EDO is correct that, in order to be actionable, a defamatory statement must be published to a person other than the defamed person himself.  *See Pinkney v. District of Columbia*, 439 F. Supp. 519, 527 (D.D.C. 1977).  But EDO mistakenly relies on cases discussing the concept of intra-corporate immunity with respect to defaming parties for the proposition that the same concept applies to the defamed party.  *See* EDO Motion at 11 n.9.  The Restatement of the Law of Torts, however, counsels that "the communication to a servant or agent of the person defamed is a publication . . . ."  RESTATEMENT (SECOND) OF TORTS § 577, cmt. e (1977).  Although courts in the District of Columbia appear not to have dealt with this situation directly, other courts have followed the Restatement.  For example, in *Williams v. Burns*, 463 F. Supp. 1278 (D. Colo. 1979), the defendant accused of defamatory statements argued that his communications to plaintiff's bankruptcy attorney did not constitute "publication" because the attorney was acting as the plaintiff's agent.  The court, citing the Restatement, found that communication to an agent of the plaintiff was publication within the meaning of the tort of defamation.  *See id.* at 1281; *but see Brockman v. Detroit Diesel Allison Div. of Gen. Motors Corp.*, 366 N.E.2d 1201, 1203 (Ind. Ct. App. 1977) (noting conflicting authority but holding that publication to plaintiff's agent does not satisfy element of defamation claim).  Thus, because publication to an agent of the plaintiff

can constitute an element of a valid defamation claim, the Court should deny EDO's Motion to Dismiss.[10]

### 2.    The Complaint Sufficiently Alleges an Actionable Statement.

EDO asks the Court to hold that WWNS has failed to state a claim for defamation because, as a matter of law, EDO's statement regarding WWNS's financial status was "substantially true."  EDO Motion at 12-14.  Under the Court's 12(b)(6) analysis,[11] however, EDO's argument must fail.

Truth is an absolute defense to a defamation claim in the District of Columbia.  *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 58 (D.D.C. 2002).  "To successfully assert this defense, a defendant in a defamation action must *prove* that the statements made were substantially true, and that any minor misstatements of fact or inaccuracies of expression were immaterial."  *Id.* (emphasis added).  Here, EDO's claim that it was "substantially true" that WWNS had "filed for Chapter 11 protections" rings hollow.  In fact, as alleged in the Complaint, WWNS had other

---

[10] EDO argues, in the alternative, that the "republication exception" applies to its statement that WWNS had "filed for Chapter 11 protections" because EDO's own publication of the statement was the "natural and probable consequence of DynCorp's statement.  EDO Motion at 12 n.10.  The original publisher is liable for republication of a defamatory statement only if the republication was "reasonably foreseeable."  *Foretich v. Glamour*, 753 F. Supp. 955, 961 (D.D.C. 1990) (at summary judgment, finding that republication was reasonably foreseeable where alleged defamer "affirmatively and deliberately granted permission" to republish).  Like many of EDO's other arguments, however, the "reasonably foreseeable" republication standard relies on fact-intensive inquiries more suited to summary judgment than to a motion to dismiss.  Moreover, WWNS alleges that DynCorp and EDO conspired together, as joint tortfeasors, to defame WWNS.  *See* Compl. ¶¶ 92-96, 134-138.

[11] The "substantial truth" doctrine is more suited to summary judgment than to a motion to dismiss, as is indicated by the fact that each of the cases cited by EDO to support its claim was decided at summary judgment, after the parties had developed the factual record through discovery.  *See* EDO Motion at 12-14.

customers seeking its services, Compl. ¶ 98; WWNS was forced to turn these customers away, however, after DynCorp and EDO stole its employees. Compl. ¶¶ 96-99. Thus, at the time of EDO's statement regarding a Chapter 11 filing, while WWNS's financial health had been damaged by DynCorp's discriminatorily-motivated refusal to continue the business relationship, it had not made any kind of bankruptcy filing. EDO's statement, however, was backward-looking, indicating that WWNS was already in receivership.

EDO's reliance on the Eastern District of Virginia's summary judgment opinion in *Levine v. McLesky* is telling. In *Levine*, the plaintiff claimed defamation on the basis of statements that it "was going bankrupt." 881 F. Supp. 1030, 1049 (E.D. Va. 1995). The defendant asserted that the statement was "substantially true" given plaintiff's apparent financial difficulties. *After discovery*, the defendant moved for summary judgment. The court, noting that plaintiff was losing money, not paying her debts on time, and had considered filing for bankruptcy, granted summary judgment to defendant on the basis that the statement was "substantially true." *Id*. at 1050. Here, however, EDO made a much more specific statement, saying that "WWNS has filed for Chapter 11." *See* Compl. ¶ 92. There is a quantum difference between a company enduring financial troubles and filing for "Chapter 11 protections." Thus, even though DynCorp's refusal to continue working with WWNS represented the loss of WWNS's most important customer, and could indeed prevent the company from operating at a profit, it cannot be said, on the facts now before the Court, that EDO's statement regarding "Chapter 11 protections" was "substantially true." Moreover, as in *Levine*, the question of whether a statement was "substantially true" is fact-intensive and more properly considered after the parties have conducted discovery.

