IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC<br><br>Plaintiff,<br><br>v.<br><br>DYNCORP INTERNATIONAL, LLC,<br><br>and<br><br>EDO CORPORATION<br><br>Defendants. | Case No. 1:06cv01717<br>Judge: Richard J. Leon |

**REPLY IN SUPPORT OF DEFENDANT DYNCORP INTERNATIONAL'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)
OR IN THE ALTERNATIVE DISMISS UNDER FED. R. CIV. P. 12(b)(3)**

George D. Ruttinger (Bar No. 214445)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Phone: 202-624-2670
Fax: 202-628-5116

Attorney for Defendant DynCorp
International LLC

December 18, 2006

Defendant DynCorp International LLC ("DI") respectfully submits this Reply to the Plaintiff Worldwide Network Service LLC's ("WWNS") Memorandum in Opposition to DI's Motion to Transfer Under 28 U.S.C. § 1404(a) or in the Alternative to Dismiss Under Fed. R. Civ. P. 12(b)(3) ("Motion to Transfer").

**I.     INTRODUCTION**

In its Memorandum in Opposition ("Opp."), WWNS admits that the WPPS and CIVPOL subcontracts at issue contain valid and enforceable forum selection and arbitration clauses, respectively.[1] (Opp. at 4, 11). In an attempt to escape its choice of forums and press its claims in this Court, however, WWNS 1) tries to recast DI's Motion to Transfer as a motion to compel arbitration, subject to a summary judgment standard, thus attempting to avoid the presumption of enforceability attaching to valid forum selection clauses; 2) argues that the contract clauses are "ambiguous" and that there is "no evidence" that they should be interpreted to encompass

---

[1] The WPPS Subcontract Disputes Clause, ¶10.9.2., provides: "Either party may pursue litigation to resolve any dispute not covered by the preceding paragraph and not resolved after a mutual, good faith effort by the Parties. Any such action shall be filed only in a court of competent jurisdiction in the Commonwealth of Virginia; provided, however, that the Parties hereby expressly waive any rights to a trial by jury and agree that any legal proceeding hereunder shall be tried by a judge without a jury. The Parties agree that the governing law applicable to any such action under this Subcontract shall be the federal law of government contracts, as interpreted by federal judicial bodies and administrative boards of contract appeals. To the extent federal government contract law is not dispositive; the Parties agree that the law of the State of Delaware shall govern. Any such action by the Subcontractor must be commenced within one (1) year from the date of Contractor's final decision, if applicable." (Motion to Transfer, Exhibit ["Ex."] 1 at 9-10).

The CIVPOL Subcontract Disputes Clause, ¶10.9.2., provides: "Any disputes arising out of or relating to this Subcontract and which are not governed by the preceding paragraph and are not resolved after a mutual, good faith effort shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in force at the time the dispute arises, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." (Motion to Transfer, Ex. 2 at 9).

WWNS's present claims, thus brushing aside a long line of cases that consistently interpret clauses containing virtually the same language as broadly encompassing a wide range of claims arising out of the contracting parties' business relationship; 3) repeats the mantra that its statutory and tort causes of action are "not related to the subject matter" of the subcontracts,[2] while ignoring the factual allegations of WWNS's own complaint that tie these claims directly to performance of the contracts; and 4) asserts that it will arbitrate claims relating to the CIVPOL subcontract "when and if it chooses to do so,"[3] thus conceding that WWNS is splitting its claims in a manner that is contrary to the subcontract terms and to the efficient administration of justice.

WWNS should not be allowed to dodge its contractual agreements, split its claims in a transparent effort to shop for a favorable forum, and burden this Court with claims that should properly have been brought elsewhere. DI's Motion to Transfer should be granted.

## II.    ARGUMENT

### A.    The Parties' Choice of Forums is Entitled to Decisive Weight in Judging DI's Motion to Transfer; Summary Judgment Standards Do Not Apply.

WWNS attempts to convert DI's Motion to Transfer Under 28 U.S.C. § 1404(a) into a motion to compel arbitration and argues that the motion should therefore be adjudicated under standards applicable to motions for summary judgment under Fed. R. Civ. P. 56. Based on this red herring, WWNS states, "in determining whether WWNS's asserted claims are subject to arbitration, the Court 'must give [WWNS] the benefit of all reasonable doubts and inferences that may arise.'" (Opp. at 3).

---

[2] See, e.g., Opp. at 5, 6, 9, 10.

[3] Opp. at 4.

