**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DYNCORP INTERNATIONAL, LLC | ) ) |
| and | ) ) |
| EDO CORPORATION | ) ) ) |
| Defendants. | ) ) ) |

Case No. 1:06-CV-01717
Judge Richard J. Leon

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT EDO CORPORATION'S MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION,**
**FAILURE TO STATE A CLAIM**
**AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE**

William M. Sullivan, Jr.
    Federal Bar No. 467269
    Email: wsullivan@winston.com
Sarah M. Hall
    Federal Bar No. 479119
    Email: smhall@winston.com
Ryan S. Spiegel
    Federal Bar No. 489103
    Email: rspiegel@winston.com
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C. 20006
Tel. (202) 282-5000
Fax (202) 282-5100

*Counsel for Defendant EDO Corporation*

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     WWNS FAILS TO ESTABLISH PERSONAL JURISDICTION OVER
        EDO. ..........................................................................................................2

        A.      WWNS Cannot Invoke the D.C. Long-Arm Statute, D.C. CODE §
                13-423(a)(4), Because There Was No In-District Injury. ...........................2

                1.      WWNS's Alleged Injury for Its Defamation Claim Did Not
                        Occur in the District.........................................................................3

                2.      WWNS's Alleged Injury for Its Tortious Interference and
                        Common Law Conspiracy Claims Did Not Occur in the
                        District. ...........................................................................................4

                3.      WWNS's Claim for Violation of the Virginia Civil
                        Conspiracy Act is Not a Claim for "Tortious Injury," and
                        Even So, No Alleged Injury Occurred in the District.....................7

        B.      WWNS Has Not Alleged In Its Complaint Any Facts Relating to
                EDO's Contacts with the District. ..............................................................7

        C.      The District's Interest in Having this Case Litigated Here is
                Minimal........................................................................................................8

III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED. ..................................................................9

        A.      Standard of Review.......................................................................................9

        B.      While Choice of Law Principles Require Application of Virginia
                Law, Plaintiff's Claims Similarly Fail Under District of Columbia
                Law. .............................................................................................................9

        C.      Each Individual Count Fails to State a Claim Upon Which Relief
                Can Be Granted...........................................................................................10

                1.      Plaintiff Fails to State a Claim for Defamation. ..........................10

                        a.      There Was No Publication. ................................................10

                        b.      There Was No Actionable Statement..................................12

                        c.      There Is No Evidence of Intent or Negligence. .................14

                2.      Plaintiff Fails to State a Claim for Tortious Interference
                        with Contract.................................................................................15

                3.      Plaintiff Fails to State a Claim for Tortious Interference
                        with Prospective Economic Advantage. ........................................17

                4.      Plaintiff Fails to State a Claim for Civil Conspiracy. ..................18

    5.  Plaintiff Fails to State a Claim under the Virginia Civil
      Conspiracy Act. ..............................................................................20

IV. SHOULD THE COURT DECLINE TO DISMISS THE CASE, VENUE
  SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF
  VIRGINIA BECAUSE D.C. HAS NO SUBSTANTIAL CONNECTION
  TO THIS MATTER. ............................................................................................20

  A. WWNS Could Have Originally Brought this Case in the Eastern
    District of Virginia. ....................................................................................21

  B. The Private and Public Interest Factors Favor Transfer to the
    Eastern District of Virginia. ......................................................................22

    1.  The Private Interest Factors Support Transfer. .............................22

    2.  The Public Interest Factors Also Favor Transfer. .........................24

V. CONCLUSION AND RELIEF REQUESTED .....................................................24

Defendant EDO Corporation ("EDO") respectfully submits this Reply to Plaintiff Worldwide Network Service LLC's ("WWNS") Memorandum in Opposition to EDO's Motion to Dismiss or Transfer ("Opp'n").

I.      **<u>INTRODUCTION</u>**

Plaintiff's Memorandum in Opposition cannot overcome the simple and fatal fact that nowhere in the Complaint does Plaintiff establish that an injury occurred in the District of Columbia or that there is any other connection between the alleged claims and the District.  Indeed, by Plaintiff's own admission, WWNS's residence and citizenship are traceable to individuals in Maryland and a partnership in Texas – *not* to the District of Columbia.  As explained below, this Reply underscores the utter lack of a connection between the District of Columbia and Plaintiff's claims against EDO, necessitating dismissal for lack of personal jurisdiction.

Moreover, Plaintiff has responded to only a few discrete arguments raised by EDO under Rule 12(b)(6) and ignores large swaths of EDO's opening brief.  As described below, its opposition is insufficient to prevent dismissal.  As explained in its opening brief, EDO is barely mentioned in the Complaint – revealing what appears to be an effort to drag EDO into this litigation simply because it is a potential recovery target.  But, as is evident from WWNS's Complaint, EDO has virtually nothing to do with the contractual relationship from which Plaintiff's primary claim arises, and Plaintiff's ancillary claims against EDO are neither substantively nor jurisdictionally supportable.

## II. WWNS FAILS TO ESTABLISH PERSONAL JURISDICTION OVER EDO.

### A. WWNS Cannot Invoke the D.C. Long-Arm Statute, D.C. CODE § 13-423(a)(4), Because There Was No In-District Injury.

WWNS relies upon D.C. CODE § 13-423(a)(4) to establish personal jurisdiction.[1]
This provision provides as follows:

> A District of Columbia court may exercise personal jurisdiction
> over a person, who acts directly or by an agent, as to a claim for
> relief arising from the person's…causing tortious injury in the
> District of Columbia by an act or omission outside the District of
> Columbia if he regularly does or solicits business, engages in any
> other persistent course of conduct, or derives substantial revenue
> from goods used or consumed, or services rendered, in the District
> of Columbia.

D.C. CODE § 13-423(a)(4) (2006).

However, WWNS has not adequately pled in its Complaint the first requirement
of subsection (a)(4) -- that there was a tortious injury *in the District of Columbia*. This
requirement has been referred to as the "in-District injury requirement." *Jung v. Ass'n of
Am. Med. Colleges*, 300 F. Supp. 2d 119, 136 (D.D.C. 2004).

