IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

WORLDWIDE NETWORK SERVICES, LLC,      )
                                       )
            Plaintiff,                 )
v.                                     )         CA No. 06-1717 (RJL)
                                       )
DYNCORP INTERNATIONAL, LLC, et al.     )
                                       )
            Defendants.                )
                                       )
_____ )

## MOTION TO INTERVENE

Intervenor-plaintiff Intelsat General Corporation, by counsel, pursuant to F.R.Civ.

P. 24, moves to intervene as co-plaintiff in this matter, as plaintiff is a real party in

interest to this litigation.  A Memorandum of Points and Authorities in support of this

Motion is filed herewith.  For the reasons stated therein, Intelsat General moves to

intervene as co-plaintiff in this matter.



                                   INTELSAT GENERAL CORPORATION
                                   By Counsel



_____/s/David I. Bledsoe_____
David I. Bledsoe
Bar Number 422596
700 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 5, 2007, a copy of the foregoing Memorandum in Support of Motion to Intervene was filed by email to the Clerk's Office and faxed to :

**Debra A. Drake**
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Suite 1210
Washington, DC 20036

**Sarah M. Hall**
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006

**George D. Ruttinger**
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

and all other counsel of record.

　　　　　　　　　　　/s/David I. Bledsoe　　　　　
　　　　　　　　　David I. Bledsoe

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

WORLDWIDE NETWORK SERVICES, LLC,   )
                                     )
               Plaintiff,       )
v.                                )      CA No. 06-1717 (RJL)
                                     )
DYNCORP INTERNATIONAL, LLC, et al.   )
                                     )
          Defendants.     )
                                     )
_____ )

## **<u>MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE</u>**

      Intervenor-plaintiff Intelsat General Corporation, by counsel, pursuant to F.R.Civ.

P. 24, files this Memorandum in Support of its Motion to Intervene, moves to intervene

as co-plaintiff in this matter, as it is a real party in interest to this litigation.

      Intelsat General Corporation ("Intelsat") is the successor in interest to G2 Satellite

Systems, Inc. ("G2"),a wholly-owned subsidiary of Panamsat Corporation.  G2 provided

satellite services to plaintiff WWNS pursuant to a contract between Panamsat and

WWNS dated March 7, 2003.  WWNS resold these services to defendant Dyncorp, who

in turn resold the services to the United States government.

      WWNS has failed to pay Intelsat for many of the services rendered by G2 and

Intelsat General to WWNS.  In turn, WWNS has alleged that it had received only partial

payment from Dyncorp on the Subcontracts.  In an effort to resolve the failure of WWNS

to pay the balance it owed Intelsat, Intelsat and WWNS entered into an agreement on

August 17, 2006 ("the Assignment").  Under the terms of the Assignment, WWNS

assigned to Intelsat all monies it would receive from Dyncorp after the date of August 1,

2006 until Intelsat had received the sum of $2,252,596.  See Exhibit A.

Intelsat has received no monies from WWNS pursuant to the Agreement nor any

funds from Dyncorp in satisfaction of WWNS's debt to Intelsat.

WWNS has apparently gone out of business for most purposes.  Correspondence

sent to its business address is returned with the notation.  See Exhibit B.

Intelsat now moves to intervene in this action under F.R.Civ.P 24 to protect its

interest in the monies assigned to it by WWNS.  The Complaint that Intelsat seeks to file

in this matter is attached hereto as Exhibit C.

## ARGUMENT

Intervention is governed by F.R.Civ. P. 24.  Rule 24 provides for two types of

intervention: intervention as of right under Rule 24(a), and permissive intervention under

Rule 24(b).  Intelsat meets both standards.

(a) Intervention of Right.

Upon timely application anyone shall be permitted to intervene in an
action: …when the applicant claims an interest relating to the property or
transaction which is the subject of the action and the applicant is so
situated that the disposition of the action may as a practical matter impair
or impede the applicant's ability to protect that interest, unless the
applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention.

> Upon timely application anyone may be permitted to intervene in an action: …(2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . .

Intelsat qualifies as an intervenor under both Rule 24(a) and 24(b).  Intelsat's Motion should be granted.

I.    Intelsat is Entitled to Intervene as of Right under Rule 24(a).

In order for Intelsat to qualify as an intervenor as of right under Rule 24(a), Intelsat General must show that 1) it has an interest relating to the property or transaction which is the subject matter of the action; 2) that it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and 3) its interest is not adequately represented by other parties.  In assessing a motion for intervention under Rule 24(a), the court is to consider four requirements: 1) timeliness; 2) a cognizable interest;  3) impairment of that interest; and 4) lack of adequate representation by existing parties.  Smoke v. Norton, 252 F.3d 468, 470 (D.C. Cir. 2001). Intelsat meets all four requirements, and the motion to intervene should be granted.

