**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **WORLDWIDE NETWORK SERVICES, LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:06cv01717 (RJL)** |
| | ) | **Judge Richard J. Leon** |
| **DYNCORP INTERNATIONAL, LLC,** | ) | |
| **and** | ) | |
| **EDO CORPORATION,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF WORLDWIDE NETWORK SERVICES, LLC'S MOTION FOR LEAVE TO FILE MEMORANDUM IN RESPONSE TO ISSUES RAISED BY THE COURT DURING THE MARCH 6, 2007 ORAL ARGUMENT**

At the March 6, 2007 hearing on Defendant DynCorp International, LLC's motion to transfer, the Court posed a number of questions that had not been fully addressed in the parties' previously-filed briefs in this matter.[1] Accordingly, Plaintiff Worldwide Network Services, LLC respectfully seeks leave to file its Memorandum in Response to Issues Raised by the Court During the March 6, 2007 Oral Argument, attached hereto as Attachment 1.

Dated: March 8, 2007

Respectfully submitted,

/s/ Michele A. Roberts

---

[1] For example, the Court asked, "Why should this Court make a decision about whether these issues should be in front of an arbitration panel or not if it thinks in the first instance, hypothetically, that this case shouldn't even be in this forum?" Hr'g Tr. 29: 14-17 (Mar. 6, 2007).

Michele A. Roberts (D.C. Bar No. 337998)
Anthony T. Pierce (D.C. Bar No. 415263)
Debra A. Drake (D.C. Bar No. 479907)
Jonathan P. Robell (D.C. Bar. No. 493977)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288

*Counsel for Plaintiff Worldwide Network Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2007, I caused a copy of the foregoing Plaintiff Worldwide Network Services, LLC's Motion for Leave to File Memorandum in Response to Issues Raised by the Court during the March 6, 2007 Oral Argument to be filed electronically. I understand that, pursuant to Local Civil Rule 5.4(d), notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michele A. Roberts

Michele A. Roberts

# ATTACHMENT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WORLDWIDE NETWORK SERVICES, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DYNCORP INTERNATIONAL, LLC,**<br><br>**and**<br><br>**EDO CORPORATION,**<br><br>**Defendants.** | **Case No. 1:06cv01717 (RJL)**<br>**Judge Richard J. Leon** |

**PLAINTIFF WORLDWIDE NETWORK SERVICES, LLC'S MEMORANDUM IN RESPONSE TO ISSUES RAISED BY THE COURT DURING THE MARCH 6, 2007 ORAL ARGUMENT**

At the March 6, 2007 oral argument regarding DynCorp International, LLC's ("DynCorp") motion to transfer, the Court queried why it should not transfer this matter to the United States District Court of the Eastern District of Virginia ("the Eastern District"), disregard the issue of whether the arbitration clause at issue encompasses Worldwide Network Services, LLC's ("WWNS") claims, and let the Eastern District decide which of WWNS's claims should be litigated and which claims, if any, should be arbitrated. *See, e.g.*, Hr'g Tr. 29: 14-17 (Mar. 6, 2007) ("Why should this Court make a decision about whether these issues should be in front of an arbitration panel or not if it thinks in the first instance, hypothetically, that this case shouldn't even be in this forum?"). The Court also queried whether so transferring would cause harm to WWNS. *Id.* at 13:13-14. The answer to the latter question is yes, and thus supplies the answer to the former question.

**A. Transfer to the Eastern District Would Hinder WWNS's Ability to Litigate in Future Stages of this Case**

To transfer this case to the Eastern District, the Court necessarily must find that claims asserted by WWNS are subject to the forum selection clause contained in the WPPS subcontract.[1] DynCorp moved to have the matter transferred to the Eastern District based on the existence of the WPPS subcontract's forum selection clause; absent the existence of that clause, there would be no basis on which to transfer this case. Thus, if the Court were to grant DynCorp's motion, the Court would effectively find that the causes of action asserted here – discrimination, conspiracy, defamation, tortious interference with contract, and tortious interference with prospective economic advantage – are encompassed by the forum selection clause in the WPPS subcontract. Moreover, because the scope of the forum selection clause is ambiguous as to whether it was meant to apply to the wrongful acts alleged here – as opposed to routine breach of contract claims – the Court also necessarily would find that the parties intended the forum selection clause to apply to WWNS's causes of action.

