**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WORLDWIDE NETWORK SERVICES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:06cv01717 (RJL)** |
| ) | **Judge Richard J. Leon** |
| **DYNCORP INTERNATIONAL, LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **EDO CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**PLAINTIFF WORLDWIDE NETWORK SERVICES, LLC'S
MEMORANDUM IN OPPOSITION TO INTELSAT GENERAL
CORPORATION'S MOTION TO INTERVENE**

By and through undersigned counsel, Plaintiff Worldwide Network Services, LLC

("WWNS") respectfully submits this Memorandum in Opposition to Intelsat General

Corporation's ("Intelsat") Motion to Intervene.

**INTRODUCTION**

Intelsat moves the Court, under Federal Rules of Civil Procedure 24(a) (intervention as of

right) and 24(b) (permissive intervention), to allow it to participate as a co-plaintiff and a cross-

claim plaintiff in the instant action by WWNS against DynCorp International, LLC.

("DynCorp") and EDO Corporation ("EDO"). Intelsat bases its claim on an August 17, 2006

agreement between WWNS and Intelsat to assign "all monies it receives from [DynCorp] until

the sum of all monies received by WWNS from DynCorp and paid by WWNS to G2/Intelsat

equals $2,252,695.00 . . . ." (Mot. Exh. A) ("the Assignment"). The Court should deny

IntelSat's motion because IntelSat does not meet the requirements for intervention of right and because permissive intervention would simply complicate adjudication of WWNS's rights without adding any level of efficiency to the case.

Intelsat's motion appears to have been motivated by a returned letter. Attached to Intelsat's motion is a copy of an envelope addressed to WWNS, postmarked February 5, 2007, and marked "returned to sender." (Mot. Ex. B). From this, Intelsat concluded that "WWNS has apparently gone out of business for most purposes," (Mot. at 2), that "WWNS is apparently insolvent," (*Id.* at 4), and that "[a] bankruptcy filing may be imminent." (*Id.* at 7). The rumors of WWNS's death by bankruptcy, however, have been greatly exaggerated.[1] WWNS continues to do business in the District of Columbia and has no current plans to file bankruptcy. WWNS has, however, been significantly damaged by the wrongful actions of DynCorp and EDO. It is precisely this damage which WWNS seeks to remedy before this Court. But WWNS's injuries are unrelated to DynCorp's failure to pay WWNS for satellite service Intelsat provided via WWNS. Rather, WWNS's injuries are based on DynCorp's and EDO's conspiracy – in DynCorp's case motivated by racial animus – to defame WWNS and to tortiously interfere with WWNS's relationships with its employees and prospective customers.

WWNS does not contest the validity of the Assignment and has vigorously litigated this case. Intelsat's contention that, without intervention "it seems doubtful that any recovery in this case will find its way to its rightful owner" (Mot. at 4) is, therefore confusing to say the least.

---

[1] In its Response to the Motion to Intervene by Intelsat General Corporation, EDO argues that Intelsat's filing "confirms the substantial truth" of EDO's statement that WWNS had filed for Chapter 11 protections. EDO Motion at 2-3. WWNS's assignment to Intelsat – in order to pay for services provided through WWNS to DynCorp for which DynCorp has not paid -- of monies received from DynCorp up to $2.2 million does not bear on whether WWNS has "filed for Chapter 11 protections," as EDO claimed. It simply evidences the existence of a dispute over payment for services provided.

Any money judgment received by WWNS from DynCorp would be turned over to Intelsat, up to $2.2 million.  Moreover, in a conversation with WWNS's counsel, Intelsat's counsel indicated that Intelsat intended to remain a neutral bystander, rather than an active participant, in the litigation.  WWNS thus cannot see any interest Intelsat might have in the instant litigation, and to the extent it does have any interest, WWNS more than adequately represents that interest.

Accordingly, Intelsat's motion to intervene should be denied.  In the alternative, if the Court chooses to grant Intelsat's motion to intervene under Rule 24(b), Intelsat's participation in the case should be limited to that of a neutral bystander.

## ARGUMENT

### I.     Intelsat Has Not Satisfied All of the Requirements for Intervention of Right

The relevant portion of Rule 24(a) provides that intervention of right is permitted upon timely application when:

> the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a) (2006).  In this circuit, Rule 24(a)'s requirements are embodied in a four-part test, the elements of which are:  (1) timeliness; (2) a cognizable interest relating to the property or transaction which is the subject of the action; (3) impairment of that interest through disposition of the action without intervention; and (4) lack of adequate representation by the existing parties.  *Smoke v. Norton*, 252 F.3d 468, 470 (D.C. Cir. 2001) (citing *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F2d 72, 74 (D.C. Cir. 1988)).  All four elements must be satisfied for intervention of right to be granted.  *Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003).  WWNS does not contest Intelsat's assertion that its motion is

timely; Intelsat's ability to satisfy the other requirements for intervention of right, however, is far less clear.

