UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JUN 7 - 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| **WORLDWIDE NETWORK**<br>**SERVICES, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**DYNCORP INTERNATIONAL,** *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Civil Case No. 06-1717 (RJL)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
(June 7, 2007) [#10, #14]

Plaintiff, Worldwide Network Services, LLC, ("Worldwide") brings this action against defendants DynCorp International, LLC ("DynCorp") and EDO Corporation ("EDO") alleging various tortious acts and violation of 42 U.S.C. § 1981 in the context of performance of two subcontracts for Worldwide's provision of services in support of contracts between Dyncorp and the U.S. Department of State.[1]  Before the Court are defendants' Motions to Transfer or, in the alternative, Motions to Dismiss.  After due consideration of the pleadings and oral arguments, the Court GRANTS the defendants' Motions to Transfer this case to the Eastern District of Virginia.

---

[1] Plaintiff alleges a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and brings claims for defamation, tortious interference with contract, tortious interference with prospective economic advantage, civil conspiracy, and violation of Va. Code Ann. § 18.2-499.



## BACKGROUND

Plaintiff Worldwide is a Delaware limited liability company that entered into two subcontracts with Defendant DynCorp to provide communication and information technology services in Iraq and Afghanistan. As described in the Complaint, pursuant to the "CIVPOL subcontract," entered into in 2004, Worldwide provided information technology, voice communications, video surveillance and other technical services as part of DynCorp's operations for the U.S. Department of State ("the State Department") in Iraq. (Compl. ¶¶ 20-21.) On January 18, 2005, DynCorp and Worldwide executed another subcontract, the "WPPS subcontract," pursuant to which Worldwide provided services to the Department of State's Worldwide Personal Protective Services program. (*Id.* ¶ 23.) The WPPS subcontract

contains a forum selection clause[2] and the CIVPOL subcontract contains an arbitration clause.[3] Defendant EDO was another DynCorp subcontractor. *Id.* at 4.

On November 13, 2006, defendant DynCorp moved to dismiss this case, or to transfer it to the Eastern District of Virginia, by arguing that the forum selection clause in the WPPS subcontract requires this Court to transfer this case to the agreed-upon Virginia court. In addition, on November 15, 2006, defendant EDO filed a motion to transfer or dismiss arguing, in relevant part, that the Eastern District of Virginia is the most appropriate forum to adjudicate this case. Worldwide opposes the transfer, maintaining that the forum selection

---

[2] The WPPS subcontract reads in relevant part:

> Either party may pursue litigation to resolve any dispute not covered by the preceding paragraph and not resolved after a mutual, good faith effort by the Parties. Any such action shall be filed only in a court of competent jurisdiction in the Commonwealth of Virginia; provided, however, that the Parties hereby expressly waive any rights to a trial by jury and agree that any legal proceeding hereunder shall be tried by a judge without a jury. The Parties agree that the governing law applicable to any such action under this Subcontract shall be the federal law of government contracts, as interpreted by federal judicial bodies and administrative boards of contract appeals. To the extent federal government contract law is not dispositive; the Parties agree that the law of the State of Delaware shall govern. Any such action by the Subcontractor must be commenced within one (1) year from the date of Contractor's final decision, if applicable.

(DynCorp's Mot. Transfer, Ex. 1, ¶ 10.9.2.)

[3] The CIVPOL subcontract contains an arbitration clause which reads in relevant part:

> Any disputes arising out of or relating to this Subcontract and which are not governed by the preceding paragraph and are not resolved after a mutual, good faith effort shall be settled by arbitration administered by the American Arbitration Association under its Commerical Arbitration Rules in force at the time the dispute arises, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

(DynCorp's Mot. Transfer, Ex. 2, ¶ 10.9.2.)

3

clauses in the subcontracts do not apply because the claims plaintiff has asserted are based on "wrongful acts independent of and across the two subcontracts." (Pl.'s Opp. at 1).