Thus, taking as true the allegations in the Complaint, and without any discovery to determine the "substantial truth," or lack thereof, of EDO's statement regarding WWNS supposed bankruptcy filing, EDO's motion to dismiss should be denied.

### 3.    The Complaint Adequately Alleges Malice or Negligence.

WWNS must plead that EDO's fault in publishing the statement that WWNS had "filed for Chapter 11 protections" amounted to "at least negligence." *Benic v. Reuters Am., Inc.*, 357 F. Supp. 2d at 220-21.  WWNS alleges that EDO's defamatory statement was made with actual malice, or, in the alternative, with negligent disregard for the truth.  Compl. ¶¶ 114-115.  EDO claims that WWNS "offers absolutely no factual support" for its assertions of EDO's intent or negligence with respect to the defamation count.  EDO Motion at 16.  But WWNS's assertions of actual malice or negligence are supported by the facts alleged in the Complaint.  For example, EDO's intent to defame WWNS is evidenced by EDO's efforts to convince WWNS employees, using false information, to renege on their contracts with WWNS so that EDO could employ their skills when it took over from WWNS.  Compl. ¶ 89-99.  In addition, even if EDO did not know its statement about WWNS's supposed bankruptcy filing was false, its negligence in repeating the information garnered from DynCorp is apparent given WWNS's previous allegations of bias on the part of DynCorp and EDO with respect to EDO's review of the "Codan" radio systems installed by WWNS in Iraq and Afghanistan.  Compl. ¶¶ 56-60.  Given this history of contentious relations, EDO could not reasonably accept as true DynCorp's blanket statement that WWNS had filed for "Chapter 11 protections."  Determinations of malice or negligence, moreover, are questions generally reserved for juries.  *See Oparaugo v. Watts*, 884 A.2d 63, 82 (D.C. 2005) ("Whether a person acts with malice is ordinarily a question of fact for the jury."); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 149 (D.D.C. 2005)

(negligence and other questions of fault "are questions properly presented to the jury").  WWNS has adequately pled facts regarding EDO's intent or negligence to merit denying EDO's motion and allowing the defamation claim to proceed.

### C.    WWNS Has Properly Pled Tortious Interference with Contract

In the District of Columbia, a claim for tortious interference with contract contains four elements:  (1) existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach by the defendant, and; (4) damages resulting from the breach.  *Cambridge Holdings Group, Inc. v. Federal Ins. Co.*, 357 F. Supp. 2d 89, 96 (D.D.C. 2004) (citing *Sorrells v. Garfinckel's, et al.*, 565 A.2d 285, 289 (D.C.1989)).

The Complaint alleges facts satisfying each element.  First, although WWNS alleges that DynCorp and EDO interfered with numerous contracts WWNS had with its employees, the Complaint specifically details EDO's inducement, using false information regarding WWNS's financial health, of Gabe Johnson's termination of his employment contract with WWNS.  Compl. ¶¶ 92-99.[12]  Second, EDO's knowledge of WWNS's contracts with its employees is indicated in EDO employee Steve Appling's request that Johnson "immediately tender [his] resignation to WWNS ."  Compl. ¶ 94.  Appling's request is similarly indicative of EDO's intent that Johnson would terminate his contract with WWNS.  *Id.*  Lastly, the damage suffered by

---

[12] EDO cites no case law to support its claim that WWNS's claims of tortious interference cannot withstand a motion to dismiss because "[t]he departure of a single employee from WWNS could hardly force it to turn down work, especially since WWNS had '[d]ozens' of employees."  EDO Motion at 19.  In fact, EDO's own citation to the Complaint reveals the weakness of its argument:  EDO notes that WWNS had "dozens" of employees because WWNS alleges that, due to EDO and DynCorp's tortious interference, "[d]ozens of former WWNS employees in Iraq and Afghanistan are now employed by DynCorp and/or EDO."  Compl. ¶ 99.

WWNS due to EDO's interference is clearly alleged in the Complaint.  WWNS's alleges that, as

a result of the tortious poaching of its employees by DynCorp and EDO, WWNS has been

hampered in its ability to take on new projects with other customers, including the U.S.