2

However, in a motion to transfer where there is a valid and enforceable forum selection clause, as WWNS admits is the case here, there is a presumption favoring the enforcement of both forum selection and arbitration clauses that the party resisting transfer must overcome. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (holding that forum selection clauses are *prima facie* valid.); AT&T Tech. v. Communications Workers, 475 U.S. 643, 650 (1986) (stating that the broader the arbitration clause, the stronger the presumption of arbitrability). The rationale behind this presumption is to prevent parties from avoiding their contractual obligations by pleading non-contractual causes of action, just as WWNS is doing here. Crescent Int'l v. Avatar Communities, 857 F.2d 943, 945 (3d Cir. 1988). The party resisting enforcement of a forum selection clause must meet a heavy burden of proof to explain why the clause should *not* be enforced. M/S Bremen, 407 U.S. at 10, 18; see also L&L Constr. Ass'n v. Slattery Skanska, 2006 WL 1102814, at *5 (D.D.C. March 31, 2006).[4]  In the context of the Motion to Transfer that DI actually filed, the existence of a forum selection clause is a "significant factor" that "figures centrally" in the court's decision to transfer pursuant to § 1404(a). Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Jumara v. State Farm Ins., 55 F.3d 873, 880 (3d Cir. 1995); Sheraton Operating Group v. Just Corporate Travel, 984 F. Supp. 22, 26 (D.D.C. 1997). When

---

[4] The non-moving party has the burden of proof regarding why a forum selection or arbitration clause is not to be enforced. Carnival Cruise Lines v. Shute, 499 U.S. 585, 591-92 (1991); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). WWNS incorrectly claims that for arbitration clauses, this strict standard only applies to cases involving collective bargaining agreements. (Opp. at 3, n. 4). However, this standard has been adopted in non-collective bargaining situations as well. See, e.g. Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 227 (1987) (holding that the party opposing arbitration has the burden of proof in the context of securities and RICO claims against broker); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (holding that a non-moving party has the burden of proof in an age-discrimination suit).

the convenience factors are balanced, the presence of a forum selection clause tips the balance in favor of transfer. Shaw v. Natkin, 907 F. Supp 201, 205 (M.D. La. 1995).

    **B.    WWNS's Argument that the Forum Selection Clauses Are "Ambiguous" and "Limited" In Scope Clashes with Case Law and with the Allegations of WWNS's Complaint.**

WWNS concedes, as it must, that both the forum selection clause and the arbitration clause are valid and enforceable. (Opp. at 4, 11). On their face, the reach of these forum selection clauses is very broad, encompassing "any dispute" not covered by a facially inapplicable clause of the WPPS Subcontract and "[a]ny dispute arising out of or relating to" the CIVPOL subcontract. In an effort to avoid the all-encompassing scope of these clauses, however, WWNS resorts to a series of baseless contract interpretation arguments: that (i) the forum selection clauses are somehow "ambiguous" (Opp. at 5, 11); (ii) DI could have drafted a broader arbitration clause for the CIVPOL contract but instead opted to "limit the arbitration clause's scope" (Opp. at 5)[5]; and iii) there is "no evidence" that the parties intended the present claims to be covered by the forum selection clauses. (Opp. at 5, 12). Like its misguided effort to judge DI's Motion to Transfer under a summary judgment standard, WWNS is attempting to subject garden variety forum selection clauses— clauses that have acquired the gloss of repeated judicial interpretation— to evidentiary standards applicable to interpretation of non-standard, custom-made contract provisions. The case law, and WWNS's own allegations, undercut WWNS's diversionary tactics.

When determining the scope of a forum selection or arbitration clause, courts look to 1) the actual language used in the forum selection clause, and 2) the factual allegations on which

---

[5] While complaining about the lack of evidence for DI's interpretation of the clauses, WWNS cites no evidence for its assertion that DI was "the drafter of the CIVPOL subcontract." (Opp. at 5).