While WWNS alleges harm to itself, it fails to appreciate that the citizenship and
residency of a limited liability company ("LLC") is that of its *members*, and so an alleged
tortious injury can only occur: (1) where its *members* live/work in the case of defamation
claims and (2) in the case of economic injuries such as WWNS's two claims for tortious
interference and common law conspiracy, at the location of the original event causing the
injury.  As EDO noted in its opening brief, it is not enough for WWNS to rely on its
office location in Washington, D.C. for purposes of establishing the situs of the alleged

---

[1]    WWNS argues that EDO "is subject to this Court's jurisdiction under subsection (a)(4) of the
long-arm statute because it caused harm here [in the District of Columbia] and because it regularly
transacts business here and derives substantial revenue from its activities here."  Opp'n at 3.

tortious injury.  EDO Motion at 8 (citing *Helmer v. Doletskaya*, 393 F.3d 201, 208-209 (D.C. Cir. 2004)).   As WWNS discloses, it is a LLC, and for diversity purposes, such entities are treated as unincorporated associations, whose citizenship is determined by the citizenship of the LLC's members.  Opp'n at 2 n.2 (citing cases).  Additionally, the U.S. Supreme Court has held that a LLC resides wherever its members reside. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 190 (1990). WWNS asserts that its membership consists of two individual citizens of Maryland and a partnership organized in Texas.[2]  Opp'n at 2 n.2.  To the extent that any harm was suffered, and EDO contests any injury, such alleged harm occurred beyond the District of Columbia.

Finally, no personal jurisdiction over EDO is available under subsection (a)(4) -- which applies only to claims for *tortious* injury -- because WWNS's invocation of the Virginia Civil Conspiracy Act, VA. CODE. ANN. § 18.2-499, describes an alleged statutory violation.

## 1.    WWNS's Alleged Injury for Its Defamation Claim Did Not Occur in the District.

Regarding WWNS's defamation claim, a reputational injury occurs for purposes of D.C. CODE § 13-423(a)(3) or (4)[3] where the plaintiff lives or works.  *See Helmer*, 393 F.3d at 208 (citing *Calder v. Jones*, 465 U.S. 783, 785, 788-89 (1984) (injury associated

---

[2]    We note that WWNS has not identified the membership of the Texas partnership. Should any of the individual members of the WWNS Texas partnership possess the same citizenship as EDO or DynCorp, diversity jurisdiction would be destroyed.  *See Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 39 (D.D.C. 2004)   ("non-corporate entities are analogized to partnerships, which carry the citizenship of their members.") (citing cases).  A district court may dismiss an action for lack of subject matter jurisdiction at any time.  *See* Fed. R. Civ. P. 12(h)(3).

[3]     D.C. CODE § 13-423(a)(3) and (4) both contain the requirement that the tortious injury occur in the District of Columbia.

with libel was suffered by plaintiff in California, where she lived and worked)).[4]

As earlier described, WWNS's membership consists of two individual citizens of Maryland and a partnership organized in Texas. Opp'n at 2 n.2.  It has not alleged that any of these individuals or entities live or work in the District of Columbia. Therefore, WWNS has not pled that the allegedly defamatory injury occurred in the District of Columbia, a required element of D.C. CODE § 13-423(a)(4), and WWNS's assertion of personal jurisdiction over EDO for its defamation claim must therefore fail.

2.     **WWNS's Alleged Injury for Its Tortious Interference and Common Law Conspiracy Claims Did Not Occur in the District.**

Unlike a reputational injury, an *economic* injury under D.C. CODE § 13-423(a)(3) or (4) occurs where the original event causing the economic injury occurred.  *See Helmer*, 393 F.3d at 203, 208-209 (holding that there was no economic injury in D.C. under D.C. CODE § 13-423(a)(3) and thus no personal jurisdiction over defendant where "the original events that caused the alleged injury" to plaintiff occurred outside of D.C. despite plaintiff's allegation that he was a citizen and resident of D.C. and domiciled in D.C.).

In *Helmer*, the D.C. Circuit noted that, in evaluating D.C. CODE § 13-423(a)(3), "[a]lthough District of Columbia law does not establish where economic injury occurs, the case law of other circuits is instructive." *Id.* at 208.  To determine where the alleged economic injury occurred, the *Helmer* court cited cases for the proposition that the situs of the injury is the location of the *original event which caused the injury*, not the location where the resultant damages are subsequently felt by the plaintiff.  *See id.* at 208-209

---

[4]     *See also Ye v. Zhang,* 2006 U.S. Dist. LEXIS 15038, *6-7 (D.D.C. 2006) (holding plaintiff's allegations that he lived and worked in D.C. make a prima facie showing that injury was suffered in the District for defamation claim); *Blumenthal v. Drudge,* 992 F. Supp. 44, 46, 53 (D.D.C. 1998) (holding in

(citing *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990)) ("An injury . . . does not occur within the state simply because the plaintiff is a resident. The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff. Thus, despite the fact that [the plaintiff] may suffer the economic consequences of his firing in New York, the location of the original event which caused the injury is New Jersey.") (internal quotations omitted).[5]

WWNS's Complaint does not allege a *location* of any original events performed by EDO that purportedly support its claims for tortious interference with contract, tortious interference with prospective economic advantage, or common law conspiracy. Regarding the tortious interference with contract claim, WWNS simply alleges that EDO tortiously interfered with WWNS's contracts with its employees by "distributing and communicating to such employees material false information harmful to WWNS's reputation, in an attempt to convince WWNS's employees to end their employment with WWNS and/or breach their employment contracts with WWNS." Compl. ¶ 124. WWNS does not detail *where* this alleged interference occurred. Even extrapolating that the alleged contractual interference was accomplished by way of Steve Appling's email to

---

defamation case the tortious injury was suffered by the Blumenthals in D.C. where they were citizens and had continuously lived since 1985).