Timeliness

The first requirement is a timely application for intervention.  Cook v. Boorstin, 763 F.2d 1462, 1466-71 (D.C. Cir. 1985); Hartman v. Duffy, 185 F.R.D. 525 (D.D.C. 1994).  Timeliness is not precisely defined, but is to be determined from all the circumstances, including the purpose for which intervention is sought and the improbability of prejudice to those already in the case.  Natural Resources Defense Council v. Costle, 561 F.2d 904, 907 (D.C.Cir. 1977).  Among the criteria considered by

courts are time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving applicant's rights, and the probability of prejudice to those already in the case.  United States v. AT&T, 642 F.2d 1285 (D.C.Cir. 1980).

Here, this action was filed a little more than four months ago.  However, responsive pleadings were filed only on November 15, 2006, and discovery has only recently commenced and is scheduled to continue until September 10, 2007.  The Court's Scheduling Order was not entered until January 11, 2007, approximately six weeks ago. Indeed, in Smoke v. Norton, an intervention was permitted after summary judgment had already been entered in the case.  252 F.3d 468.  See also In re Vitamin Antitrust Litigation, 2001 WL 34088808 (D.D.C. March 19, 2001) ( intervention timely where discovery not completed).  Intelsat's motion is timely.

Intelsat's purpose in seeking intervention is to preserve its rights to over $2.2 million that it has been assigned from any funds that Dyncorp owes to WWNS for any reason, and intervention may be the only means available of preserving those rights. WWNS is apparently insolvent, and it seems doubtful that any recovery in this case will find its way to its rightful owner, Intelsat.  As Intelsat is a real party in interest in this case, it ought to be present to protect that interest. [1]

Finally, there is no possible prejudice to any party.  Intelsat's rights in this matter derive only from the Assignment and the current parties' failure to pay for the use of Intelsat's services.  Intelsat has no knowledge of the matters alleged in the Complaint,

---

[1]     Indeed, Intelsat would appear to be a necessary party under Rule 19(a), given that it is entitled to the first 2.2 million dollars of any monies recovered from Dyncorp.

and Intelsat's presence in the case will not significantly complicate the litigation of this

matter.  Thus, Intelsat has fulfilled the requirement of timeliness.


Interest in the Property

Intelsat does have an interest in the property that is the subject matter of the

action.  Indeed, Intelsat's interest in the property is superior to plaintiff WWNS's.  By

virtue of the Assignment, Intelsat is in fact the constructive owner of any recovery made

by plaintiff WWNS in this matter, up to the sum of $2,252,596.

An intervenor's interest is obvious when he asserts a claim to the property that is

the subject matter of the suit.  Foster v. Gueory, 655 F.2d 1319, 1324 (D.C.Cir. 1981).

Here, intervenor Intelsat has been assigned by plaintiff the first $2,252,596 it receives

from defendant Dyncorp.  Plaintiff seeks in this suit unnamed sums from Dyncorp in the

form of a judgment, and the monies represented by any such potential judgment have

already been assigned to Intelsat.  Intelsat has a superior interest in the recovery than

plaintiff WWNS.  Only if the recovery exceeds $2,252,596 would WWNS have any

interest in the recovery herein.  Intelsat's intervention is proper.


Impairment of the Interest

Intelsat's interest will clearly be impaired if intervention is not granted.  Other

courts facing similar situations have readily permitted intervention.  In Hardy-Latham v.

Wellons, 415 F.2d 674(4th Cir. 1968) the plaintiff, a broker, was owed a commission

from a client.  The plaintiff, however, had agreed with two other brokers, Hunt and

Barnes, to split the commission.  When the broker brought an action against the client,

Hunt and Barnes sought to intervene under Rule 24. The Fourth Circuit stated:

> Hunt and Barnes fit precisely within [Rule 24(a)].  They claim an interest
> in the transaction and the fund which are the subject of the main action,
> and if the entire amount were paid directly to [plaintiff], their ability to
> collect their proper share would as a practical matter be more
> difficult….The District Court acted correctly in granting their motion to
> intervene.

Id. at 676.