Transferring this matter without resolving whether the arbitration clause encompasses these claims, however, could have serious ramifications for WWNS. The vast majority of WWNS's allegations – which underpin its causes of action – post-date the expiration of the WPPS subcontract and, therefore, its forum selection clause. The WPPS subcontract expired on or around June 15, 2006; WWNS continued work on the WPPS project into July 2006. Moreover, some of WWNS's causes of action, such as its defamation and tortious interference with contract claims, occurred *after* the WPPS subcontract had expired. Thus, the only causes of action that the WPPS subcontract's forum selection clause *can* encompass are portions of

[1] Subcontract Number WWNS04-0002-WPPS between DynCorp and WWNS, dated January 18, 2005.

WWNS's (1) racial discrimination claim; (2) conspiracy claims; and (3) tortious interference with prospective economic advantage claim. These are the only causes of action, therefore, that the Court may find subject to the WPPS forum selection clause.

Thus, if the Court adopts DynCorp's position that some of WWNS's claims somehow stem from each of the two discrete subcontracts (as it would by granting DynCorp's motion to transfer), the Eastern District would then have to decide whether the vast majority of WWNS's claims are subject to the CIVPOL subcontract's arbitration clause. The Court, at oral argument, questioned whether such a move would cause WWNS harm, and the answer is yes. Because of the absence of contractual language or evidence of the parties' intent to arbitrate the wrongful acts at issue here, it is at least likely that the Eastern District will decide that the claims that "fall" under the CIVPOL subcontract are not arbitrable. At that point, WWNS's options would be to move to have the "CIVPOL-related" claims transferred back to this Court (the forum which WWNS, as the Plaintiff, chose to hear its claims) and continue litigating the "WPPS-related" claims in the Eastern District or, if such a motion is denied, to have *all* of its claims – even those not subject to the WPPS forum selection clause – adjudicated through a bench trial in the Eastern District *even though* WWNS never contracted to have any of the so-called CIVPOL subcontract-related claims in that forum.

Moreover, a decision by the Court to transfer this case to the Eastern District would impede WWNS's ability to seek redress for its claims by creating "law of the case" precedent. Any Eastern District decision determining that the "CIVPOL subcontract-related" claims are not arbitrable could conflict with this Court's initial decision to transfer. In other words, if the Eastern District finds that WWNS's causes of action do not "arise out of or relate to" the CIVPOL subcontract, then it necessarily also could find that the claims that allegedly stem from

the WPPS subcontract are not subject to its forum selection clause. At that point, however, this Court would have established as the law of the case that the forum selection clause controls at least some of WWNS's allegations.

As noted above, transfer to the Eastern District would effectively rule that the WPPS forum selection clause applies to WWNS's claims. As such, the law of the case doctrine would strongly discourage the Eastern District from reconsidering this Court's determination of the intent of the parties to the WPPS subcontract. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Amer., Inc.*, 238 F. Supp. 2d 258, 262 (D.D.C. 2002) (prior decision by court of coordinate status is entitled to law of the case status and "should not be disturbed" absent "extraordinary" circumstances) (citation omitted); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (law of the case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions"). Although deference under the prudential doctrine of the law of the case is not absolute, a ruling by a different district court in the same case "is entitled to great deference and should not be revisited absent a compelling reason to do so." *Brown v. Slenker*, 197 F. Supp. 2d 497, 504 (E.D. Va. 2002).

**B. WWNS's Asserted Claims Are Not Arbitrable and the Court Should Adjudicate Them on the Merits**

As a result of the foregoing, even if the Court decided to transfer the WWNS claims it believes are subject to the WPPS subcontract, the Court must make a determination as to whether the vast majority of WWNS's other causes of action are subject to the CIVPOL subcontract's[2] arbitration clause. As detailed in WWNS's memorandum in opposition to DynCorp's motion, dated December 8, 2006, the discrimination and tort claims that WWNS asserts in its complaint

[2] Subcontract Number WWNS04-0001-CIV between DynCorp and WWNS, dated November 12, 2004.

are not subject to the CIVPOL subcontract's arbitration clause, and DynCorp has not met its burden of establishing that "there is no genuine issue of material fact" to entitle it to judgment as a matter of law. *See, e.g.*, *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 93 (D.D.C. 2005).