### A.     Intelsat Does Not Have a Cognizable Interest Relating to the Property or Transaction Which is the Subject of the Action

Rule 24(a)(2)'s "interest" requirement "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).  Intelsat's asserted "interest" in this case is that WWNS owes Intelsat $2.2 million, and that WWNS has assigned the first $2.2 million of any money it receives from DynCorp to WWNS.  (Mot. at 5).  As noted, WWNS does not contest the validity of the assignment.  But this is not a breach of contract case.  The subject of this case is racial discrimination against WWNS by DynCorp and a conspiracy between DynCorp and EDO to commit several torts and a statutory violation, all to WWNS's detriment. While WWNS's claims are meritorious and entitle it to significant monetary and injunctive relief, such relief is for a jury to decide, and therefore is only hypothetical at this point.

The cases IntelSat cites only serve to underscore its tenuous relationship to the subject matter of this case.  In *Foster v. Gueory*, for example, the persons attempting to intervene alleged injury from "the same or very similar wrongful acts as those complained of by the original plaintiffs, and [their] claims for relief are founded on the same statutory rights as are the claims of the plaintiffs."  655 F.2d 1319, 1324-25 (D.C. Cir. 1981).  Here, in contrast, Intelsat's "injury," to the extent one exists, derives from a refusal to pay for services provided, not from racial discrimination, defamation or other tortious claims that do not relate to any particular contract. Intelsat's interest in WWNS paying to it the first $2.2 million WWNS receives from DynCorp is separate and distinct from any of the legal or factual issues in this case.

**B.     Any Interest IntelSat Does Have in the Case Is Not Impaired Because
That Interest is Adequately Represented by the Parties**

Assuming that Intelsat does have a cognizable interest in this case, consideration of the

third and fourth elements of the Rule 23(a) test – impairment of the interest and lack of adequate

representation – weighs against intervention.   Impairments of interest typically involve the risk

that a ruling of law will bind the intervenors or put them at a practical disadvantage for

vindicating their interests.  *See, e.g.*, *Cook v. Boorstin*, 763 F.2d 1462, 1467 (D.C. Cir. 1985)

(ruling of law); *United States v. Eilberg*, 89 F.R.D. 473, 475 (D.C. Cir. 1980) (practical

disadvantage).  Intelsat faces no such potential burdens because the legal questions at issue in

this litigation have nothing to do with Intelsat's ability to be paid for the services it provided and

because WWNS does not contest the validity of the assignment agreement.

First, as already discussed, this is not a breach of contract case.  Thus, it is difficult to

imagine a legal issue pending in this case that would impact Intelsat's ability to be paid for its

work.[2]  Second, because WWNS does not contest the validity of the assignment to Intelsat of the

first $2.2 million it receives from DynCorp – whether through this litigation, the payment of

outstanding invoices, adjudication of any contract claims, or any other forum – Intelsat's

interests are perfectly aligned.  WWNS's interest is in being compensated, to the fullest extent

available under the law, for the discriminatory actions of DynCorp and the tortious and

defamatory actions of DynCorp and EDO.  Intelsat's interest is to be paid under the terms of the

---

[2] Unlike the situation in *Cook v. Boorstin*, cited by Intelsat, even if WWNS were not to
prevail on its claims, such a result would not include a determination that any "property or
transaction" in which Intelsat claims an interest is unavailable to it as a matter of law.  *Cf.* 763
F.2d 1462, 1467 (D.C. Cir. 1985).  In fact, the genesis of Intelsat's motion – DynCorp's refusal to
pay WWNS for satellite time WWNS purchased from Intelsat – is not even at issue in this action,
which is based on claims of discrimination and tortious behavior by DynCorp unrelated to any
contract for services.

assignment.  WWNS cannot satisfy the terms of the assignment, which call for turning over "all monies [WWNS] receives" from DynCorp, without recovering from DynCorp, whether through the instant action or through unfiled breach of contract claims.  Both WWNS and Intelsat, therefore, have the same interest in this litigation:  to recover from DynCorp.  In light of this congruence of interests, Intelsat's assertion that WWNS does not "care a whit whether Intelsat is made whole or not" (Mot. at 6) is perplexing.

Nor would Intelsat bear any practical impairment of its interests.  Intelsat raises the specter of bringing a burdensome, subsequent action against WWNS to satisfy the Assignment (Mot. at 7), but such fears are premature to say the least.  As noted, WWNS does not contest the validity of the Assignment.  Should WWNS prevail on its claims before this Court and recover damages, the Assignment would still be in force.