## ANALYSIS

### A. Legal Standard

In *Stewart Org., Inc. v. Ricoh Corp.*, the Supreme Court held that 28 U.S.C. § 1404(a) controls the issue of whether to transfer a case to another judicial district in accordance with a forum selection clause in a contract between the parties. 487 U.S. 22, 28-29 (1988). Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This section vests "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 27 (internal citation omitted). The moving party bears the burden of establishing that the transfer of the action to another federal district is proper. *See Shenandoah Assocs. L.P. v. Tirana*, 182 F. Supp. 2d 14, 25 (D.D.C. 2001).

### B. Applicability and Enforceabilty of the Forum Selection Clause

In *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that forum selection clauses are presumptively valid, unless the resisting party can show that enforcement of the clause would be "unreasonable under the circumstances." 407 U.S. 1, 10 (1972) (internal quotation marks omitted). The presumption in favor of the enforceability of forum selection

clauses has been widely adopted in diversity actions such as this one. *See, e.g.*, *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 58 (D.D.C. 2001) (quoting with approval the relevant language from *M/S Bremen* in a diversity action); *Marra v. Papandreou* (*Marra I*), 59 F. Supp. 2d 65, 70 (D.D.C. 1999) (holding that forum selection clauses should be enforced "in all but the most exceptional" circumstances) (citation omitted), *aff'd*, 216 F.3d 1119 (2000). Nevertheless, as required by the Supreme Court in *Stewart*, a court must still evaluate a § 1404(a) motion to transfer "according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Such an analysis calls for a balancing of a number of factors, and "the presence of a forum-selection clause . . . [will] figure[] centrally in the district court's calculus." *Stewart*, 487 U.S. at 29. Under the guidance of § 1404(a), a court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

Generally, forum selection clauses are granted significant weight in venue transfer motions because: "[A] clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be

devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991). Moreover, our Circuit Court has characterized a forum selection clause as "a separate contract in which the parties agree to venue" and further observed that "a forum-selection clause is best understood as . . . [an] *ex ante* agreement to waive venue objections to a particular forum." *Marra v. Papandreou (Marra II)*, 216 F.3d 1119, 1123-24 (D.C. Cir. 2000). Accordingly, the forum selection clause between the parties here is a significant consideration in evaluating defendants' motion to transfer, and the Court will begin its analysis under § 1404(a) by first turning to the forum selection clause at issue, (quoted *supra*).

The language of the forum selection clause provides unequivocally that all claims arising from these contracts shall be filed in the appropriate court in the Commonwealth of Virginia. Indeed, plaintiffs do not dispute that the subcontracts at issue contain valid and enforceable forum selection and arbitration clauses. (Pl.'s Opp. to DynCorp's Mot. at 4, 11.) This being so, the Court is left to analyze whether plaintiff's claims in this case are encompassed by the forum selection clause. Fortunately for defendants, the answer is not a difficult one here.

Forum selection clauses have been found to encompass even non-contractual causes of action. *See, e.g.*, *Terra Int'l v. Miss. Chem. Co.*, 119 F.3d 688, 693 (8th Cir. 1997); *Manetti-Farrow v. Gucci*, 858 F.2d 509 (9th Cir. 1988); *Crescent Int'l v. Avatar Communities*, 857 F.2d 943 (3d Cir. 1988). Accordingly, courts have found that strategic or

artfully drawn pleadings will not be permitted to circumvent an otherwise applicable forum selection clause, because narrowly interpreting a forum selection clause may permit parties to avoid it by "simply pleading non-contractual claims"; an outcome that "runs counter to the law favoring forum selection clauses." *Crescent Int'l*, 857 F.2d at 945; *see Terra*, 119 F.3d at 695.  As a consequence, courts have developed different tests to determine whether tort claims are within the scope of a broad forum selection clause, such as determining whether the tort claims "ultimately depend on the existence of a contractual relationship" between the parties, *id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d. Cir. 1983)), or whether the contract-related tort claims involve the same operative facts as a parallel claim for breach of contract, *id.* (citing *Lambert v. Kysar*, 938 F.2d 1110, 1121-22 (1st Cir. 1993)).