Department of Defense.  Compl. ¶ 98.  EDO's conclusory statement that WWNS "had no work

to turn down" because of loss of the DynCorp contract is therefore not only incorrect, but also

asks the Court to look beyond the allegations in the Complaint.

### D.    WWNS Has Properly Pled Tortious Interference with Prospective Economic Advantage

The requirements for stating a claim of tortious interference with prospective economic

advantage[13] are "parallel" to the elements of a claim for interference with an existing contract.

*See Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986).  Plaintiff "obviously need not demonstrate

the existence of a contract, but merely a prospective advantageous business transaction."  *Casco*

*Marina Dev., LLC v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 84 (D.C. 2003).  "To

establish a prima facie case of interference with business relations, 'a plaintiff must show that the

---

[13] EDO makes much of WWNS's use of the term "prospective economic advantage" in the Complaint.  *See* EDO Motion at p. 8 & n.6.  EDO claims that this choice of language indicates that WWNS was invoking Virginia law rather than D.C. law, because "tortious interference with prospective economic advantage . . . is the name of a tort under Virginia law, but not under D.C. law."  *Id.*  EDO's statement that the parallel tort in D.C. is definitively "called 'tortious interference with business expectancies,'" *id.*, is not supported by a citation, likely because the case law establishes otherwise.  *See*, *e.g.*, *Nixon Peabody LLP v. Beaupry*, 791 A.2d 34, 37 (D.C. 2002) ("tortious interference with prospective economic advantage"); *Brown v. Carr*, 503 A.2d at 1247 ("interference with business relations").  In any event, adequately alleging a claim does not hinge on a perfect recitation of the most commonly used descriptors of the offense, but rather on pleading facts sufficient to state a claim for the harm itself.  *See Macintosh v. Building Owners & Managers Ass'n Int'l.*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) (pursuant to Rule 8(f), "pleadings shall be construed so as to do substantial justice").

interference was intentional and that there was resulting damage.'" *Id.* (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 289 (D.C. 1977)).

As with its tortious interference with contract claim, WWNS adequately alleges the elements of tortious interference with prospective economic advantage. EDO's intentional interference with WWNS's contracts with its employees directly hindered WWNS's ability to benefit from its prospective business relationship with the Department of Defense, among other potential customers. Compl. ¶ 94-99. EDO's assertions that WWNS's complaint fails to state a claim for this tort again asks the Court to apply a standard more suited to summary judgment than to a motion to dismiss. At this stage of the litigation, in contrast to EDO's argument, a plaintiff need not "demonstrate a reasonable certainty that absent a defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy." EDO Motion at 23. Rather, WWNS must *plead* a set of facts that, if proven, could lead to relief under the law. WWNS has done so, and must be permitted to develop its proof through discovery. Accordingly, EDO has failed to establish that WWNS cannot, as a matter of law, make out a claim for tortious interference with prospective economic advantage, and its Motion to Dismiss should be denied.

### E.     The Complaint States a Claim for Civil Conspiracy

To state a claim for civil conspiracy, WWNS must allege four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme." *Griva v. Davison,* 637 A.2d 830, 848 (D.C. 1994) (citing *Halberstam v. Welch,* 705 F.2d 472, 477 (D.C. Cir. 1983)). WWNS does not need to establish direct evidence of the defendants' agreement, but

can establish the existence of the conspiracy on the basis of circumstantial evidence from which common intent can be inferred.  *See Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 84 (D.D.C. 2006) (citing *Weishapl v. Sowers*, 771 A.2d 1014, 1024 (D.C. 2001)).  Thus, to garner dismissal under Rule 12(b)(6), EDO must unequivocally show that it cannot be held legally responsible for any part of its participation in the events that led to WWNS's injury, no matter what facts WWNS is ultimately able to prove.  Conversely, if WWNS can articulate any set of facts under which EDO can be held legally liable, then dismissal would be improper.

WWNS's Complaint alleges facts sufficient to state a claim that a conspiracy existed between DynCorp and EDO.  DynCorp's longstanding relationship with EDO, particularly through its Darlington subsidiary, matured into a conspiracy when DynCorp became determined to "get rid of WWNS."  Compl. ¶ 34.  EDO had a particular incentive to participate in the conspiracy, as it took over many of the tasks WWNS had been performing for DynCorp.  Compl. ¶ 89.  Moreover, EDO's email to a WWNS employee falsely claiming that WWNS had "filed for Chapter 11 protections" relied on information from DynCorp, evidencing action pursuant to a common scheme to injure WWNS.  Compl. ¶¶ 92-94.  And WWNS suffered harm in that it was unable to take on customers it would have been able to service but for DynCorp and EDO's conspiracy to cripple its ability to do business.  Compl. ¶¶ 96-99.  Thus, because WWNS has alleged sufficient facts to meet its preliminary burden under the rules of notice pleading, dismissal is not appropriate at this stage.