4

the claims are based, not the legal causes of action. Wyeth v. Cigna Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997); Genesco v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 624-25 n.13 (1985); Oldroyd v. Elmira Sav. Bank, 134 F.3d 72, 76-77 (2d Cir. 1998). As discussed in DI's Memorandum in Support of its Motion to Transfer at 9-10, 18-19, the forum selection clauses in the WWNS-DI subcontracts have been broadly interpreted to encompass tort and statutory claims under all of the tests applied by federal courts of appeals, which variously ask: whether the non-contractual claims ultimately depend on the existence of a contractual relationship between the parties;[6] whether the non-contractual claims ultimately involve the same operative facts as a parallel claim for breach of contract;[7] or, with respect to arbitration clauses, whether the allegations of the complaint "touch matters" covered by the parties' contracts.[8]

As is apparent from DI's Memorandum in Support of its Motion to Transfer and from the discussion below, the answer to all these questions is "yes." First, WWNS's statutory and tortious claims asserted against DI ultimately depend on the existence of a contractual relationship between the parties. Second, the same operative facts on which WWNS bases its statutory and tortious claims also support parallel claims for breach of contract. Third, the factual allegations underlying the non-contractual causes of action plainly "touch matters" covered by the CIVPOL subcontract.

---

[6] Terra Int'l v. Miss. Chem. Corp., 119 F.3d 688, 694 (8th Cir. 1997), citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), cert. denied 464 U.S. 938 (1983); see also Simula v. Autoliv, 175 F.3d 716, 725 (9th Cir. 1999) ("If Autoliv had fully complied with the contract…there would be no tort claims.").

[7] Terra Int'l, 119 F.3d at 694, citing Lambert v. Kysar, 938 F.2d 1110, 1121-22 (1st Cir. 1993).

[8] Mitsubishi, 473 U.S. at 624-25 n.13; Oldroyd, 134 F.3d at 76-77.

5

> **1.     Given the strong presumption favoring the enforcement of both forum selection and arbitration clauses, courts have rejected cramped interpretations of such clauses in favor of broad application to a wide range of claims.**

WWNS claims that the language of the WPPS forum selection clause is ambiguous, stating that "the WPPS subcontract forum selection clause clearly is capable of more than one construction." (Opp. at 11). In making this argument, however, WWNS attempts to confuse the issue by referring to the "choice of law" language of the WPPS Disputes Clause rather than the "choice of forum" language. The language regarding choice of forum is clear: the parties agree to litigate "any dispute," other than those described in ¶ 10.9.1, in a court of competent jurisdiction in Virginia, irrespective of what law applies. Try as it might, WWNS cannot create ambiguity where there is none. Furthermore, WWNS does not explain why the language in the CIVPOL arbitration clause, referring to "any dispute arising out of or relating to" the subcontract, is in any way ambiguous.

WWNS further argues that "[t]here is no evidence that DynCorp and WWNS intended the instant claims to be subject to § 10.9.2 of the WPPS Subcontract." (Opp. at 12). With respect to the CIVPOL arbitration clause, WWNS makes the same contention: that "[t]here is no contractual evidence that the parties intended to arbitrate claims that are not related to the subject matter of the subcontract itself", and that DI "limited the arbitration clause to disputes 'arising out of or relating to this Subcontract,' thus affirmatively denoting its intention to limit the arbitration clause's scope." (Opp. at 5). Contrary to WWNS's arguments, however, courts have consistently interpreted forum selection clauses similar to those in the WPPS and CIVPOL subcontracts as manifesting the parties' intention to subject a wide array of disputes to resolution

6

in the chosen forum, without resort to extrinsic evidence of the parties' intent.[9] See <u>Booker v. Robert Half Int'l</u>, 315 F. Supp 2d, 94, 97 (D.C. Cir. 2004), citing <u>Mitsubishi</u>, 473 U.S. at 624 n.13, and <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 398 (1967); <u>L&L Constr. Ass'n</u>, 2006 WL 1102814, at *4, quoting <u>Kyriakopoulos v. George Washington Univ.</u>, 866 F.2d 438, 444 n. 1 (D.C. Cir. 1989) (In addressing the scope of a forum selection clause, courts "adhere… to the written language embodying the rights and liabilities of the parties"); <u>see also</u> <u>Marra v. Papandreou</u>, 59 F. Supp. 2d 65, 76 (holding that a forum selection clause providing "any dispute or disagreement" or "in general any matter that may occur" to be a "broad catch-all phrase" and unambiguous.)  Indeed, the Supreme Court has stated that when there is doubt regarding the scope of an arbitration clause, doubts are to be resolved in favor of enforcement. <u>Genesco v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 847 (2d Cir. 1987), quoting <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).  Similarly, a valid forum selection clause should be enforced unless its enforcement would contravene a strong public policy of the forum in which it is brought.  <u>Suter v. Munich Reinsurance Co.</u>, 223 F.3d 150, 155 (3rd Cir. 1999).  There are no policy considerations here that would counsel against enforcing the forum selection clauses and transferring this case.