[5]      *See also Wenz v. Memery Crystal*, 55 F.3d 1503, 1506, 1508 (10th Cir. 1995) (holding that when London law firm wrongfully withdrew funds from plaintiff's London trust account, "the loss or injury occurred in London where the account was located, not in Colorado. That [the plaintiff] may be economically impacted in Colorado, simply because he lives there, is insufficient to establish personal jurisdiction under . . . the Colorado long-arm statute."); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570-71 (Fed. Cir. 1994) (economic injury caused by patent infringement occurs not where the patent owner resides, but "where the infringing sale is made because the patent owner loses business there"). *See also Burman v. Phoenix Worldwide Indus.,* 437 F. Supp. 2d 142, 152 (D.D.C. 2006) (plaintiffs failed to make a prima facie of injury in D.C. pursuant to D.C. CODE § 13-423(a)(3) for tort claims causing economic injury because preparation of financial reports that caused the alleged injury occurred in Florida); *Freiman v. Lazur*, 925 F. Supp. 14, 22-23 (D.D.C. 1996) (personal jurisdiction not available over defendants pursuant to D.C. CODE § 13-423(a)(3) for plaintiff's conspiracy tort claim because injuries did not occur within D.C.).

WWNS employee Gabe Johnson, Compl. ¶ 94-95, WWNS does not allege any geographical circumstances or details about the sending or receiving of such email. Given that the locus of WWNS's Complaint is Iraq and Afghanistan, it may be that such events occurred there, but WWNS's Complaint is demonstrably silent on this subject.

Similarly, WWNS's claims for tortious interference with prospective economic advantage and common law conspiracy do not detail *where* EDO's alleged actions occurred. WWNS's claim against EDO for tortious interference with prospective economic advantage hinges on EDO's alleged "distribution and communication of material and false information harmful to WWNS's reputation." Compl. ¶130. However, the Complaint does not detail *where* or to whom these alleged distributions of such information occurred. Again, the Complaint is conspicuously silent as to where EDO allegedly committed any acts related to WWNS's common law conspiracy claim.[6]

Accordingly, because WWNS does not even allege "the location of the original event which caused the injury," *Helmer*, 393 F.3d at 208-209, aside from its failure to identify the District of Columbia as such location, WWNS cannot establish the required jurisdictional nexus. Hence, WWNS's claims for tortious interference with contract, tortious interference with prospective economic advantage, and common law conspiracy must be dismissed for lack of personal jurisdiction pursuant to D.C. CODE § 13-423(a)(4).

---

[6]     Any attempts by WWNS to use its allegation of conspiracy between DynCorp and EDO to impute DynCorp's actions to EDO fail for two reasons, one factual and one legal. First, WWNS does not allege that any of DynCorp's alleged actions (or inactions) occurred in Washington, D.C. In fact, WWNS only alleges that in furtherance of the alleged Virginia statutory conspiracy (but not the common law conspiracy), DynCorp "acted in whole or in part from its offices in the Commonwealth of Virginia." Compl. ¶141. Second, under settled case law, a plaintiff must allege specific acts connecting the defendant with the forum, and a bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction. *Lindsey v. Rice*, 2005 U.S. Dist. LEXIS 35710, *9 (D.D.C. 2005) citing *First Chicago Int'l v. United Exchange Co*., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).

3.      **WWNS's Claim for Violation of the Virginia Civil Conspiracy Act is Not a Claim for "Tortious Injury," and Even So, No Alleged Injury Occurred in the District.**

As outlined above, WWNS has only alleged personal jurisdiction over EDO pursuant to D.C. CODE § 13-423(a)(4), which by its own terms applies only to "a claim for relief arising from…*tortious* injury." D.C. CODE § 13-423(a)(4) (emphasis added). Because WWNS's allegation of violation of the Virginia Civil Conspiracy Act, VA. CODE. ANN. § 18.2-499, does not assert a tortious injury, but rather a purported *statutory* violation, this claim falls outside of the reach of D.C. CODE § 13-423(a)(4). Further, and as with its tort claims, WWNS has not alleged that any injury stemming from the alleged Virginia statutory breach occurred in the District,[7] and therefore this claim must similarly fail.

B.      **WWNS Has Not Alleged In Its Complaint Any Facts Relating to EDO's Contacts with the District.**

WWNS's personal jurisdiction case suffers from another fatal flaw -- WWNS has also failed to plead *in its Complaint* any facts establishing that EDO has one of three enumerated contacts, or "plus factors," with the District of Columbia. *Kline v. Williams*, 2006 U.S. Dist. LEXIS 23263, at *8-9 (D.D.C. 2006) (explaining that term "plus factors" refers to requirement of D.C. CODE § 13-423(a)(4) that the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia").

Although WWNS make numerous assertions regarding EDO's supposed contacts

---

[7]       *See Helmer*, 393 F. 3d at 208-09 (the alleged economic injury occurs at the location of the *original event which caused the injury*, not the location where the resultant damages are subsequently felt by the plaintiff).

7

with D.C., it makes such assertions in its *opposition papers* and not in its Complaint.[8]

For purposes of a motion to dismiss, a plaintiff may not amend its complaint through its

opposition papers, and the Court will not consider facts included in, or legal inferences

arising from, the opposition papers if they are absent from the complaint. *See, e.g., Doe

v. State of Israel*, 400 F. Supp. 2d 86, 100 (D.D.C. 2005). Thus, WWNS's assertions

about EDO's supposed contact with Washington, D.C. are not properly before the Court.[9]

### C.   The District's Interest in Having this Case Litigated Here is Minimal.

Finally, the District of Columbia's "interest in adjudicating the dispute" is an

additional factor in determining whether the exercise of personal jurisdiction over a

defendant is reasonable or fair. *Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552,

556 (D.D.C. 2001) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292

(1980)). "Where the plaintiff is not a resident of the forum, the forum state's 'legitimate

interests in the dispute have considerably diminished.'" *Formica*, 125 F. Supp. 2d at 556

(citing *Asahi Metal Industry Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987)).

Thus, because WWNS itself is a non-resident by virtue of its members being out-of-state

citizens or entities, the District's interest in having this case litigated here is assuredly

---

[8]      WWNS writes in its Opposition at 3-4 that, "as a large supplier of technology and services to the
United States government, and other law enforcement agencies, EDO maintains significant and persistent
contacts in the District of Columbia. *See* Compl. ¶ 5." (footnotes omitted). However, paragraph 5 of
WWNS's Complaint says no such thing. It simply asserts, "EDO Corporation is a New York corporation
headquartered at 60 East 42nd Street, 42nd Floor, New York, New York 10165. EDO Corporation
manufactures products for and provides engineering services to the defense, intelligence and commercial
market."