In Gaines v. Dixie Carriers, Inc. 434 F.2d 52 (5th Cir. 1970), a law firm sought to

intervene in a case brought by a former client.  The client had engaged in a contingency

fee arrangement with the law firm, and then later sought to renege on the agreement.  The

district court denied the motion to intervene, and the Fifth Circuit reversed:

> We think it clear that the appellant law firm here claimed an interest in the
> subject of the action against [defendant], and is so situated that the final
> disposition of the action may as a practical matter impair or impede its
> ability to protect that interest.  Neither of the existing parties is concerned
> with protecting the appellant's interest.

In this action, neither Dyncorp nor WWNS are concerned with protecting Intelsat's

interest in sums due WWNS from Dyncorp.  It is in fact unsettling that WWNS failed to

include Intelsat, the constructive owner of the first $2,252,596 paid by Dyncorp to

WWNS, as a necessary party under Rule 19.  It seems clear that neither Dyncorp nor

WWNS, both of whom used Intelsat's services, billed their customers for Intelsat's

services and were themselves paid for Intelsat's services, care a whit whether Intelsat is

made whole or not.

Likewise, in United States v. Eilberg, 89 F.R.D. 473 (E.D.Pa. 1980), a

Congressman's law firm accepted fees to lobby the United States government, an illegal

act.  The United States sought to recover the Congressman's share of the fee paid to the

law firm.  Two of the lawyer's former partners sought to intervene, contending that they, not the United States, were entitled to the Congressman's share of the fee. The Court granted the motion to intervene under Rule 24(a).  Specifically, the Court noted the "practical impairment that might result to [intervenors] if the United States should prove successful here." The court further noted:

> Were the United States to succeed [in this matter],. . . [intervenors] would be put to the significant practical disadvantage of attempting in further litigation either to  (1) force Mr. Eilberg to disgorge a sum equal to that already ordered to be paid to the United States, or 2) recoup the distributive share from the United States.  This kind of practical disadvantage falls with the terms of Rule 24(a)(2).

Indeed, as the <u>Eilberg</u> court noted, the Advisory Committee Note to the 1966 Amendment states, "If an absentee would be substantially affected in a practical sense by the determination made in the action, he should, as a general rule, be entitled to intervene."  Here, Intelsat is in fact a real party in interest: the first $2,252,596 that WWNS receives from Dyncorp belongs to Intelsat, not WWNS.  It is difficult to imagine a more compelling case for intervention.

WWNS appears to be out of business, based upon correspondence addressed to it. A bankruptcy filing may be imminent.  See Exhibit A.  Intelsat's sole chance to recover the money owed to it by WWNS may very well be in this litigation.  Intelsat should not be forced to bear the burden of bringing a later, separate action against WWNS should WWNS prevail in this matter.  "It is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation." <u>Natural Resource Defense Council</u>, 561 F.3d at 910.  . That is precisely the

sort of practical impairment that the Rule and case law contemplates as mandating intervention.  Thus, Intelsat also meets the criterion of impairment of interest.

Inadequate Representation

The requirement that a intervenor must show its interests are not adequately represented by the existing parties is satisfied if the intervenor shows that there *may* be inadequate representation.  Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 (1972).  The required showing is minimal, and those opposing intervention bear the ultimate burden of showing that the current representation will be adequate.  United States v. AT&T, 642 U.S. 1285 (D.C. Cir. 1285). Any doubt concerning the propriety of intervention must be resolved in favor of granting intervention.  Federal Savings & Loan v. Falls Chase Special Taxing Dist., 983 F.2d 211 (11th Cir. 1993).  In weighing a motion to intervene, courts will accept all well-pleaded, nonconclusory allegations in the motion and the proposed complaint or answer as true.

While both WWNS and Intelsat are interested in WWNS' rights to recover from Dyncorp, their interests are completely at odds as to who is to receive that recovery.  A partial congruence of interests is not sufficient to guarantee adequacy of representation.  Fund for Animals, Inc. v. Norton, 322 F.2d 728 (D.C.Cir. 2003).

As Intelsat is the equitable assignee and constructive owner of the first $2.2 million to be paid by Dyncorp to WWNS, WWNS may have very different ideas about how any recovery from Dyncorp is to be distributed.  Without Intelsat's intervention, WWNS may in fact choose to keep the recovery assigned to it, or distribute it to shareholders, or use it to prefer other creditors.  As noted above in the Gaines case,

neither party here is interested in protecting Intelsat's rights in this matter, and intervention as of right is necessary.

Thus, it is clear that Intelsat has met all the requirements to intervene in this matter as of right under Rule 24(a). The Court should grant the motion.