WWNS's claims are subject to arbitration only if provided for by contractual language or if the parties so intended, and neither basis is present here. There is no language in the CIVPOL subcontract indicating that the parties intended to arbitrate claims that are not related to the subject matter of the CIVPOL subcontract itself. Moreover, DynCorp has offered no evidence that either party intended to arbitrate the type of claims present here. Indeed, during the negotiation of the CIVPOL subcontract, DynCorp did nothing to disturb WWNS's intent and understanding that the arbitration clause would only apply to disputes pertaining to provisions of the subcontract itself, such a run-of-the-mill disputes regarding payment and delivery of services. *See* Bailey Declaration, attached hereto as Exhibit A.[3] Because DynCorp has offered no evidence to the contrary, it has failed to meet its burden under the Rule 56(c) standard and, therefore, WWNS's claims are not subject to arbitration.

Thus, because the claims that allegedly "fall" under the CIVPOL subcontract are not subject to arbitration, and thus must remain with the Court, claims that allegedly "fall" under the WPPS subcontract should not be transferred to the Eastern District. To find otherwise would force the parties to engage in litigation in two forums regarding the same factual allegations and at least two common causes of action. Such a result contradicts the doctrine of judicial economy. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (noting that public interest factors include "practical considerations that could make trial easy, expeditious, or

[3] WWNS is aware of at least one former DynCorp employee who would corroborate this fact. If the Court so desires, WWNS has no objection to engaging in discovery with respect to the intent of the parties when they entered into the CIVPOL and WPPS subcontracts.

inexpensive"); *cf. Jyachosky v. Winter*, Civ. A. 04-1733 (HHK), 2006 U.S. Dist. LEXIS, at *18-19 (D.D.C. June 29, 2006) (granting transfer where "wastefulness of time, energy and money" would result from two cases with identical issues being handled in different courts).

## CONCLUSION

For the foregoing reasons, as well as those reasons detailed in WWNS's December 8, 2006 memorandum in opposition to DynCorp's motion to transfer, the Court should deny the motion and adjudicate the merits of WWNS's asserted claims.

Dated: March 8, 2007

Respectfully submitted,

/s/ Michele A. Roberts

Michele A. Roberts (D.C. Bar No. 337998)
Anthony T. Pierce (D.C. Bar No. 415263)
Debra A. Drake (D.C. Bar No. 479907)
Jonathan P. Robell (D.C. Bar. No. 493977)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288

*Counsel for Plaintiff Worldwide Network Services, LLC*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **WORLDWIDE NETWORK SERVICES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DYNCORP INTERNATIONAL, LLC,**<br><br>**and**<br><br>**EDO CORPORATION,**<br><br>**Defendants.** | ) | **Case No. 1:06cv01717 (RJL)**<br>**Judge Richard J. Leon** |

**DECLARATION OF REGINALD S. BAILEY, SR.**

I, Reginald S. Bailey, Sr., declare and state that the following is true and correct to the best of my knowledge, information and belief:

1. I am a resident of the state of Maryland, over the age of eighteen, and otherwise competent to make this affirmation.

2. I am a co-founder, principal partner, and Senior Vice President of Worldwide Network Services, LLC ("WWNS").

3. In 2004 and 2005, WWNS entered into two subcontracts with DynCorp International, LLC ("DynCorp"). These subcontracts were for work on the United States Department of State's civilian police ("CIVPOL") and Worldwide Personal Protective Services ("WPPS") programs in Iraq and Afghanistan (collectively, "the Subcontracts").

4. I served as an officer and partner at all times during WWNS's discussions with DynCorp regarding the Subcontracts and have personal knowledge of those discussions.

5. The CIVPOL subcontract contains, at Article 10.9.2, an arbitration clause; the WPPS

subcontract contains, also at Article 10.9.2, a forum selection clause.

6. Both the CIVPOL arbitration clause and the WPPS forum selection clause were drafted by DynCorp, and were not altered by WWNS in any way during WWNS's discussions with DynCorp regarding the Subcontracts.

7. It was my intent and understanding that both the CIVPOL arbitration clause and the WPPS forum selection clause would only cover disputes related to either party's failure to comply with the Subcontracts' provisions.

8. It was my intent and understanding that disputes related to either party's failure to comply with the Subcontracts' provisions would include such matters as invoice payments and timely delivery of goods and services.

9. At no time during WWNS's discussion of the Subcontracts with DynCorp did any DynCorp employee indicate that the dispute resolution clauses in the Subcontracts would cover claims outside of the contract, such as racial discrimination, conspiracy with WWNS's competitors, defamation of WWNS, or interference with our customers and employees.

10. I did not anticipate that DynCorp would engage in such conduct. If I had, I would not have done business with DynCorp, nor agreed to have such conduct resolved solely on DynCorp's terms.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this 8th day of March 2007.

Reginald S. Bailey, Sr.