Second, and for similar reasons, any interest Intelsat does have in the case now before the Court is adequately represented by WWNS.  Adequacy of representation is assessed in relation to the specific purpose that the proposed intervention would serve.  *United States v. Amer. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).  Here, Intelsat has, in essence, said that its intervention will serve no purpose at all but for having its name in the caption and being eligible to collect the first $2.2 million of any damages WWNS might receive without resort to the valid assignment it negotiated with WWNS some seven months ago.  Intelsat's argument that its interests are not adequately represented is thus confusing to say the least.  Intelsat claims that "[w]ithout . . . intervention, WWNS may in fact choose to keep the recovery assigned to [Intelsat], or distribute it to shareholders, or use it to prefer other creditors."  (Mot. at 8).  It is unclear what the basis of Intelsat's lack of faith in the assignment is, but whatever that basis may

be, in the present litigation WWNS would adequately represent Intelsat's interest in recovering the money it is owed.

## II.    Intelsat Has Not Satisfied the Requirements for Permissive Intervention

Rule 24(b) states that a timely application for permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b).[3]  In making this determination, the Court, in its discretion, "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

As discussed above, Intelsat's claims do not have a question of law or fact in common with WWNS's discrimination and tort claims.  *See* Fed. R. Civ. P. 24(b)(2).  WWNS has not asserted any breach of contract claims.  Intelsat's claims, moreover, risk significant delay in the adjudication of WWNS's rights.  Intelsat asserts two claims against WWNS and three against DynCorp that have nothing whatsoever to do with WWNS's claims of discrimination, defamation and business torts.  The facts alleged in Intelsat's complaint – involving contracts for satellite service – are fundamentally different from the facts in WWNS's complaint.  (*See* Mot. Ex. C).  Mixing these claims into the current case would add a layer of complexity to an already complicated case, while producing no efficiencies.  Intelsat's motion for permissive intervention under Rule 24(b) should therefore be denied.

In the alternative, while WWNS maintains that Intelsat has not met the requirements of Rule 24 for intervention in the case, should the Court choose to grant permissive intervention under Rule 24(b), WWNS respectfully requests that the Court exercise its discretion to limit

---

[3] The applicant must also present an independent ground for subject-matter jurisdiction. *Nationwide Mut. Ins. Co. v. Nat. Reo Mgmt.*, 205 F.R.D. 1, 5 (D.D.C. 2000).

Intelsat's participation in the case to sharing in any money judgment WWNS may receive from DynCorp. The Court's discretion to limit Intelsat's participation is well-established and broad. *See J.B. Stringfellow, Jr. v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring) (noting that "highly restrictive conditions may be appropriately be placed on a permissive intervenor"). Here, Intelsat's counsel has indicated that Intelsat has no intent to participate actively in the case, and to the extent the Court feels Intelsat's intervention is proper, the Court should order Intelsat to follow through on that intention.

## CONCLUSION

For the foregoing reasons, Intelsat's motion to intervene should be denied. In the alternative, should the Court grant Intelsat's motion for permissive intervention under Rule 24(b), Intelsat's participation in the case should be limited to sharing in any money judgment received by WWNS from DynCorp.

Dated: March 19, 2007                          Respectfully submitted,

                                               /s/ Michele A. Roberts

                                               Michele A. Roberts (D.C. Bar No. 337998)
                                               Anthony T. Pierce (D.C. Bar No. 415263)
                                               Debra A. Drake (D.C. Bar No. 479907)
                                               Jonathan P. Robell (D.C. Bar. No. 493977)
                                               AKIN GUMP STRAUSS HAUER & FELD, LLP
                                               1333 New Hampshire Avenue, NW
                                               Washington, DC 20036
                                               Telephone: 202.887.4000
                                               Facsimile: 202.887.4288

                                               *Counsel for Plaintiff Worldwide Network
                                               Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2007, I caused a copy of the foregoing Plaintiff Worldwide Network Services, LLC's Memorandum in Opposition to Intelsat General Corporation's Motion to Intervene and Proposed Order to be filed electronically. I understand that, pursuant to Local Civil Rule 5.4(d), notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


/s/ Michele A. Roberts

Michele A. Roberts

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WORLDWIDE NETWORK SERVICES, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:06cv01717 (RJL) |
| DYNCORP INTERNATIONAL, LLC, | ) ) | Judge Richard J. Leon |
| and | ) ) | |
| EDO CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

## [PROPOSED] ORDER

Upon review and consideration of Intelsat General Corporation's Motion to Intervene and Plaintiff Worldwide Network Services, LLC's opposition thereto, it is hereby:

_____ **ORDERED** that Intelsat General Corporation's Motion to Intervene is **DENIED**.

_____ **ORDERED** that Intelsat General Corporation's Motion to Intervene is **GRANTED** subject to the condition that Intelsat General Corporation's participation in the litigation is limited to sharing in any monetary recovery received from DynCorp International, LLC by Worldwide Network Services, LLC.

**SO ORDERED** this _____ day of March 2007.

_____

The Honorable Richard J. Leon
United States District Judge