The forum selection clause in this case was drafted broadly by the parties.  The clause applies to "any dispute" and provides that "any such action" may be brought in a court of competent jurisdiction in Virginia.  *See Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.) (applying a broad reading to a forum selection clause that applied to "disputes" not only "arising under" but also "arising in relation to" that agreement).  The action here, as set forth in plaintiff's complaint, demonstrates that the statutory and tortious claims asserted against DynCorp involve the same operative facts and ultimately turn on the existence of the contractual relationship between the parties.  Indeed, the essence of plaintiff's claims is that DynCorp's alleged discriminatory and tortious

behavior undermined plaintiff's ability to perform its contractual duties. (*See generally* Compl.) Moreover, plaintiff's counter-argument that its claims are "not based upon the subject matter," (Opp. to DynCorp Mot. at 6) of the subcontracts is directly contradicted by the substance of the interrogatories and document requests served on DynCorp that demonstrate that the basis of plaintiff's claims arises from the contractual relationship between the parties. (*See* Discovery Requests cited in Supp. Mem. of DynCorp at 2-3.) Accordingly, because plaintiff's claims turn on the existence and performance of the contract at issue, the Court finds that plaintiff's claims fall within the forum selection clause.

### C. *Propriety of Venue in Eastern District of Virginia*

Even if the clauses are encompassed by the forum selection clause, however, the existence of that clause is not the sole factor for a court to consider on a motion to transfer jurisdiction, especially where the clause only applies to one of the two defendants. In *Stewart Organization*, 487 U.S. at 29-30, the Supreme Court noted that in deciding a motion to dismiss or transfer "the presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus," but that the district court should also consider issues such as "convenience," "the fairness of the transfer in light of the forum-selection clause," "the parties' relative bargaining power," and "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice." Here, a fair consideration of these factors also supports

the conclusion that this case as to both defendants should be transferred to the Eastern District of Virginia.

First, other than being headquartered in the District of Columbia, plaintiff has asserted no facts to support a connection between the District of Columbia and the defendants, or the alleged events. (*See generally* Compl.) Indeed, plaintiff alleges that DynCorp, which is headquartered in Virginia, (Compl. ¶ 4), acted in whole or part "[i]n furtherance of the conspiracy . . . from its offices in the Commonwealth of Virginia," (Compl. ¶ 141). In addition, EDO, the defendant not covered by the forum selection clause, has an office in Arlington, Virginia where relevant witnesses and documents are located.

Moreover, plaintiff fails to make a convincing argument that transfer to the Eastern District of Virginia would cause inconvenience or other harm. Considering the geographic proximity of both courts, it would make no sense that one forum would be any more convenient than the other. There is likewise no indication that the parties were of unequal bargaining power at the time they entered into the contracts, or that transferring the case would be unfair to either party. Therefore, on balance, because the contractual provisions require litigation of these matters in the Commonwealth of Virginia, and because Plaintiff has provided no public interest factor or reason of inconvenience to the contrary, DynCorp's motion to transfer is GRANTED.

Finally, as to EDO's motion to transfer, the Court agrees with plaintiff that "the Court should take into account the impact on judicial resources if . . . [Worldwide]'s claims . . .

were adjudicated in a separate court." (Pl.'s Opp. to EDO's Mot. at 7.) Because plaintiff has demonstrated little connection between the facts of this case and the District of Columbia, the Court concludes that even though the forum selection clauses do not *directly* pertain to EDO's relationship with plaintiff, the interests of convenience and justice are best served by also transferring the claims against EDO to the Eastern District of Virginia.[4]

## CONCLUSION

For all of the foregoing reasons, the Court finds that the purposes of 28 U.S.C. § 1404(a) will be best served by transferring this case in its entirety to the Eastern District of Virginia. Accordingly, the Court GRANTS defendants' Motions to Transfer the case.

*[signature]*

**RICHARD J. LEON**
**United States District Judge**

---

[4] This Court makes no finding about whether the disputes are subject to the arbitration clause in the subcontract. Rather, this Court finds that it is in the best interests of justice to transfer this issue to the proper court in the Eastern District of Virginia for resolution there.