### F.    WWNS Has Adequately Pled Violation of the Virginia Conspiracy Act

The Virginia Conspiracy Act defines a business conspiracy as "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputations, trade, business or profession by any

means whatever . . . ."  Va. Code. Ann. § 18.2-499 (2006).  Courts require a plaintiff to allege

that (1) two or more people attempted to conspire, (2) one of whom acted with legal malice

towards the plaintiff, and (3) the actions of one or more conspirators caused plaintiff to suffer

damages.  *See Simmons v. Miller*, 544 S.E.2d 666, 676-77 (Va. 2001).  "A defendant exhibits

legal malice when he 'is actuated by improper and indirect motives,' and need not be acting out

of spite, hatred, 'actual malevolence or corrupt design.'"  *Kalantar v. Lufthansa German

Airlines*, 402 F. Supp. 2d 130,149 (D.D.C. 2005) (quoting *Forbes v. Hagman*, 75 Va. 168, 1881

WL 6260, at *10 (Va. 1881)).  WWNS has pled each of these elements with the specificity

required by Virginia law.

As with WWNS's common-law business conspiracy claim, the Complaint goes well

beyond the "[m]ere conclusory allegations" EDO claims WWNS has made.  EDO Motion at 27.

First, the Complaint alleges that EDO conspired with DynCorp.  Compl. ¶ 135.  The willful and

malicious purpose of the conspiracy, as alleged in the Complaint, was to "get rid of WWNS" and

replace it with EDO.  Compl. ¶¶ 34, 89, 135.  In furtherance of the conspiracy, EDO acted in

concert with DynCorp to defame WWNS by falsely claiming that it had "filed for Chapter 11

protections" and to tortiously interfere with WWNS's contracts with its employees and its

prospective business relationships with other clients.  Compl. ¶¶ 92-99.  Thus, even under the

specific pleading requirements of the Virginia Conspiracy Act, WWNS has more than adequately

pled facts which, if proven, would justify recovery under the Act.

## CONCLUSION

For the reasons set forth above, EDO's Motion to Dismiss for Lack of Personal

Jurisdiction, Failure to State a Claim and to Dismiss or Transfer for Improper Venue should be

denied.

Dated:  December 8, 2006

Respectfully submitted,

/s/ Michele A. Roberts

Michele A. Roberts (D.C. Bar No. 337998)
Anthony T. Pierce (D.C. Bar No. 415263)
Debra A. Drake (D.C. Bar No. 479907)
Jonathan P. Robell (D.C. Bar. No. 493977)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone: 202.887.4000
Facsimile:  202.887.4288

*Counsel for Plaintiff Worldwide Network
Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2006, I caused a copy of the foregoing Memorandum in

Opposition to Defendant EDO Corporation's Motion to Dismiss for Lack of Personal

Jurisdiction, Failure to State a Claim and to Dismiss or Transfer for Improper Venue to be filed

electronically.  I understand that, pursuant to Local Civil Rule 5.4(d), notice of this filing will be

sent to all parties by operation of the Court's electronic filing system.  Parties may access this

filing through the Court's system.

<u>/s/ Michele A. Roberts</u>

Michele A. Roberts

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:06cv01717 (RJL) |
| DYNCORP INTERNATIONAL, LLC, | ) ) | Judge Richard J. Leon |
| and | ) ) | |
| EDO CORPORATION, | ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] ORDER**

Upon review and consideration of Defendant EDO Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim and to Dismiss or Transfer for Improper Venue, and Plaintiff World Wide Network Services, LLC's opposition thereto, the Court hereby finds as follows:

1.  The allegations contained in Plaintiff's Complaint establish that Defendant EDO Corporation is subject to personal jurisdiction in the District of Columbia pursuant to the terms of D.C. CODE § 13-423.

2.  Venue is proper in the District of Columbia.

3.  Party and witness convenience and the interest of justice do not merit transfer of this matter to the Eastern District of Virginia.

4.      Plaintiff has adequately plead claims of defamation, tortious interference with

contract, tortious interference with prospective economic advantage, civil

conspiracy, and violation of Virginia Code Ann. § 18.2-499 (the Virginia

Conspiracy Act).

In light of these findings, it is hereby

**ORDERED** that Defendant EDO Corporation's Motion to Dismiss for Lack of Personal

Jurisdiction, Failure to State a Claim and to Dismiss or Transfer for Improper Venue is **DENIED**;

and

**DECREED** that the parties shall proceed forthwith to discovery on the merits of

Plaintiff's claims.

**SO ORDERED** this _____ day of December, 2006.

_____

The Honorable Richard J. Leon
United States District Judge