---

[9] WWNS argues that the inclusion of a good faith caveat in both clauses is further evidence that the asserted causes of action were not intended by the parties to be included within the arbitration or forum selection clauses.  WWNS reasons that "given the antagonistic nature of these claims", these types of actions cannot be resolved through good faith efforts by the parties. (Opp. at 5, 12-13).  However, WWNS's belief that the asserted causes of action cannot be resolved through good faith efforts cannot be interpreted as limiting the scope of the forum selection and arbitration clauses.  Such an argument has no support in the law.

> **2.    Neither WWNS's own factual allegations nor the case law supports WWNS's argument that the forum selection and arbitration clauses do not apply to the asserted causes of action.**

WWNS baldly asserts that the forum selection clause and arbitration clause in the WPPS and CIVPOL subcontracts, respectively, do not apply to the statutory and tort claims WWNS asserts against DI because these claims are "independent of" and "not related to" the subcontracts. (Opp. at 1, 5, 6, 7, 9, 11). Tellingly, WWNS repeats these assertions on page after page of its Opposition without ever discussing any of the specific allegations of its own Complaint, which are the touchstone for determining whether forum selection clauses encompass a parties' non-contractual claims. Wyeth, 119 F.3d at 1075; Mitsubishi, 473 U.S. at 624-25 n.13; Oldroyd, 134 F.3d at 76-77. Both the facts on which WWNS's non-contractual claims are based and the case law make clear that WWNS's statutory and tortious claims are within the scope of, and subject to, the forum selection and arbitration clauses.

WWNS argues that the subcontracts "merely provide the terms and conditions of WWNS's work for DynCorp" (Opp. at 7), and as a result, the racial discrimination and tort claims that WWNS asserts against DI are not "related to the subject matter" of the WPPS and CIVPOL subcontracts. WWNS thus attempts to rewrite the subcontracts, neither of which states that a dispute subject to the forum selection clauses must relate to "the subject matter" of the subcontracts. That phrase appears nowhere in either the WPPS or CIVPOL subcontracts. In any event, the factual allegations of the Complaint center on DI's alleged conduct in purportedly thwarting WWNS's performance of its obligations under the WPPS and the CIVPOL

8

subcontracts, which obligations are defined by and thus plainly relate to the "subject matter" of the subcontracts.[10]

In support of its § 1981 claim, WWNS alleges that "[DI's] purported reasons for terminating its business relationship with WWNS are pretextual…" (Compl. ¶ 103); "[a]s part of its racially discriminatory intent and practices, and despite knowing of WWNS's *interest, willingness and ability to perform under the terms of the CIVPOL and WPPS subcontracts,* [DI] repeatedly blamed WWNS for events beyond its control…" [italics added] (Compl. ¶ 104) and "*repeatedly hindered WWNS's performance of its contractual obligations*" and "*has refused to contract with WWNS, via new Task Orders.*" [italics added] (Compl. ¶¶ 105-106). Similarly, WWNS's claims for conspiracy rest upon alleged concert of action between DI and co-defendant EDO Corporation, a firm that allegedly performed an unflattering study of WWNS's performance of the subcontracts and later was hired to replace WWNS. (Compl. ¶¶ 56-59, 89-90). The tortious interference claims are based upon alleged interference by DI with the contracts between WWNS and its employees who were performing the subcontracts (Compl. ¶¶ 64, 91), including allegedly hiring half of the WWNS employees in Iraq and Afghanistan to work on the CIVPOL program. (Compl. ¶ 91). Finally, the defamation claim stems from DI's alleged false statements about "WWNS's financial stability and *performance under the subcontracts.*" [italics added] (Compl. ¶ 114).

Not only do the factual allegations in the Complaint demonstrate that WWNS's statutory and tortious claims stem from the parties' contractual relationship, but in its letters dated October

---

[10] The subcontracts do more than "merely provide the terms and conditions of WWNS's work for DynCorp". Among other things, the subcontracts describe WWNS's obligations and responsibilities under the subcontracts. (Motion to Transfer, Ex. 1 at 4, 16-17; Motion to Transfer, Ex. 2 at 4, 16-17).