[9]      If the Court does grant WWNS's request to engage in jurisdictional discovery (which would be
futile due to the numerous other infirmities in WWNS's case), such discovery would show that many of
WWNS's assertions relate only to a subsidiary called EDO Professional Services, and not to the parent
company and Defendant in this action, EDO Corporation. As such, any connections between EDO
Professional Services and the District would not presumptively be imputed to EDO Corporation for
purposes of a personal jurisdiction analysis. *See Johnson-Tanner v. First Cash Fin. Servs.*, 239 F. Supp. 2d
34, 38 (D.D.C. 2003).

minimal.

## III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Standard of Review

WWNS makes much of the distinction between pleading standards applied to a Rule 12(b)(6) motion to dismiss and those applied to a motion for summary judgment, erroneously suggesting that this Court has virtually no authority to dismiss WWNS's unfounded claims at this procedural stage. While it is true that courts reviewing a motion to dismiss should construe a complaint in a light favorable to the plaintiff, they should not accept as true a plaintiff's bald assertions and legal conclusions, and should not draw unwarranted inferences to aid the plaintiff. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Indeed, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### B. While Choice of Law Principles Require Application of Virginia Law, Plaintiff's Claims Similarly Fail Under District of Columbia Law.

WWNS conveniently asserts in its opposition brief, for the very first time in this litigation, that all of its common law claims are brought under District of Columbia law – even though WWNS asserts a *Virginia* statutory claim against EDO. Plaintiff cannot suddenly apply District of Columbia law to the four common law claims while maintaining that Virginia law applies to a statutory claim based on the *same issue* arising from the *same* set of facts; only one state's law should apply to each issue. *See In re*

*Korean Air Lines Disaster*, 932 F.2d 1475, 1495 (D.C. Cir. 1991); *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 117 F.R.D. 292, 296-97 (D.D.C. 1987); RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 cmt. d.

By asserting a Virginia statutory claim, WWNS has effectively locked itself into Virginia law for every other claim arising from the same issue. *See Stutsman v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*, 546 A.2d 367, 374-75 (D.C. 1988) (finding the fact that "Virginia has enacted a statute tailored to the specific cause of action asserted here" to be a significant factor in choice of law analysis). Indeed, the Virginia Civil Conspiracy Act claim is the only *statutory* violation alleged against EDO. Accordingly, it is appropriate to apply Virginia law to claims arising from the same issue upon which the statutory claim is based – and, in this case, all the claims against EDO arise from the same issue.

As explained below, while EDO maintains that Virginia law applies to Plaintiff's claims, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) even through the application of substantive District of Columbia law.

    **C.**    <u>**Each Individual Count Fails to State a Claim Upon Which Relief Can Be Granted.**</u>

        **1.**    <u>**Plaintiff Fails to State a Claim for Defamation.**</u>

            **a.**    <u>**There Was No Publication.**</u>

As an initial matter, Plaintiff does not dispute that Mr. Gabe Johnson was an employee, and therefore an agent, of WWNS at the time of the alleged defamatory e-mail. Despite Plaintiff's failed attempt to prove otherwise,[10] the fact remains that

---

[10]    Plaintiff attempts to support its allegation that a defamatory statement was *published* – despite the absence of a third party – by citing RESTATEMENT (SECOND) OF TORTS § 577 cmt. e (1977). *See* Opp'n at 10. Significantly, Plaintiff fails to quote the *entire* sentence of the comment, which states: "So too, the

"generally, the requirement of a 'publication' of defamatory matters for purposes of establishing liability for defamation, is *not* satisfied by a communication of such matters to an agent of the defamed person." 50 AM JUR 2D LIBEL AND SLANDER § 244 (emphasis added).[11]

Further, when the alleged publisher and the recipient are of like mind, or are acting in concert or with a common interest, then the communication to a servant or agent of the person defamed is *not* a publication. *Id*. cmt. *See also Browning v. Clinton*, C.A. No. 98-1991, 2001 U.S. Dist. LEXIS 24537, at *29 (D.D.C. Feb. 8, 2001), *aff'd in relevant part and reversed in part*, 292 F.3d 235, 246 (D.C. Cir. 2002); 50 AM JUR 2D LIBEL AND SLANDER § 246. Here, clearly Mr. Johnson and Mr. Appling were of like mind and were acting with a common interest in communicating about a job for Mr. Johnson.

Plaintiff also attempts to distinguish cases cited by EDO that address the intra-corporate immunity doctrine, arguing that the doctrine is inapplicable here. *See* Opp'n at 10. EDO acknowledges that this is obviously not a case where the alleged publisher and recipient are agents of the *same* corporation. Yet, the intra-corporate immunity doctrine *informs* situations like the instant one, wherein the alleged publication was made to an employee of the plaintiff, because of the compelling notion that an employee or agent is

---

communication to a servant or agent of the person defamed is a publication *although if the communication is in answer to a letter or a request from the other or his agent, the publication may not be actionable in defamation*." RESTATEMENT (SECOND) OF TORTS § 577 cmt. e (1977) (emphasis added). As Plaintiff well knows, the e-mail from Mr. Appling to Mr. Johnson was indeed in *answer* to an e-mail *request* from Mr. Johnson, who was an agent of WWNS at the time.

[11]     Indeed, the only case law cited by Plaintiff to support its claim that a publication occurred is a case from the U.S. District Court in *Colorado*. Opp'n at 10. The Colorado case, *Williams v. Burns*, 463 F. Supp. 1278 (D. Colo. 1979), is distinguishable. There, the District Court applied Colorado state law and looked to the Restatement. *Id*. at 1281. The District Court noted, however, that where the alleged

not a third party separate from his or her corporate employer.  Accordingly, in the absence of a publication, Plaintiff's defamation claim must fail.