II.         Intelsat Also Meets the Standards for Permissive Intervention under Rule 24(b).

Even if Intelsat did not meet the criteria necessary to intervene as of right, Intelsat should still be permitted to intervene under Rule 24(b). That Rule provides:

(b) Permissive Intervention.

Upon timely application anyone may be permitted to intervene in an action: …(2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . .

Thus, the standards for permissive intervention are lesser, but not dissimilar from, those for intervention by right.[2]  Permissive intervention requires merely a showing of timeliness, commonality of law or fact, and lack of prejudice to the parties already in the case.[3]  EEOC v. National Children's Center, Inc., 146 F.3d 1042 (D.C.Cir. 1998). There is no requirement under 24(b) that the intervenor show inadequacy of representation or impairment of its interest. As with intervention by right, all doubts are to be construed in favor of permitting intervention. Id.

---

[2]  Intelsat incorporates its previous arguments regarding intervention by right, as many of them also apply to permissive intervention under Rule 24(b).
[3]  While previously an independent basis for jurisdiction was also a requirement of permissive intervention under Rule 24(b), that requirement has been eliminated by 28 U.S.C. §1367.

As noted above, Intelsat's motion is clearly timely.  See In re Vitamin Antitrust Litigation, 2001 WL 34088808 (D.D.C. March 19, 2001) ( intervention timely where discovery not completed).  The requirement of commonality of law or fact is provided by the fact that the very monies that WWNS seeks to receive in this litigation have in fact already been assigned to Intelsat.  Finally, there is no possible prejudice to WWNS and Dyncorp by permitting Intelsat to intervene to protect Intelsat's property.

There is no doubt that Intelsat, which as noted above meets all criteria to intervene as of right under 24(a), also meets the more lenient standards of 24(b).  Intelsat's Motion to Intervene should be granted.

For the foregoing reasons, Intelsat General Corporation prays this Court grant its Motion to Intervene and permit it to file its Complaint herein, and such other relief as to the Court seems proper.

INTELSAT GENERAL CORPORATION
By Counsel

_____/s/David I. Bledsoe_____
David I. Bledsoe
Bar Number 422596
700 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

## CERTIFICATE OF SERVICE

I certify that on March 5, 2007, a copy of the foregoing Memorandum in Support of Motion to Intervene was filed by email to the Clerk's Office and faxed to :

**Debra A. Drake**
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Suite 1210
Washington, DC 20036

**Sarah M. Hall**
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006

**George D. Ruttinger**
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595


_____ /s/David I. Bledsoe _____
David I. Bledsoe


## Intelsat.
### General Corporation

**Sent Via Electronic Mail Only**

17 August 2006

Worldwide Network Services ("WWNS)
1900 M Street, NW
Suite 500
Washington, DC 20036

Attn:   Reginald S. Bailey, Sr.
        Vice President

Subject:    Worldwide Network Services ("WWNS") letter dated 13 August 2006

Dear Mr. Bailey:

Intelsat General Corporation has received the Subject letter from your company, WWNS, and is pleased progress is being made in coming to an amicable resolution of this issue. Regarding the services included in Chart 1 which lists the various service orders that G2 Satellite Solutions, now Intelsat General Corporation, acquired as a result of a recent merger, Intelsat General will agree to mutually terminate the service orders consistent with Chart 1, provided WWNS pays all money received from DynCorp, up to the outstanding balance of $2,252,596 ("Balance"), to include adjustments and disputed items, upon the following conditions:

1.     The referenced purchase orders are deemed to have revised end dates as reflected in the attached Chart 1.

2.     All services under the referenced purchase orders will continue to be provided until the end dates as reflected in Chart 1.

3.     WWNS will have no liability for payment for services provided under the referenced purchase orders after the end dates as reflected in Chart 1.

4.     WWNS will pay to G2 or Intelsat General Corporation, at G2's request, all monies it receives from DynCorp International, LLC ("DynCorp") until the sum of all monies received by WWNS from DynCorp and paid by WWNS to G2/Intelsat equals $2,252,695.00 ("Balance"), which is inclusive of adjustments and disputed items. WWNS agrees to provide Intelsat immediate notice when any payment is received by WWNS from DynCorp, and WWNS further agrees to transmit the equivalent payment to G2/Intelsat within three (3) business days of receipt from DynCorp. This payment arrangement will apply to all payments received by WWNS from DynCorp from August 1, 2006 and any future payments until the Balance is paid in full. WWNS has received no payments from DynCorp since prior to August 1, 2006.