9

4, 2006, WWNS alleges many of the same facts as the basis for its potential breach of contract claims. For example, in its October 4 letter regarding the CIVPOL subcontract, WWNS asserts that DI ordered key WWNS employees to leave Iraq, which "made any remaining performance under the [Purchase Orders] virtually impossible." (Motion to Transfer, Exhibit ["Ex."] 3 at 4; cf. Compl. ¶¶ 67-73). WWNS, however, conspicuously fails to explain how these facts, when characterized as breach of contract claims, are subject to the forum selection and arbitration clauses, while these same facts, when characterized as torts and violations of § 1981, are not. (See DI Memorandum in Support at 6-7 and Motion to Transfer, Ex. 3 and 4).

Just as WWNS's own factual allegations undercut its argument that the instant causes of action are "independent of" the subcontracts, the case law is contrary to this argument as well. WWNS argues that Oldroyd can be distinguished from the present situation because 1) the plaintiff there asserted a retaliatory discharge claim and the plaintiff's employment contract related to the subject of termination, and 2) the plaintiff asserted a parallel breach of contract claim based on the same factual allegations. 134 F.3d at 77. As noted above, when the same operative facts support both a breach of contract claim as well as non-statutory claims, as is the case here, then the non-statutory claims are subject to the forum selection and arbitration clauses. WWNS's October 4 letters state that WWNS intends to bring contract claims in the forums to which it agreed in the subcontracts, but a day later brought the present claims, based on many of the same operative facts, in this Court. (See Motion to Transfer, Ex. 3 and 4). Thus, contrary to WWNS's assertion, WWNS could have brought a "parallel claim for breach of contract" in connection with its assertion of statutory and tort claims. (See Opp. at 14).[11]

---

[11] WWNS contends that "[f]oreseeability of claims subject to a forum selection clause is a key factor in determining the scope of such clauses", referring to Terra Int'l. (Opp. at 13).

(continued…)

10

Furthermore, WWNS incorrectly cites Stokes v. Norfolk So. Railroad Co. for the proposition that WWNS's racial discrimination claims are not arbitrable because they do not turn on the meaning of the subcontracts. (Opp. at 7, citing 99 F. Supp. 2d 966 (N.D. Ind. 2000)). In Stokes, the issue was whether a provision in the Railroad Labor Act providing for a "mandatory arbitral mechanism" for resolving disputes that "involved controversies over *the meaning* of an existing collective bargaining agreement" encompassed a § 1981 claim. 99 F. Supp. 2d at 970-71 (emphasis added). The arbitration provision in Stokes is not remotely similar to the clause in the CIVPOL subcontract, which provides for arbitration of "any dispute arising out of or relating to" the subcontract, whether or not the dispute concerns the meaning of the subcontract.

Another case relied on by WWNS, LeBourgeois v. Rebecca Irene Fisheries, LLC, 132 Fed. App. 157 (9th Cir. 2005), did not involve a forum selection clause at all. The district court granted summary judgment on LeBourgeois's § 1981 claims on the basis of a 6-month statute of

---

(continued)

However, the decisive factor in Terra Int'l was that the same facts supported both tort and breach of contract claims. Foreseeability was an additional consideration, among others, that the court used to bolster its inference that the parties intended for the tort claims to fall within the scope of the ambiguous forum selection clause at issue in that case. 119 F.3d at 695. WWNS's reliance on The Navajo Nation v. Peabody Holding Co., Inc. also does not support its arguments. (Opp at 11; 209 F. Supp. 2d 269, 277-78 (D.D.C. 2002). In The Navajo Nation, the narrow forum selection clause at issue only applied to actions challenging arbitration awards, and clearly did not apply to litigation regarding royalty rates. Id.

The WPPS subcontract's forum selection clause is neither ambiguous nor narrow. See e.g. Salovaara v. Jackson National Life Ins. Co., 246 F.3d 289, 300 (3rd Cir. 2000) (holding that a forum selection clause in an indemnification agreement providing that "any claim related directly or indirectly to this Agreement" unambiguously covered federal securities and common law fraud violations); Marra, 59 F. Supp. at 76 (holding a "broad catch-all" forum selection clause to be unambiguous.).

Further, courts have rejected the argument, similar to that posed by WWNS here (see Opp. at 2), that the absence of a statement defining the scope of a forum selection clause indicates an intention to limit the clause's scope. Salovaara, 246 F.3d at 300.