### b.    There Was No Actionable Statement.

In hopes of surviving EDO's motion to dismiss, Plaintiff asserts that the determination of whether an allegedly defamatory statement is actionable is a fact-intensive process.  But "[t]he determination of whether a statement is actionable is a matter of law."  *Goddard v. Protective Life Corp*., 82 F. Supp. 2d 545, 560 (E.D.Va. 2000) (citing cases).  Plaintiff suggests that the substantial truth doctrine is more suited to summary judgment.  But where, as here, the substantial truth of EDO's alleged statement can be easily gleaned from the Complaint itself, dismissal is appropriate.  The Court need not look beyond the four corners of the Complaint to see that WWNS was effectively – even if not legally – bankrupt after DynCorp, which represented 95% of WWNS's business, refused to renew WWNS's subcontract.  Compl. ¶¶ 76, 88.  The term "Chapter 11" derives from a chapter of the U.S. Bankruptcy Code and has been popularized in the business realm as a synonym for bankruptcy generally.  Accordingly, the substantial truth doctrine applies, the statement is not actionable, and dismissal under Rule 12(b)(6) is appropriate.  *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 620, 624-25 (D.C. Cir. 2001) (upholding dismissal where accusation of "paranoia" was based on the popular, not the clinical, definition of the term, and explaining that "these comments cannot reasonably be understood as verifiably false, and, therefore potentially actionable,

---

defamatory statement is a response to a letter or request by a plaintiff's agent, the statement may not be actionable.  *Id.  See* 50 AM JUR 2D LIBEL AND SLANDER §§ 244, 246.

assertions").[12]

It is also clear, without having to look beyond the Complaint, that Mr. Appling's e-mail is simply relaying the fact that *DynCorp made a statement* about WWNS's Chapter 11 status – not relaying the fact of Chapter 11 status itself. Accordingly, the truth defense applies, because regardless of whether the allegation was true, it is a fact that DynCorp made the statement. Compl. ¶ 92. Additionally, Mr. Appling never made the statement that WWNS alleges to be defamatory, i.e., the statement that WWNS had filed for Chapter 11 protections. Rather, he wrote that *DynCorp stated* as much. Plaintiff has thus failed to allege an actionable statement.

WWNS also alleges in a footnote that the Complaint accurately reflects the content of Mr. Appling's e-mail to Mr. Johnson, despite inserting bracketed phrases into the quoted portion of the e-mail. Opp'n at 9 n.10 (citing Compl. ¶ 94). EDO contests this assertion and maintains that the Complaint's partial quote of the e-mail, and its insertion of bracketed phrases into the partial quote, mischaracterizes the content and context of the e-mail. Indeed, the very fact that Plaintiff felt the need to add bracketed words into the quoted portion of Mr. Appling's e-mail demonstrates that the e-mail, like the Complaint, does not *on its face* reflect any wrongful conduct. Plaintiff's *choice* not to quote the e-mail verbatim should inform the Court's analysis of the deficiency of Plaintiff's allegations.[13]

---

[12]     Plaintiff cites *Levine v. McLesky* to argue that the question of substantial truth is better suited to summary judgment, after discovery has closed. Opp'n at 12. But *Weyrich* exemplifies the appropriateness of a Rule 12(b)(6) dismissal where, as here, a statement cannot be reasonably understood to be actionable.

[13]     EDO echoes WWNS's offer to produce the entire e-mail to the Court, should the Court require as much in order to rule on the instant motion to dismiss. Indeed, upon reviewing the entire e-mail, it is easy to see that the substantial truth doctrine applies. Nevertheless, EDO respectfully submits that the Court can and should dismiss this claim without having to look outside the Complaint.

c.    **There Is No Evidence of Intent or Negligence.**

As support for assertions of actual malice or negligence, Plaintiff cites to Paragraphs 89-99 of the Complaint and claims that they reflect EDO's intent to defame WWNS by convincing WWNS employees, with false information, to breach their contracts. Opp'n at 13. But these paragraphs reflect no such thing. As explained above, no false information was provided by EDO. Nor does Plaintiff ever allege in the Complaint that EDO convinced WWNS employees to breach any contracts. Moreover, as supported by the fact that DynCorp notified WWNS some 17 days before Mr. Appling's e-mail to Mr. Johnson that it would not renew its subcontract with WWNS, Compl. ¶ 76, and as supported by the full content and context of the e-mail exchange between Mr. Appling and Mr. Johnson, WWNS employees had every incentive to escape *before* the e-mail was sent (and, in fact, Mr. Johnson had *already* made arrangements to leave WWNS). Mr. Appling's e-mail, therefore, contradicts Plaintiff's claim of malicious intent.

Nor was the e-mail negligent. EDO had no reason to believe that DynCorp was willfully misrepresenting the Chapter 11 filing. Plaintiff asserts that EDO should have been on notice not to trust any statements from DynCorp in the wake of WWNS's own allegations that DynCorp and EDO were biased after EDO criticized WWNS in a report on radio systems. Opp'n at 13. In other words, Plaintiff asserts that its own self-interested accusations of bias against both DynCorp and EDO should have been enough to require EDO to verify any subsequent statements by DynCorp. This is, quite simply, circular and absurd.[14]    Moreover, the Complaint never alleges that EDO knew of

---

[14]    Additionally, the full content and context of Mr. Appling's e-mail reveals that he received the same Chapter 11 information from a second source outside of DynCorp or EDO. Particularly in light of

WWNS's accusations of bias. *See* Compl. ¶¶ 56-60. Rather, WWNS states that it repeatedly warned Mr. Rosenkranz – *a DynCorp employee* – about Darlington's alleged lack of impartiality. *Id*. ¶ 57. While the Complaint indicates that *DynCorp* commissioned a review by Full Spectrum Communications LLC in response to WWNS's complaints of bias, *id*. ¶ 59, it never alleges that WWNS relayed these complaints to *EDO*. Thus, even assuming that WWNS's accusations of bias would otherwise have put EDO on notice to independently confirm statements from DynCorp about Plaintiff's Chapter 11 status, Plaintiff fails to assert that EDO even knew about any such allegations of bias.[15]

## 2.     Plaintiff Fails to State a Claim for Tortious Interference with Contract.

Plaintiff erroneously asserts that the Complaint details an inducement to Mr. Johnson to terminate "his employment contract with WWNS" and that such inducement also evinces EDO's knowledge of, and intent to interfere with, this alleged employment contract with WWNS. Opp'n at 14. Plaintiff relies on the single e-mail from Mr. Appling to Mr. Johnson as the sole supporting fact for these assertions. *See id*. Yet nowhere in the Complaint does Plaintiff assert the existence of an actual contract between Mr. Johnson and WWNS. Rather, the e-mail cited by Plaintiff states only that Mr. Appling requested that Mr. Johnson "tender [his] resignation to WWNS." *Id*. (quoting Compl. ¶ 94).