5.     G2 Satellite Solutions and Intelsat General Corporation will waive any present or future, known or unknown, claims against WWNS with respect to the referenced purchase orders, including claims for interest on past due amounts and for amounts that have not yet accrued or been invoiced, subject only to the right to enforce this letter agreement.

EXHIBIT A

Mr. Reginald Bailey
Page 2

6.  Except with respect to

   (a) any claims for defective or inadequate services provided prior to the end dates reflected in Chart 1, and
   (b) any claims asserted by DynCorp, the U.S. Department of State, or another third party against WWNS relating to the termination of services that was threatened or instituted by G2, Intelsat, and their affiliates and subcontractors in accordance with Intelsat's letter dated August 8, 2006, subject "Termination Notice,"

WWNS will waive any and all claims against G2 Satellite Solutions and Intelsat General Corporation with respect to the referenced purchase orders, subject only to its right to enforce this letter agreement. WWNS will not assert claims against G2 Satellite Solutions or Intelsat General Corporation under subparts (a) or (b) of this paragraph, unless a third party asserts such claims against WWNS.

7.  If WWNS does not remit all payments received from DynCorp in accordance with paragraph 4 above to G2/Intelsat, this letter agreement will be null and void and WWNS will remain liable for all outstanding payments and contracted services according to their original terms. Notwithstanding this agreement, WWNS agrees to use commercially reasonable efforts to pay the Balance to Intelsat regardless of whether or not it receives payments from DynCorp.

Please understand that Intelsat will continue to pursue all reasonable efforts to collect the Balance due despite any disputes that WWNS may have with its customer.

This letter agreement supersedes all prior correspondence and discussions on this subject. If you agree to the terms of this letter agreement, please sign below and return it to my attention by COB on Thursday, 17 August 2006. Upon receipt of your signed letter, I will request an authorized official of Intelsat General Corporation to sign this letter to give it binding effect.

Sincerely,

/Signed/
Kay Sears
Senior Vice President of Sales

For World Wide Network Services

By: _____

Name: _Reginald S. Bailey Sr._

Date: _8/17/06_

For Intelsat General Corporation

By: _____

Name: _Kay Sears_

Date: _18 August 2006_

EXHIBIT A

Mr. Reginald Bailey
Page 3

## Chart 1

| CID | WWNS PO# | DI CONTRACT END DATE | REVISED G2 CONTRACT END DATE | LOCATION |
|---|---|---|---|---|
| 10843 | SVC05-0252,SVC05-0253 | 08/11/2006 | 08/11/2006 | Iraq |
| 9145 | SVC05-0251 | 08/11/2006 | 08/11/2006 | Iraq |
| 9483 | SVC05-210 | 08/11/2006 | 08/11/2006 | Iraq |
| 9483 | SVC05-0230 | 09/30/2006 | 09/30/2006 | Afghanistan |
| 9482 | SVC05-165 | 08/30/2006 | 08/30/2006 | Afghanistan |
| 9446 | SVC05-208 | 08/11/2006 | 08/11/2006 | Iraq |
| 10863 | SVC05-0267 | 10/09/2006 | 10/09/2006 | Afghanistan |
| 10913 | SVC05-0316 | 06/15/2006 | 06/15/2006 | Iraq |
| 9916 | SVC05-0420 | 06/15/2006 | 06/15/2006 | Iraq |

EXHIBIT A





G2 Satellite Solutions
6550 Rock Spring Drive
Suite 450
Bethesda, Maryland 20817



☐ FORWARDING ORDER EXP.
☐ ADDRESSEE UNKNOWN
☐ NO SUCH NUMBER    RT. 364
☒ MOVED LEFT NO ADDRESS    JRW

MARC SCOTT
WORLDWIDE NETWORK SERVICES
1900 M STREET, NW
SUITE 500
WASHINGTON, DC 20036

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) |
| | ) |
|     Plaintiff/Crossclaim Defendant, | ) |
| | ) |
|     and | ) |
| | ) |
| INTELSAT GENERAL CORPORATION | ) |
| | ) |
|     Plaintiff-Intervenor/Crossclaimant-Intervenor, | ) |
| | ) |
| v. | )    CA No. 06-1717 (RJL) |
| | ) |
| DYNCORP INTERNATIONAL, LLC, et al. | ) |
| | ) |
|     Defendants. | ) |
| | ) |

_____ )

## **COMPLAINT**

        Intervenor-plaintiff Intelsat General Corporation, by counsel, pursuant to F.R.Civ.