11

limitations in his employment contract. The Ninth Circuit reversed, holding that seamen enjoyed special protections under maritime law and that the employer had not borne its burden of showing that LeBourgeois had knowingly and voluntarily waived his rights by signing the agreement. As an alternative holding, the court stated that the discrimination claims asserted by LeBourgeois were not in any way connected with the performance or non-performance of his employment agreement. In this case, WWNS's own allegations establish that contract performance is integral to its § 1981 claim: DI allegedly acted in a discriminatory manner to prevent WWNS from performing its contractual obligations. Much more to the point is Thinket Ink Info. v. Sun Microsystems, 368 F.3d 1053, 1056 (9th Cir. 2004), because that case involved arbitration of a § 1981 claim by a corporation, not outright dismissal of an employee's claims. Although standing was a central issue in the case, the Ninth Circuit affirmed the district court's conclusion that the § 1981 claim was covered by an arbitration clause which stated that "[a]ny and all disputes or controversies whether of law or fact or any nature whatsoever arising from or respecting this Agreement." Id.

      Under the subcontracts, WWNS agreed to provide communication and information technology services to DI. DI's alleged discriminatory and tortious behaviors purportedly undermined WWNS's ability to perform these contractual duties. Examining the factual allegations that WWNS lays out in its Complaint and correspondence, it is clear that the statutory and tortious causes of action asserted against DI 1) flow directly from the contractual relationship between the parties, 2) are based on the same operative facts that support parallel contractual causes of action, and 3) "touch matters" covered by the parties' subcontracts. The forum selection and arbitration clauses, therefore, are applicable to the causes of action that WWNS asserted against DI.

12

      **C.**      **WWNS is Attempting to Split its Claims by Filing Tort and Statutory Claims in This Court While Threatening to File Breach of Contract Claims in Arbitration or in Virginia Courts.**

WWNS claims that "[r]ather than addressing WWNS's Complaint as a whole, [DI] instead tries to shoehorn discrete portions of it into the forum and arbitration clauses". (Opp. at 1). DI is doing no such thing. Given that WWNS's factual allegations relate to both subcontracts, DI requests that the case be transferred to, or dismissed and refiled in, the proper judicial forum so that the court can decide which claims to litigate and which to arbitrate. In doing so, DI has not "ignore[d]…the existence of another defendant, EDO Corporation". (Opp. at 1).[12] EDO Corporation also is requesting transfer to the Eastern District of Virginia. Rather, the only party that is promoting claims splitting is WWNS itself. WWNS has stated that "when and if it chooses" to assert contractual claims against DI, it will do so in the appropriate forum, which is a court of competent jurisdiction in Virginia under the WPPS subcontract, or an arbitral forum under the CIVPOL subcontract. (Opp. at 5; Motion to Transfer, Ex. 3 and 4). WWNS is thus seeking to split its claims in a way that would prejudice DI and undermine efficient resolution of its claims. To the extent the two subcontracts provide for adjudication of claims in different forums, that is the parties' choice as part of their contractual agreements. But WWNS should not be allowed to unilaterally decide to split its claims, particularly when its evident purpose is to bring some of its claims in a forum that it undoubtedly considers hospitable.

---

[12] To the extent WWNS is arguing that the claims against EDO would remain in this Court while the claims against DI would be transferred to another court or remanded to arbitration, WWNS created this potential dispersal of claims by adding EDO as a defendant. A party cannot evade its choice of forum in a contract with one party by pleading in another party that is not subject to the same forum selection provisions.

### III. CONCLUSION

As WWNS itself clearly shows in its Complaint and correspondence, the factual allegations underlying WWNS's statutory and tortious causes of action center on WWNS's inability to perform its contractual obligations and responsibilities. WWNS itself recognizes that these same factual allegations can support a parallel breach of contract claim. Given that the factual allegations, the language of the clauses, and the case law indicate that WWNS's asserted causes of action against DI are within the scope of the forum selection and arbitration clauses, DI respectfully requests that the court transfer, or in the alternative, dismiss the case. Doing so will give effect to the intentions of the parties, permit a court in the previously agreed upon forum to determine which claims to litigate and which to arbitrate, and prevent WWNS's transparent effort to forum shop.

Respectfully submitted,

/s/ George D. Ruttinger_____
George D. Ruttinger (Bar No. 214445)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Phone: 202-624-2670
Fax: 202-628-5116

Attorney for Defendant DynCorp International LLC

December 18, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2006, a copy of the foregoing *REPLY IN SUPPORT OF DEFENDANT DYNCORP INTERNATIONAL'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR IN THE ALTERNATIVE DISMISS UNDER FED R. CIV. P. 12(b)(3)* was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/George D. Ruttinger

George D. Ruttinger