---

this independent confirmation from a second source, Mr. Appling's e-mail was not negligent. Nevertheless, EDO respectfully submits that the Court can and should dismiss this claim without having to look outside the Complaint, because Mr. Appling was under no heightened duty to research the matter himself.

[15]     EDO invites the Court's attention to the fact that Plaintiff has chosen to ignore EDO's argument that it has not sufficiently pled damages as to the defamation claim.

Plaintiff makes an enormous factual leap in assuming that the tender of a resignation necessarily implies an existing, enforceable employment contract. In actuality, the phrase "tender a resignation" is a popular, widely used term in the business world to reflect an announcement of departure from employment. This common business jargon does not, however, imply the existence of an employment *contract*. An at-will employee or a political appointee, for example, can tender a resignation without having had an employment contract. Plaintiff therefore fails to allege a key element of this claim – the existence of a contract. *See Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (quoting *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)). [16]

Furthermore, even assuming the existence of such a contract, the Complaint never alleges that Mr. Johnson actually tendered his resignation. Instead, the Complaint merely recounts Mr. Appling's *request* that he do so. Compl. ¶ 94. Indeed, because Plaintiff never alleged a contract or a breach, it cannot allege the essential element of damage resulting from the breach. Plaintiff cites Paragraph 98 of the Complaint as evidence that it alleged damage in the form of lost future work for the U.S. Department of Defense. Opp'n at 15. But significantly, Plaintiff *never* alleges that such lost opportunities – assuming they existed – were the result of EDO successfully inducing WWNS employees to breach their employment contracts. To the contrary, WWNS alleges only that *DynCorp*'s actions caused WWNS employees to terminate their employment contracts.

---

[16] A subsequent vague and conclusory statement alleging that "several" WWNS employees terminated their "employment contracts," Compl. ¶ 96, cannot cure Plaintiff's deficient pleading with respect to Mr. Johnson. Nowhere does Plaintiff allege that Mr. Johnson was among the several employees referenced in this paragraph. And significantly, Plaintiff alleges that it was *DynCorp*'s – not EDO's – false statement that caused these "several" anonymous employees to terminate employment contracts with WWNS. *Id.*

Compl. ¶ 96.

Plaintiff's assertion that "[d]ozens of former WWNS employees in Iraq and Afghanistan are now employed by DynCorp and/or EDO," Compl. ¶ 99, even if true, falls short of alleging either (a) that these former employees who now work for EDO were ever *under contract* with WWNS, or (b) that their departure from WWNS was caused by a successful inducement by EDO that led to an actual breach. Again, EDO is conspicuously absent from Paragraph 96 of the Complaint. Even assuming all of the facts alleged in the Complaint are true, Plaintiff fails to state a claim for tortious interference with contract, because Plaintiff fails to allege causation or damage with respect to EDO. Plaintiff claims that EDO is asking the Court to look beyond the Complaint in determining that WWNS had no prospective work to turn down. Opp'n at 15. However, the evidence supporting this conclusion rests squarely within the four corners of the Complaint. As explained in EDO's opening brief, Paragraphs 76 and 88 of the Complaint reveal that 95% of WWNS's business had already been terminated before the alleged e-mail was sent. Compl. ¶¶ 76, 88. *See* EDO Motion at 18-19.

Finally, it is also noteworthy that Plaintiff fails to respond at all to EDO's arguments that Plaintiff has failed to plead fraud with specificity as required by Federal Rule of Civil Procedure 9(b) and that EDO is protected by the "financial interest" privilege because hiring Mr. Johnson and other former WWNS employees was in EDO's financial interest.

### 3. Plaintiff Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.

Plaintiff has chosen not to address the vast majority of EDO's four pages of arguments on this claim – arguments covering the requirements to plead "improper

methods," *specific* business expectancies, and *third party* business relationships, as well as the duty to mitigate, among other issues. Instead, Plaintiff only addresses EDO's brief mention of a requirement that Plaintiff plead "a reasonable certainty that absent a defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy." Opp'n at 16 (quoting EDO Motion at 23). Plaintiff suggests that this is a standard that goes above and beyond the pleading standard necessary to survive a Rule 12(b)(6) motion. In fact, EDO was not invoking a pleading *standard*, but rather was citing to an *element* of the claim under Virginia law. Indeed, the quoted phrase borrows almost verbatim from an opinion of this Court listing the *elements* of a claim for tortious interference with prospective business or economic advantage. *See Dag Enters. v. Exxon Mobil Corp.*, Civil Action No. 00-0182, 2001 U.S. Dist. LEXIS 25941, at *18-19 (D.D.C. Sept. 30, 2001) (Kollar-Kotelly, J., presiding) (quoting *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997)). *See also* EDO Motion at 20. Moreover, the Court in that case applied a standard "virtually identical" to the standard for a motion to dismiss and still granted judgment in favor of the defendants on the claim of tortious interference with prospective economic advantage. *Dag*, 2001 U.S. Dist. LEXIS 25941, at *4-5, *27. Hence, Plaintiff's effort to paint this citation as applying an incorrect pleading standard rings hollow.

### 4.    Plaintiff Fails to State a Claim for Civil Conspiracy.

Here again, in its opposition Plaintiff misrepresents the facts alleged in the Complaint. While a claim of civil conspiracy can, in some cases, be established in the absence of an express agreement by evidence of a common intent, there is no such evidence here. In fact, the allegations upon which Plaintiff specifically relies to support a claim of civil conspiracy fail to show any agreement, scheme, or common intent by EDO.