P. 24, as and for its complaint, pleads as follows:

        1.     This is a complaint seeking imposition of a constructive trust, equitable

assignment, and declaratory relief against defendant Dyncorp International LLC and

against plaintiff/cross-claim defendant Worldwide Network Services.

## **PARTIES**

        2.     Intelsat General Corporation is a Delaware corporation with its principal

place of business in Maryland.  IG is the successor in interest to G2 Satellite Systems,

Inc. ("G2"), a wholly-owned subsidiary of Panamsat Corporation.  Both Intelsat General

Corporation and G2 are referred to collectively hereafter as "IG."

EXHIBIT C

3.      Co-plaintiff WorldWide Network Service, Inc. ("WWNS") is a Delaware limited liability company with its principal place of business in the District of Columbia.

4.      Defendant Dyncorp International, LLC ("Dyncorp") is a Delaware limited liability company with its principal place of business in Virginia.

## JURISDICTION

5.      This Court has jurisdiction over this matter under F.R.Civ. P. 24, 28 U.S.C. §1367, and principles of supplemental and ancillary jurisdiction.

## FACTS COMMON TO ALL COUNTS

6.      WWNS was a subcontractor to Dyncorp on at least two government contracts between Dyncorp and the United States Department of State.  The subcontracts between WWNS and Dyncorp required, inter alia, that WWNS provide satellite and telecommunication services to Dyncorp.

7.      WWNS contracted with IG to provide satellite and telecommunication services that WWNS was required to provide under its subcontracts with Dyncorp.  IG provided such services to plaintiff WWNS pursuant to a Master Services Agreement between Panamsat Corporation, G2's parent corporation, and WWNS dated March 7, 2003.  Under its subcontracts with Dyncorp, WWNS resold these services to defendant Dyncorp, who in turn resold the same services to the United States government.

8.      IG provided the contracted telecommunications services to WWNS pursuant to the agreement between it and WWNS, and has performed all obligations under such agreement.

EXHIBIT C

9.      WWNS has failed to pay Intelsat for many of the services rendered by G2 and Intelsat General to WWNS.  Dyncorp in turn has made only partial payment to WWNS under the Subcontracts between Dyncorp and WWNS.

10.      In an effort to resolve the failure of WWNS to pay the balance it owed IG, Intelsat General and WWNS entered into an assignment agreement on August 17, 2006 ("the Assignment").  The Assignment is attached hereto as Exhibit A.  Under the terms of the Assignment, WWNS legally and equitably assigned to Intelsat General all monies it would receive from Dyncorp after the date of August 1, 2006 until Intelsat had received the sum of $2,252,596.

11.      Intelsat General has received no monies from WWNS pursuant to the Assignment, nor any funds from Dyncorp in satisfaction of WWNS's debt to IG.

12.      WWNS has apparently ceased to do business for most purposes.


**COUNT ONE**
(Constructive Trust against Defendant Dyncorp
and Crossclaim-Defendant WWNS)
)

13.      The allegations of paragraphs 1 through 12 above are incorporated by reference herein.

14.      IG has provided telecommunications services to WWNS, which in turn billed Dyncorp for those same services, which in turn billed the United States Department of State for those same services.

15.      The United States Department of State has paid, or will pay, Dyncorp for the very services that IG provided to WWNS.

EXHIBIT C

16.    Likewise, Dyncorp has paid WWNS, at least partially, for the very same telecommunications services that IG provided to WWNS and for which WWNS has failed to pay IG.

17.    WWNS has breached it contract with IG by failing to pay IG for its services.

18.    Dyncorp's failure to pay WWNS, WWNS's failure to pay IG for the services rendered by IG, and WWNS's breach of contract are all wrongful acts.

19.    Both WWNS and Dyncorp have been unjustly enriched by such wrongful acts.

20.    Both Dyncorp and WWNS have acquired funds by virtue of their wrongful acts of failing to pay the charges traceable to IG's provision of services to Dyncorp through its subcontractor, WWNS.

21.    Equity demands that neither Dyncorp nor WWNS be permitted to profit from their failure to pay IG, directly or indirectly, for such services.

WHEREFORE, Plaintiff Intelsat General Corporation prays this Court impose a constructive trust, for the benefit of Intelsat General Corporation, on any funds owed by Dyncorp to WWNS or paid by Dyncorp to WWNS, and specifically on any judgment rendered in this matter in favor of WWNS against Dyncorp, award to it its costs herein, and for such other relief as to the Court seems proper.