For example, Plaintiff cites Paragraph 34 of the Complaint as marking the moment when DynCorp's relationship with EDO "matured into a conspiracy." Opp'n at 17. But that section of the Complaint merely alleges that DynCorp sent its employee Walter Merrick to Iraq with instructions to "get rid of WWNS." Compl. ¶ 34. EDO is not mentioned in, or anywhere near, this paragraph. Plaintiff similarly cites Paragraph 89 of the Complaint as support for its civil conspiracy claim, Opp'n at 17, but that paragraph merely claims that DynCorp replaced WWNS with EDO. Compl. ¶ 89. It does not reflect any agreement or common intent by EDO to commit an unlawful act. Nor do Paragraphs 92-94 support a common scheme, as Plaintiff claims; rather, they merely allege that DynCorp has told EDO, among others, that WWNS filed for Chapter 11 protections, and that Mr. Appling referenced DynCorp's statement in an e-mail to Mr. Johnson. Compl. ¶¶ 92-94.

Furthermore, the common intent principle invoked by Plaintiff does not permit vague or conclusory pleadings that are otherwise insufficient to state a claim for civil conspiracy. Rather, the principle still requires allegations of acts by EDO revealing that it "pursued the same object" as DynCorp. *Halberstam v. Welch*, 705 F.2d 472, 480 (D.C. Cir. 1983) (internal quotes and citations omitted).[17] Indeed, in *Halberstam* the Court stressed the need to perform a case-specific analysis of the circumstantial evidence from which common interest can be inferred, finding such an inference only where multiple persuasive facts were present. *See id*. at 480-81 ("In sum, we expect that the relationships between the actors and between the actions ( *e.g.,* the proximity in time and place of the acts, and the duration of the actors' joint activity) are relevant in inferring an

---

[17]     *Weishapl v. Sowers*, 771 A.2d 1014, 1024 (D.C. 2001), which Plaintiff cites for the common intent principle, cites in turn to *Halberstam*.

agreement in a civil conspiracy action."). Here, the facts alleged simply do not support such an inference, as demonstrated above.

EDO also reiterates that "[c]ivil conspiracy depends on the performance of some underlying tortious act. It is thus not an independent action; it is, rather, a means for establishing vicarious liability for the underlying tort." *Weishapl v. Sowers*, 771 A.2d 1014, 1023-24 (D.C. 2001) (internal quotes and citations omitted). Where, as here, Plaintiff has failed to state a claim for any underlying tort, then a claim for civil conspiracy must fail.

**5.    Plaintiff Fails to State a Claim under the Virginia Civil Conspiracy Act.**

Plaintiff argues that the Complaint pleads a "willful and malicious purpose of the conspiracy," Opp'n at 18, but Plaintiff cites as evidence the same two paragraphs upon which it bases its common law conspiracy claim: Paragraphs 34 and 89. As explained above, neither of these paragraphs supports a finding of such willful and malicious intent. Plaintiff also cites Paragraph 135, which conclusorily alleges that DynCorp and EDO "agreed to and acted together in a conspiracy," without offering any supporting facts. Neither these cited paragraphs nor any others in the Complaint can sufficiently support a claim under the Virginia Conspiracy Act. *See Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004). Also, as with the common law conspiracy claim, Plaintiff's failure to state an underlying tort is fatal to its statutory claim.

**IV.    SHOULD THE COURT DECLINE TO DISMISS THE CASE, VENUE SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF VIRGINIA BECAUSE D.C. HAS NO SUBSTANTIAL CONNECTION TO THIS MATTER.**

As demonstrated above, EDO respectfully submits that WWNS's case against

EDO should be dismissed for lack of personal jurisdiction, failure to state a claim and improper venue for the reasons set forth herein and in EDO's opening brief.[18]  In the alternative, if the Court somehow finds that the Complaint should not be dismissed, venue should be transferred to the U.S. District Court for the Eastern District of Virginia ("E.D.V.A.") because the District of Columbia has no substantial connection to WWNS's claims.

"Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Modaressi v. Vedadi,* 441 F. Supp. 2d 51, 53 (D.D.C. 2006) (internal quotation omitted); 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3826, at 258 (2d ed. 1986 & Supp. 2006)) ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue."). WWNS simply has not met its burden.  Additionally, as set forth below, EDO has made the two required showings to justify transfer pursuant to 28 U.S.C. § 1404(a): (1) WWNS originally could have brought this action in EDO's proposed transferee district of the E.D.V.A.; and (2) considerations of convenience and the interests of justice, as articulated by the private and public interest factors, weigh in favor of transfer to the E.D.V.A.  *Fc Inv. Group Lc v. Lichtenstein*, 441 F. Supp. 2d 3, 12-13 (D.D.C. 2006).

### A.     WWNS Could Have Originally Brought this Case in the Eastern District of Virginia.

Notwithstanding the fatal flaws of WWNS's Complaint, it is beyond dispute that WWNS originally could have brought this case in EDO's proposed transferee district of

---

[18]      We note that DynCorp's Reply at p. 13 states that EDO seeks transfer to the E.D.V.A.  We clarify that EDO seeks the relief of transfer *only in the alternative* to dismissal.

the E.D.V.A.  Based on WWNS's Complaint, we must presume that it believes that venue should be asserted pursuant to 28 U.S.C. § 1391(a)(3).  *See* EDO's Motion to Dismiss, at n. 15.  Under that statute, a plaintiff may bring its case in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  Both EDO and DynCorp have offices in the E.D.V.A., and thus WWNS could have originally filed its case there.  As EDO has argued in its opening brief and herein, because there is no factual or legal basis for WWNS to have brought this case in the District of Columbia, the E.D.V.A. is the only appropriate venue for this case (if the case is not dismissed) and thus "there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3).

### B.    The Private and Public Interest Factors Favor Transfer to the Eastern District of Virginia.

Additionally, as set forth below, EDO has made a showing that considerations of convenience and the interest of justice weigh in favor of transfer to the E.D.V.A.  *See Lichtenstein*, 441 F. Supp. 2d at 12.