## COUNT TWO
(Equitable Assignment against Defendant Dyncorp)

22.    The allegations of paragraphs 1 through 21 above are incorporated by reference herein.

EXHIBIT C

23.     By virtue of the Assignment, WWNS equitably assigned to IG its right to any funds it received from Dyncorp, up to the sum of $2,252,596.

24.     IG is therefore a real party in interest in any judgment to be recovered by WWNS in this matter, up to the sum of $2,252,596.  WWNS is only a real party in interest as to any judgment in this matter that exceeds $2,252,596.

WHEREFORE, Plaintiff Intelsat General Corporation prays that any judgment imposed against Dyncorp for the conduct and matters alleged in WWNS's Complaint against Dyncorp be entered in favor of Intelsat General Corporation, up to the sum of $2,252,596, its cost herein, and for such other relief as to the Court seems proper.

### **COUNT THREE**
(Declaratory Judgment against Defendant Dyncorp
and Crossclaim-Defendant WWNS)

25.     The allegations of paragraphs 1 through 24 above are incorporated by reference herein.

26.     Given that WWNS has assigned to IG the first $2,252,596 it receives from Dyncorp, and that WWNS has alleged in this matter that Dyncorp is liable to it for various torts and statutory violations, and seeks to recover damages in excess of $75,000 from Dyncorp for those torts and statutory violations, by virtue of the Assignment, IG is a real party in interest under F.R.Civ.P. 17 as to any funds that WWNS receives in this matter up to the first $2,252,596 it may be awarded herein.

27.     An actual controversy exists as to the rights of the parties within this Court's jurisdiction.

EXHIBIT C

Wherefore, Plaintiff Intelsat General Corporation prays that this court grant it declaratory relief under 28 U.S.C. §2201 and enter an order as follows:

a) Declaring that the Assignment is valid and binding upon WWNS;

b) Declaring that Intelsat General is the assignee of any funds owed by Dyncorp to WWNS for any reason, or any judgment rendered in this matter, up to the amount of $2,252,596;

c) Imposing a constructive trust, for the benefit of Intelsat General Corporation, on any funds owed by Dyncorp to WWNS or any funds paid by Dyncorp to WWNS, and specifically on any judgment rendered in this matter in favor of WWNS against Dyncorp, up to the amount of $2,252,596;

d) Ordering that any potential judgment to be rendered in this matter against Dyncorp and in favor of WWNS, up to the amount of $2,252,596, be entered in favor of co-plaintiff Intelsat General Corporation;

e) Awarding to it its costs herein; and

f) For such other relief as to the Court seems proper.

EXHIBIT C

INTELSAT GENERAL CORPORATION
By Counsel

_____/s/David I. Bledsoe_____
David I. Bledsoe
Bar Number 422596
700 North Washington Street
Suite 708
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

EXHIBIT C

 **Intelsat.**
General Corporation

**Sent Via Electronic Mail Only**

17 August 2006

Worldwide Network Services ("WWNS)
1900 M Street, NW
Suite 500
Washington, DC 20036

Attn:     Reginald S. Bailey, Sr.
          Vice President

Subject:     Worldwide Network Services ("WWNS") letter dated 13 August 2006

Dear Mr. Bailey:

    Intelsat General Corporation has received the Subject letter from your company, WWNS, and is pleased progress is being made in coming to an amicable resolution of this issue.  Regarding the services included in Chart 1 which lists the various service orders that G2 Satellite Solutions, now Intelsat General Corporation, acquired as a result of a recent merger, Intelsat General will agree to mutually terminate the service orders consistent with Chart 1, provided WWNS pays all money received from DynCorp, up to the outstanding balance of $2,252,596 ("Balance"), to include adjustments and disputed items, upon the following conditions:

1.    The referenced purchase orders are deemed to have revised end dates as reflected in the attached Chart 1.

2.    All services under the referenced purchase orders will continue to be provided until the end dates as reflected in Chart 1.

3.    WWNS will have no liability for payment for services provided under the referenced purchase orders after the end dates as reflected in Chart 1.

4.    WWNS will pay to G2 or Intelsat General Corporation, at G2's request, all monies it receives from DynCorp International, LLC ("DynCorp") until the sum of all monies received by WWNS from DynCorp and paid by WWNS to G2/Intelsat equals $2,252,695.00 ("Balance"), which is inclusive of adjustments and disputed items.  WWNS agrees to provide Intelsat immediate notice when any payment is received by WWNS from DynCorp, and WWNS further agrees to transmit the equivalent payment to G2/Intelsat within three (3) business days of receipt from DynCorp. This payment arrangement will apply to all payments received by WWNS from DynCorp from August 1, 2006 and any future payments until the Balance is paid in full.  WWNS has received no payments from DynCorp since prior to August 1, 2006.