### 1.    The Private Interest Factors Support Transfer.

As to the private interest factor of the plaintiff's choice of forum, "deference [to this factor] is weakened when the plaintiff is not a resident of the chosen forum." *Fleming v. Ford Motor Co*., 2006 U.S. Dist. LEXIS 11438, *6-7 (D.D.C. 2006) (quoting *Liban v. Churchey Group II, L.L.C*., 305 F. Supp. 2d 136, 141-42 (D.D.C. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981))).  A limited liability company resides wherever its members reside.  *See Carden*, 494 U.S. at 190.  As noted above, WWNS, as a LLC, cannot allege that it is a *resident* of the District, because, as WWNS

admits, its membership is comprised of non-D.C. citizens (the two individual citizens of Maryland and the Texas partnership). Opp'n at 2 n.2. WWNS never alleges that it has any members who are residents of the District.

Any deference given to the plaintiff's choice of forum is further diluted when the plaintiff's choice has "no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000); *M Airport Working Group of Orange County, Inc. v. United States DOD*, 226 F. Supp. 2d 227, 231 (D.D.C. 2002) (when connection between the controversy, the plaintiff, and chosen forum is attenuated, court gives less deference to plaintiff's choice of forum). Indeed, the only connection WWNS alleges this case has to D.C. is that WWNS is "headquartered at 1900 M St., NW Suite 500, Washington, DC 20036." Compl. ¶ 2. However, according to the D.C. Department of Consumer and Regulatory Affairs, WWNS is registered in D.C. as a *foreign* limited liability company.[19] Although WWNS's status as a foreign LLC in the District of Columbia is listed as "Active," WWNS is not in good standing in Delaware, its state of formation, which undermines WWNS's continued viability as a foreign limited liability company that is qualified to do business in D.C.[20] Hence, this case has no discernable connection to the District of Columbia that would merit the continued expenditure of this Court's resources and attention. Succinctly put, WWNS's Complaint utterly fails to detail *any* meaningful ties

---

[19]    Undersigned counsel states that WWNS's registration in D.C. as a *foreign* limited liability company is reflected in the records of the D.C. Department of Consumer and Regulatory Affairs at, *inter alia*, http://mblr.dc.gov/corp/lookup/status.asp?id=216694. A copy of such record is in the possession of undersigned counsel and will be submitted to the Court upon request.

[20]    Undersigned counsel states that it has in its possession a copy of a certificate from the Delaware Secretary of State, issued on December 13, 2006, indicating that WWNS ceased to be in good standing in Delaware on June 1, 2006. A copy of such certificate will be submitted to the Court upon request.

between this case and the District of Columbia.

Regarding defendants' choice of forum, both Defendants EDO and DynCorp support a transfer of venue to the Eastern District of Virginia if the case is not dismissed. EDO has an office in Arlington, Virginia where relevant witnesses and documents are located. As to whether WWNS's claims "arose elsewhere," this factor is beyond doubt -- these claims arose, as WWNS admits, from "events occurring on the other side of the Earth from the District of Columbia." Opp'n at 7.

### 2.    The Public Interest Factors Also Favor Transfer.

Similarly, a review of the public interest factors also points to the propriety of transfer to the E.D.V.A. To the extent that WWNS asserts any causes of action arising under D.C. law, the E.D.V.A. is a perfectly competent forum in which to consider such claims. *See Lichtenstein*, 441 F. Supp. 2d at 14 (holding that party did not meet burden of showing that District court will have difficulty applying out-of-state law). As WWNS admits, Opp'n at 6-7, this Court bears a heavier case load than the E.D.V.A., militating in favor of transfer. Finally, as to the jurisprudential preference for deciding local controversies at home, this case, as illustrated above and, again, emanating from "events occurring on the other side of the Earth," does not involve the District in any significant way.

### V.    CONCLUSION AND RELIEF REQUESTED

As is demonstrated by its Complaint and even its supporting memoranda, Plaintiff WWNS has failed to establish either personal jurisdiction or venue, and has similarly failed to articulate a claim upon which relief can be granted. Nowhere does Plaintiff demonstrate that an injury occurred in the District of Columbia, or that in fact there exists

24

any meaningful connection between the instant jurisdiction and its allegations.  Nor does Plaintiff advance any cognizable claims against defendant EDO, which is mentioned in the Complaint almost as an afterthought.  What is indisputably clear from Plaintiff's Complaint, however, is that EDO has virtually no involvement with the contractual relationship from which the Complaint emanates, and that Plaintiff's resultant and oblique claims against EDO are fatally deficient, and must be dismissed.

Dated:    Washington, D.C.
          December 18, 2006


                                    Respectfully submitted,


                                    /s/ William M. Sullivan, Jr.
                                    William M. Sullivan, Jr.
                                          Federal Bar No.  467269
                                          Email: wsullivan@winston.com
                                    Sarah M. Hall
                                          Federal Bar No. 479119
                                          Email: smhall@winston.com
                                    Ryan S. Spiegel
                                          Federal Bar No. 489103
                                          Email: rspiegel@winston.com
                                    **WINSTON & STRAWN LLP**
                                    1700 K Street, N.W.
                                    Washington, D.C.  20006
                                    Tel. (202) 282-5000
                                    Fax (202) 282-5100

                                    *Counsel for Defendant EDO Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2006, a copy of the foregoing *REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EDO CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE* was filed electronically. I understand that pursuant to Local Civil Rule 5.4(d), electronic filing of the aforementioned Motion operates to effect service on all counsel, because all counsel have obtained CM/ECF passwords.


/s/  William M. Sullivan, Jr._____
William M. Sullivan, Jr.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>DYNCORP INTERNATIONAL, LLC, )<br>and EDO CORPORATION. )<br><br>Defendants. )<br>_____) | Case No. 1:06-CV-01717<br>Judge Richard J. Leon |

**<u>PROPOSED ORDER</u>**

After having reviewed the parties' memoranda as well as the pertinent facts, statutes, case law, and other relevant materials, *DEFENDANT EDO CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FAILURE TO STATE A CLAIM AND TO DISMISS OR TRANSFER FOR IMPROPER VENUE* is hereby

GRANTED, and Plaintiff's case against EDO is dismissed in its entirety, with prejudice.

_____
The Honorable Richard J. Leon
United States District Judge

28