5.    G2 Satellite Solutions and Intelsat General Corporation will waive any present or future, known or unknown, claims against WWNS with respect to the referenced purchase orders, including claims for interest on past due amounts and for amounts that have not yet accrued or been invoiced, subject only to the right to enforce this letter agreement.

6560 Rock Spring Drive, Suite 450 Bethesda, MD 20817 USA • T: 1-301-571-1210 • F: 1-301-571-7663

EXHIBIT A

Mr. Reginald Bailey
Page 2

6.     Except with respect to

(a) any claims for defective or inadequate services provided prior to the end dates reflected in Chart 1, and
(b) any claims asserted by DynCorp, the U.S. Department of State, or another third party against WWNS relating to the termination of services that was threatened or instituted by G2, Intelsat, and their affiliates and subcontractors in accordance with Intelsat's letter dated August 8, 2006, subject "Termination Notice,"

WWNS will waive any and all claims against G2 Satellite Solutions and Intelsat General Corporation with respect to the referenced purchase orders, subject only to its right to enforce this letter agreement. WWNS will not assert claims against G2 Satellite Solutions or Intelsat General Corporation under subparts (a) or (b) of this paragraph, unless a third party asserts such claims against WWNS.

7.     If WWNS does not remit all payments received from DynCorp in accordance with paragraph 4 above to G2/Intelsat, this letter agreement will be null and void and WWNS will remain liable for all outstanding payments and contracted services according to their original terms. Notwithstanding this agreement, WWNS agrees to use commercially reasonable efforts to pay the Balance to Intelsat regardless of whether or not it receives payments from DynCorp.

Please understand that Intelsat will continue to pursue all reasonable efforts to collect the Balance due despite any disputes that WWNS may have with its customer.

This letter agreement supersedes all prior correspondence and discussions on this subject. If you agree to the terms of this letter agreement, please sign below and return it to my attention by COB on Thursday, 17 August 2006. Upon receipt of your signed letter, I will request an authorized official of Intelsat General Corporation to sign this letter to give it binding effect.

Sincerely,

/Signed/
Kay Sears
Senior Vice President of Sales

For World Wide Network Services

By: _____

Name: _Reginald S. Bailey Sr._

Date: _8/17/06_

For Intelsat General Corporation

By: _____

Name: _Kay Sears_

Date: _18 August 2006_

EXHIBIT A

Mr. Reginald Bailey
Page 3

## Chart 1

| CID | WWNS PO# | DI CONTRACT END DATE | REVISED G2 CONTRACT END DATE | LOCATION |
|---|---|---|---|---|
| 10843 | SVC05-0252,SVC05-0253 | 08/11/2006 | 08/11/2006 | Iraq |
| 9145 | SVC05-0251 | 08/11/2006 | 08/11/2006 | Iraq |
| 9483 | SVC05-210 | 08/11/2006 | 08/11/2006 | Iraq |
| 9483 | SVC05-0230 | 09/30/2006 | 09/30/2006 | Afghanistan |
| 9482 | SVC05-165 | 08/30/2006 | 08/30/2006 | Afghanistan |
| 9446 | SVC05-208 | 08/11/2006 | 08/11/2006 | Iraq |
| 10863 | SVC05-0267 | 10/09/2006 | 10/09/2006 | Afghanistan |
| 10913 | SVC05-0316 | 06/15/2006 | 06/15/2006 | Iraq |
| 9916 | SVC05-0420 | 06/15/2006 | 06/15/2006 | Iraq |

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

WORLDWIDE NETWORK SERVICES, LLC,   )
   )
          Plaintiff,   )
v.   )    CA No. 06-1717 (RJL)
   )
DYNCORP INTERNATIONAL, LLC, et al.   )
   )
          Defendants.   )
   )
_____ )

## **ORDER**

THIS MATTER HAVING COME before the Court on the Motion to Intervene of Intervenor-plaintiff Intelsat General Corporation, pursuant to F.R.Civ. P. 24, to intervene as co-plaintiff in this matter, and it appearing that the Motion meets the standards of Rule 24(a) for intervention of right, it is hereby

ORDERED that the Motion to Intervene is granted, and Intelsat General Corporation may intervene as a co-plaintiff in this litigation.  Intelsat General Corporation shall file and serve its Complaint within five days of this Order.

ENTERED this _____ day of _____, 2007.


_____
Richard J. Leon
United States District Judge